No. 24-50783

# United States Court of Appeals for the Fifth Circuit

LA UNIÓN DEL PUEBLO ENTERO, ET AL.,

*Plaintiffs-Appellees,*

v.

GREGORY W. ABBOTT, ET AL.,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Western District of Texas, San Antonio Division, No. 5:21-cv-00844-XR

## PLAINTIFFS-APPELLEES' JOINT RESPONSE IN OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION TO STAY DISTRICT COURT ORDER AND PERMANENT INJUNCTION PENDING APPEAL

*Counsel Listed Inside Cover*

Nina Perales
Fátima L. Menéndez
Julia R. Longoria
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
nperales@maldef.org

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, NY 10004
(212) 589-8000

*Counsel for La Unión del Pueblo
Entero; Southwest Voter Registration
Education Project; Mexican
American Bar Association of Texas;
Texas Hispanics Organized for
Political Action; JOLT Action;
William C. Velasquez Institute; FIEL
Houston, Incorporated*

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

Aaron J. Curtis
Charles Gehnrich
Natalie Howard
Augustus Ipsen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8901

Sean Morales-Doyle
Jasleen K. Singh
PATRICK A. BERRY
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310

Leah J. Tulin
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
1140 Connecticut Avenue NW,
Suite 1150
Washington, DC 20036
(202) 650-6397

*Counsel for Friendship-West Baptist
Church; Texas Impact; James
Lewin*

Zachary Dolling
Sarah Chen
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073
zachary@texascivilrightsproject.org

Adriana Pinon
Thomas Buser-Clancy
Edgar Saldivar
Savannah Kumar
Ashley Harris
ACLU FOUNDATION OF TEXAS, INC.
5225 Katy Freeway, Suite 350
Houston, TX 77007
(713) 942-8146

Christopher McGreal
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, TX 78758-1024
(512) 454-4816

*Counsel for OCA-Greater
Houston and League of
Women Voters of Texas*

Adriel I. Cepeda Derieux
Dayton Campbell-Harris
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334

Jessica Ring Amunson
JENNER & BLOCK LLP
1099 New York Ave. NW,
Suite 900
Washington, DC 20001
(202) 639-6000

# CERTIFICATE OF INTERESTED PERSONS

Appellees certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1)      Plaintiffs-Appellees:

La Unión del Pueblo Entero
Friendship-West Baptist Church
Southwest Voter Registration Education Project
Texas Impact
Mexican American Bar Association of Texas
Texas Hispanics Organized for Political Action
JOLT Action
William C. Velasquez Institute
James Lewin
FIEL Houston, Inc.
OCA-Greater Houston
League of Women Voters of Texas
LULAC Texas
Voto Latino
Texas Alliance for Retired Americans
Texas AFT

2)      Defendants-Appellants:

Attorney General Kenneth Paxton Jr.
Secretary of State Jane Nelson
State of Texas

3)      Intervenors-Appellants:

Harris County Republican Party
Dallas County Republican Party

Republican National Committee
National Republican Senatorial Committee
National Republican Congressional Committee

4)      Counsel for Plaintiffs-Appellees La Unión del Pueblo Entero;
Southwest Voter Registration Education Project; Mexican American Bar
Association of Texas; Texas Hispanics Organized for Political Action;
JOLT Action; William C. Velasquez Institute; and FIEL Houston, Inc.:

Nina Perales
Fátima L. Menéndez
Julia R. Longoria
Mexican American Legal Defense & Educational Fund

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
Fried Frank, Harris, Shriver & Jacobson LLP

5)      Counsel for Plaintiffs-Appellees Friendship-West Baptist Church;
Texas Impact; and James Lewin:

Sean Morales-Doyle
Leah J. Tulin
Jasleen K. Singh
Patrick A. Berry
Brennan Center for Justice at NYU Law School

Zachary D. Tripp
Aaron J. Curtis
Alexander P. Cohen
Charles Gehnrich
Natalie Howard
Augustus Ipsen
Weil, Gotshal & Manges LLP

6)      Counsel for Plaintiffs-Appellees OCA-Greater Houston and League
of Women Voters of Texas:

Zachary Dolling
Sarah Chen
Veronikah Warms
Texas Civil Rights Project

Adriana Pinon
Thomas Buser-Clancy
Edgar Saldivar
Savannah Kumar
Ashley Harris
ACLU Foundation of Texas, Inc.

Adriel I. Cepeda Derieux
Ari Savitzky
Sophia Lin Lakin
Dayton Campbell-Harris
Susan Mizner
Brian Dimmick
American Civil Liberties Union Foundation

Lucia Romano
Peter Hofer
Christopher McGreal
Disability Rights Texas

Patrick Stegemoeller
Asian American Legal Defense and Education Fund

Jessica Ring Amunson
Jenner & Block LLP

7)      Counsel for Plaintiffs-Appellees LULAC Texas; Voto Latino; Texas Alliance for Retired Americans; and Texas AFT:

Christopher D. Dodge
Elena Rodriguez Armenta
Mark E. Elias
Marisa O'Gara

Meaghan E. Mixon
Omeed Alerasool
Uzoma N. Nkwonta
Daniela Lorenzo
Marcos Mocine-Mcqueen
Elias Law Group LLP

James A. Rodman
Rodman Law Office

8)     Counsel for Defendants-Appellants Attorney General Kenneth
Paxton Jr.; Secretary of State Jane Nelson; and State of Texas:

Ken Paxton
Aaron L. Nielson
Brent Webster
Lanora C. Pettit
Office of the Attorney General of Texas

9)     Counsel for Intervenors-Appellants Harris County Republican
Party; Dallas County Republican Party; Republican National Committee;
National Republican Senatorial Committee; and National Republican
Congressional Committee:

John M. Gore
E. Stewart Crosland
Louis J. Capozzi, III
Jones Day

*/s/ Zachary D. Tripp*
Zachary D. Tripp
*Counsel for Plaintiffs-Appellees*

**INTRODUCTION**

"The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (citation omitted). Yet Texas enacted an "outright ban" on certain political speech "backed by criminal sanctions." *Id.* at 337. That law violates the First Amendment. The district court correctly enjoined it before the upcoming election—when the harm to core, protected speech is most acute—rather than waiting until "after the opportunity to persuade … voters has passed." *Id.* at 334.

The election's proximity makes it more urgent—not less—to enjoin the law's enforcement. This is one of the "short timeframes in which speech can have influence." *Id.* "When Government seeks to use its full power, including the criminal law, to command … what distrusted source [a person] may not hear, it uses censorship to control thought. This is unlawful. The First Amendment confirms the freedom to think for ourselves." *Id.* at 356.

Defendants cannot satisfy the demanding standard for a stay pending appeal. On the merits, Defendants emphasize that it is a felony to speak only if the speaker is compensated. *See* Br. 13-14 ("paid partisans" and "paid persuaders"). But the Supreme Court has resoundingly rejected the idea that the government can ban paid political speech in the run-up to an election: There is "no basis for the proposition that, in the context of

political speech, the Government may impose restrictions on certain disfavored speakers." *Citizens United*, 558 U.S. at 341. Indeed, the law the Supreme Court struck down in *Citizens United* specifically applied within the "crucial phase" of 60 days before an election. *Id.* at 337.

Defendants try to end-run those bedrock principles by using the label "vote harvesting" to obscure the law's actual operation. But the law criminalizes compensated in-person "interaction[s]" in the presence of a ballot with the intent of persuading voters about a particular candidate or measure. Tex. Elec. Code § 276.015. That is a form of political canvassing, and it is core political speech. Notably, Texas law separately prohibits crossing the line into coercion in the presence of a ballot. *See* Tex. Elec. Code § 276.013. That law remains fully operational. After a weeks-long trial, the district court found that the canvassing restriction's *only* substantial reach was to criminalize non-coercive canvassing in the presence of a ballot when the speaker is compensated.

Defendants try to analogize the physical presence requirement to buffer zones around polling places. *See Burson v. Freeman*, 504 U.S. 191, 210 (1992) (plurality opinion). But the *Burson* plurality applied *strict scrutiny* to that law, a "rare" case that survived because the buffers were narrow, well-defined, and dated back to the Founding. *See id.* at 211. Here, as the district court correctly held, strict scrutiny applies and this law does

not survive. This law is far broader, its limits are vague and amorphous, and tradition cuts the other way. This law criminalizes in-person political advocacy *throughout the entire state*. The tradition of the First Amendment is that state-wide political advocacy is unfettered.

Defendants' reliance on *Purcell* is also misguided. *Purcell* prevents federal courts from making last-minute changes to election procedures to prevent voter confusion and avoid burdening election officials. Here, the injunction does not change any voting procedure or alter election administration. And the district court made a factual finding—supported by ample evidence—that the injunction will not cause confusion. District lines are unchanged. Ballots are unchanged. The time, place, and manner of voting is unchanged. Counting and certification are unchanged. The only thing that will change *is speech itself*.

Plaintiffs have already been chilled from canvassing for multiple election cycles. Censoring their speech in this upcoming election would greatly exacerbate the First Amendment harm. The Court should deny Defendants' request for a stay.

## BACKGROUND

In 2021, Texas enacted a sweeping election law known as "S.B.1." Section 7.04 of S.B.1 made it a felony—punishable by up to ten years in prison and a fine of up to $10,000—to give, offer, or receive "compensation

or other benefit" for any "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure," which S.B.1 calls "[v]ote harvesting services." Tex. Elec. Code § 276.015; *see* Tex. Penal Code § 12.34.

"Plaintiffs are membership-driven, non-partisan civil rights and social advocacy groups in Texas that regularly conduct in-person voter outreach and engagement activities, such as block-walking and candidate forums." App.F.2. "Plaintiffs have endorsed ballot measures (and some have supported candidates) aligned with their organizational missions and deployed staff, independent contractors and volunteers to engage with voters in person to increase turnout and electoral support for their causes." *Id*. "Plaintiffs' voter engagement activities generally occur in the weeks before elections (when they are most effective), when voters are likely to have received their mail ballots." *Id*. "During some outreach events, voters have taken out their mail ballots while speaking with Plaintiffs' organizers to ask questions about their ballots or request voting assistance." *Id*.

Plaintiffs brought these lawsuits to enjoin Defendants from enforcing Section 7.04 because it violated their First and Fourteenth Amendment rights. The district court held a bench trial from September 11, 2023, to

October 20, 2023, which included "about 80 witnesses (both live and by deposition testimony), [and] nearly 1,000 exhibits." App.A.6. The parties presented closing arguments on February 13, 2024. *Id.*

On September 28, 2024, the district court issued a 78-page decision enjoining Section 7.04 as an unconstitutional restriction on core political speech. The court found that Plaintiffs had standing to challenge Section 7.04 and that Defendants fit within *Ex parte Young*. On the merits, the court "assesse[d] the scope" of the law, determining that it reached in-person interactions with the requisite intent, and was not limited to fraud, coercion, or speech during active voting. App.A.53-57. The court found that Section 7.04 was subject to strict scrutiny "both because it is … content-based and because it burdens Plaintiffs' core political speech." App.A.47. The law "singles out specific subject matter—speech intended to deliver votes for a specific candidate or measure—for differential treatment." App.A.48 (cleaned up).

The court determined that Section 7.04 failed strict scrutiny. The court found that the law "is not 'necessary' to serve" the state's asserted interests because "preexisting provisions" already target the state's interests in criminalizing undue influence, coercion, and fraud. App.A.59-60. The court emphasized that "the State Defendants have not offered even *hypothetical* scenarios in which the Canvassing Restriction would

serve the government's interest … let alone identified an 'actual problem' in need of solving." App.A.60. The court concluded that the law was both "overbroad and underinclusive," and "unconstitutional in most of its applications," judged in relation to any plainly legitimate sweep. App. A.66.

The court also found the law unconstitutionally vague. The terms "compensation or other benefit" and "physical presence" were vague, failed to provide clear notice, and allowed arbitrary and discriminatory enforcement. App.A.66-74. The court entered a permanent injunction.

Defendants moved for a stay. The district court denied the motion. The court found that Defendants were not likely to succeed on the merits because Section 7.04 is a "content-based regulation of core political speech that is, without question, subject to strict scrutiny"; Defendants "will not suffer irreparable harm absent a stay"; "[t]he injury to Plaintiffs in the absence of injunctive relief—the chill on their core political speech in the weeks before an election—would be great"; and the "injunction thus serves the twin public interests of restoring clarity and vindicating the right to free speech." App.F.4-11.

## ARGUMENT

The district court enjoined S.B.1's ban on political canvassing in the presence of a mail ballot for violating the First and Fourteenth

Amendments. As the district court correctly determined, Defendants failed to satisfy any of the traditional stay factors: (1) Defendants have not "made a strong showing that [they are] likely to succeed on the merits"; (2) they will not be "irreparably injured absent a stay"; (3) a stay "will substantially injure" Plaintiffs; and (4) "the public interest lies" in protecting political advocacy in the crucial phase before an election. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted).

# I. Defendants Are Unlikely To Succeed On The Merits

## A. The Canvassing Restriction Violates The First And Fourteenth Amendments

### 1. Strict scrutiny applies

Section 7.04 is subject to strict scrutiny because it is content-based. Content-based restrictions on speech "single[] out specific subject matter for differential treatment." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (citation omitted). Indeed, a "law imposing criminal penalties on protected speech is a stark example of speech suppression." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). The canvassing restriction does just that: it criminalizes in-person interactions only if they are "intended to deliver votes for a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2). The law reaches speech only about a specific subject (about a "specific candidate or measure"). Indeed, it must be speech "for"—not against—a candidate or measure. That is the

very definition of political canvassing. *See Canvass*, Merriam-Webster's Unabridged Dictionary ("to … go to (persons) to solicit political support … in an election").

Notably, after a lengthy trial, Defendants failed to identify "how a canvasser could engage in an 'in-person interaction' with a voter 'intend[ing] to deliver votes for a specific candidate or measure' *without* engaging in core political speech." App.A.51-52 (alteration in original).

Defendants assert that the law is "a content-neutral restriction—analogous to time, place, and manner restrictions—that is subject at most to a deferential form of intermediate scrutiny under *Anderson/Burdick*." Br. 13. Not so. "Burdens on core political speech during elections, like *all* burdens on core political speech, are subject to strict scrutiny," not intermediate scrutiny under *Anderson/Burdick*. App.F.4-5; *see McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345-347 (1995). The law also is not a "content-neutral" time, place, or manner restriction because it is facially content-based: speech to deliver votes for specific candidates or measures is a crime. Speech on any other topic is lawful.

Defendants assert that "the ban functions like constitutionally permissible bans on solicitation near polling places," like the one the Supreme Court upheld in *Burson v. Freeman*, 504 U.S. 191, 210-11 (1992). Br. 13. But in *Burson*, the plurality applied *strict scrutiny* to buffer zones

around polling places—"a facially content-based restriction on political speech in a public forum." 504 U.S. at 198.[1] Strict scrutiny applies here as well. But unlike the law challenged in *Burson*, Section 7.04 does not satisfy strict scrutiny.

## 2. Section 7.04 does not satisfy strict scrutiny

Under strict scrutiny, laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The district court correctly found that Defendants failed to satisfy this "demanding" standard. *Id.* at 182.

Defendants emphasize concerns that "paid partisans will unduly pressure voters" with their "ballot in hand." Br. 13. But "nothing in the text of the Canvassing Restriction even limits its application to interactions involving *live* ballots," App.A.56, so it is not narrowly tailored to advancing that interest. Section 7.04 is triggered whenever a ballot is "physically present," even if the person is not filling it out. And a compensated canvasser may be in the "presence of a ballot" in a variety of benign scenarios—like when a voter brings her mail ballot to a town hall

---

[1] Section 7.04 triggers strict scrutiny under Justice Scalia's concurrence as well. He agreed the law was "content-based," but characterized it as a "viewpoint-neutral regulation of a nonpublic forum." 504 U.S. at 214. Section 7.04 is likewise "content-based," but applies statewide. The entire state of Texas is not a "nonpublic forum."

meeting, when a voter turnout organizer uses her own ballot to explain the mail voting process, or when a voter converses with a compensated canvasser who knocks on her door while the mail ballot remains sealed in its envelope. The law also reaches all "interactions," not merely undue influence or coercion.

Section 7.04's sweeping criminalization of speech is also not narrowly tailored to the government's interest because "preexisting provisions" of the Election Code already criminalize "the very conduct purportedly regulated" by the canvassing restriction. App.A.59-60. In particular, other provisions of the Election Code already make it a crime to "influence the independent exercise of the vote of another in the presence of the ballot." Tex. Elec. Code § 276.013(a).[2] Those provisions remain fully in force. Section 7.04's far broader prohibition of political speech accordingly is not "necessary" to serve those interests. App.A.60 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992)); *see Veterans of Foreign Wars v. Tex. Lottery Comm'n*, 760 F.3d 427, 441 (5th Cir. 2014).

The district court also correctly distinguished Section 7.04 from the buffer-zone law upheld in *Burson*, which prohibited solicitation of votes

---

[2] Other non-enjoined provisions of the Election Code also cover what is ordinarily understood as compensated "harvesting": to "compensate[] another person for depositing" mail-ballot carrier envelopes "in the mail" as part of a "performance-based compensation scheme." Tex. Elec. Code § 86.0052(a).

within 100 feet of the entrance to a polling place. App.A.63. *Burson* was a "rare" case where a law satisfied strict scrutiny because the limitation was well-defined, narrow, and grounded in a "long history, a substantial consensus, and simple common sense." 504 U.S. at 211. Unlike the buffer zones in *Burson*, the canvassing restriction "effectively converts the entirety of Texas into a polling place where conversations about candidates can create criminal liability." App.A.62. The "physical presence" requirement is undefined, so there is no clarity about how close the ballot needs to be. The law thus reaches into public parks and private homes statewide to criminalize core political speech. *Id.*

There is no American tradition of criminalizing those types of in-person interactions. Our tradition is protecting "discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966). "No form of speech is entitled to greater constitutional protection[.]" *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995).

The law in *Burson* also was neutral between speakers because it reached all vote solicitation. By contrast, Section 7.04 is underinclusive because it singles out compensated advocates for disfavored treatment, and singles out speech for (but not against) particular candidates or

measures. App.A.63-65. That underinclusivity is particularly suspect: there is no basis for treating "paid persuaders" worse than other persuaders when it comes to persuading voters themselves. Br. 13-14; *see Citizens United*, 558 U.S. at 339.[3] Defendants therefore are unlikely to succeed in establishing that Section 7.04 satisfies strict scrutiny.

### 3. Section 7.04 is unconstitutional as applied and on its face

The district court correctly held that the canvassing restriction is facially overbroad. A statute is "facially unconstitutional"—"even though it has lawful applications"—if it "prohibits a substantial amount of protected speech' relative to its 'plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 769-70 (2023) (citation omitted). Defendants argue that Plaintiffs have offered only "farfetched hypothetical examples of potentially chilled speech." Br. 11. Not so. Plaintiffs presented extensive evidence showing that they were chilled from engaging in core political speech because of the fear of prosecution. App.A.24-27. For example, Plaintiff OCA-Greater Houston "has stopped hosting in-person events" and "candidate forums" where "members have historically brought mail-in ballots and received voting assistance" because of the "threat of criminal

---

[3] Defendants have never even argued that Section 7.04 implicates the government's interest in preventing "the appearance or the reality" of "elected officials succumb[ing] to improper influences from independent expenditures." *Citizens United*, 558 U.S. at 361.

sanctions." App.A.25. Those are not "farfetched" or "hypothetical" examples. They are concrete applications of the canvassing restriction to core political speech in the lead-up to elections, backed by evidence at trial.

Defendants have not identified any circumstances in which the canvassing restriction has legitimate application and is not unnecessarily duplicative of other criminal prohibitions in the Election Code. They instead dispute the vagueness of the provision, including when a ballot is physically present or what qualifies as compensation or other benefit. *See* Br. 10-11. But they ignore many commonly occurring situations in which the canvassing restriction criminalizes protected political speech—such as a paid door-to-door canvasser speaking with a voter who comes to the door holding a mail ballot, or an organization holding a forum where its members bring their mail ballots. "Both overbroad and underinclusive, the Canvassing Restriction is unconstitutional in most of its applications, judged in relation to its legitimate applications to voter fraud or coercion." App.A.66.[4]

### 4. Section 7.04 is unconstitutionally vague

The district court was also correct in concluding that the canvassing restriction is unconstitutionally vague because Texans of "common

---

[4] Defendants' stay motion is silent as to Plaintiffs' as-applied challenges, *see* App.A.72-74, apparently conceding this Court is unlikely to rule in Defendants' favor with respect to those claims.

intelligence" would be left to "guess at its meaning." App.A.66-67 (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)). After a trial, the court found the law—and particularly the phrases "physical presence" and "compensation or other benefit"—spawned "widespread confusion" among election officials, law enforcement, and Plaintiffs alike. App.A.67-68. The uncertainty about the reach of the law greatly exacerbates the overbreadth problem. Indeed, the court identified "real-world scenarios in which Plaintiffs' core political speech w[as] actually chilled." App.A.71.

Defendants insist that "compensation" can *only* mean "wages and salary for work." Br. 9. But that is not an ordinary meaning of "compensation." *See, e.g.*, *Compensation*, Merriam-Webster's Unabridged Dictionary ("something that constitutes an equivalent or recompense"). Defendants also try to limit "benefit" to "something like" "employment, political favors, and official acts." Br. 9-10 (citing Tex. Elec. Code § 276.015(a)(1)). But no ordinary person would understand "benefit" to mean *only* promises of employment, political favors, and official acts. Any natural reading of "benefit" is far broader. *See, e.g.*, *Benefit*, Merriam-Webster's Unabridged Dictionary ("something that guards, aids, or promotes well-being: a good or helpful result or effect: advantage, good").

Defendants overlook the district court's findings of "widespread confusion," backed by extensive evidence. For example, Texas' former chief

voter fraud prosecutor, Jonathan White, testified that he would need to "'review[] the case law' to determine whether a meal, bus fare, or a gift bag containing a t-shirt" would make political speech a crime. App.A.22-23.

Defendants emphasize the law's scienter requirement. Br. 10. But "a person's knowledge that there is a ballot in the vicinity still does not tell them whether they are violating the statute." App.A.70. Without guidance on how close the ballot must be, people of "ordinary intelligence" are left with one rational choice: "self-censorship of core political speech." *Id.* (citation omitted).

Indeed, former Election Division Director Keith Ingram testified that the Secretary of State could not provide concrete guidance to canvassers about what qualifies as "physical presence." App.A.23. Worse, he added that "[w]hether or not a prosecutor agrees with us … is a different story entirely." *Id.* That is a sure sign of vagueness. *See Smith v. Goguen*, 415 U.S. 566, 575-76 (1974); *see also League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 947 (11th Cir. 2023).

## B. The District Court Has Jurisdiction

### 1. *Ex parte Young* applies

It is undisputed that the District Attorney Defendants fit within *Ex parte Young*'s exception to sovereign immunity. The district court correctly held that the Attorney General and Secretary of State do as well. Both

officials are "statutorily tasked with enforcing the challenged law" and engage in at least a "scintilla of 'enforcement.'" *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020).

First, the Election Code dictates that the Attorney General "shall investigate" allegations of election crimes in certain elections. Tex. Elec. Code § 273.001(a). The district court found that the OAG's Election Integrity Division investigates and prosecutes election-related allegations, and that "'vote harvesting' schemes … remain among the three most common elections-related allegations that the OAG pursues." App.A.18. The OAG has confirmed it has investigated an alleged violation of Section 7.04. App.A.18. Although the Attorney General does not unilaterally prosecute election crimes, *see State v. Stephens*, 663 S.W.3d 45 (Tex. Crim. App. 2021), the district court found that the OAG continues to successfully "refer[]" election-related "cases to local prosecuting attorneys and often seeks opportunities to partner with DAs to prosecute such allegations through deputization … or appointment *pro tem*" of OAG prosecutors. App.A.18 (citation omitted). Defendants do not challenge those factual findings. Investigating "vote harvesting" crimes, referring them for prosecution, and partnering with local prosecutors is more than a "scintilla" of enforcement for Section 7.04.

Second, the district court found that the Secretary of State "routinely collaborates with the OAG to enforce election laws in accordance with her mandatory duties under the Election Code." App.A.19. The Code requires her to "evaluate information she 'receiv[es] or discover[s]' about potential election crimes and, if she 'determines that there is probable cause to suspect that criminal conduct occurred, the [S]ecretary *shall* promptly refer the information to the attorney general' and provide all pertinent documents and information in [her] possession." *Id.* (emphasis added) (quoting Tex. Elec. Code § 31.006). The court also found that "[t]he Secretary has received allegations related to mail ballot 'vote harvesting,' which she has referred to the OAG." App.A.20. The Secretary is "a gathering point for election complaints" and thereby plays a central role in prosecuting "vote harvesting" offenses. App.A.19. Again, Defendants do not challenge the court's factual findings, which establish that *Ex parte Young* applies.

## 2. Plaintiffs have standing

"Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). So too here: Plaintiffs have standing because the canvassing restriction

forbids their own employees and volunteers from exercising their First Amendment rights.

Defendants assert that Plaintiffs' fear of prosecution is "imaginary or wholly speculative." Br. 17 (citation omitted). But "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will *assume* a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (citation omitted). And in a multi-week trial, Defendants failed to present evidence—let alone compelling evidence— that Plaintiffs would not face a credible threat of prosecution.

To the contrary, the district court made factual findings that the Attorney General "has demonstrated a willingness to enforce the Canvassing Restriction"; the Secretary "has received allegations related to mail ballot 'vote harvesting'" which she has referred to the OAG for investigation; and Plaintiffs' injuries are traceable to the Attorney General's role in investigating and prosecuting election crimes (including for "vote harvesting"), and traceable to the Secretary's role in reviewing complaints about potential violations of election laws (including "vote harvesting") and duty to refer cases to the Attorney General. App.A.17, 20, 44. The district court further found, based on extensive evidence, that this

threat of enforcement had chilled Plaintiffs' speech and prevented them from engaging in canvassing. App.A.39-41.

Plaintiffs therefore have standing, and Defendants are unlikely to succeed on the merits.

## II. Defendants Will Not Suffer Irreparable Injury Absent A Stay And *Purcell* Does Not Apply

The remaining injunction factors heavily weigh against a stay pending appeal, which would chill core political speech during the most crucial phase of an election where political speech is most important. First, the district court found that "Defendants will not suffer irreparable harm absent a stay" because "the injunction does not direct Defendants to change any election procedures before the election." App.F.9. Indeed, Defendants "failed to offer even *hypothetical* scenarios" in which the canvassing restriction "would serve the government's interest in ways that are not already accomplished by other criminal provisions of the Election Code, let alone identified an 'actual problem' in need of solving." App.F.10 (emphasis in original) (quoting *United States v. United Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822 (2000)). Moreover, "there can be no irreparable harm to a [government] when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties." *See Entertainment Software Ass'n v.*

*Foti*, 451 F. Supp. 2d 823, 837 (M.D. La. 2006); *accord Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010).

On appeal, Defendants fail to establish clear error in the district court's factual findings. Instead, Defendants rely solely on the *Purcell* principle under which "federal courts ordinarily should not enjoin a state's election laws in the period close to an election" because "election officials need substantial time to plan for elections" and last-minute changes often cause "significant cost, confusion, or hardship," *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). No such risks exist here. The district court made findings—backed by substantial evidence—that its injunction "does not affect any voting or election procedures and thus does not create the potential for confusion and disruption of the election administration contemplated by the *Purcell* principle." App.A.75 (citation omitted).

Defendants contend that Section 7.04 "governs the mechanism of mail-in balloting *after* such ballots have already been dispatched." Br. 4. That is incorrect. The canvassing restriction is a content-based prohibition on protected speech—namely, compensated "in-person interaction[s]" with voters "intended to deliver votes for a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2).

Section 7.04 does not govern the mechanism of mail voting. It does not govern the time, place, or manner of voting. It does not govern the counting or certification of ballots. The same ballots will be mailed to the same voters, returned to the same place, and counted the same way, with or without Section 7.04. Any training that counties, election judges, and clerks took thus remains unaffected by the injunction. *Contra* Br. 5. Section 7.04 governs *speech* about candidates and issues, not election administration.

The district court found that "it is the overbreadth and vagueness of the Canvassing Restriction itself that confused organizers and voters— and apparently the State Defendants themselves—and has chilled Plaintiffs' speech." App.F.11. The injunction alleviates that confusion, rather than creating it. *See Kim v. Hanlon*, 99 F.4th 140, 160 (3d Cir. 2024) (refusing to stay injunction under *Purcell* where "District Court's order would reduce, if not eliminate voter confusion"); *Jacksonville Branch of NAACP v. City of Jacksonville*, 2022 WL 16754389, at *3 (11th Cir. Nov. 7, 2022) (similar). As the district court explained, the injunction "serves the . . . public interest[]" by "restoring clarity." App.F.11.

Defendants point to a letter accompanying mail ballots, informing voters that "any person who 'deposits your [c]arrier [e]nvelope in the mail or delivers your ballot to a common or contract carrier' must disclose

'whether he or she received or accepted any form of compensation or other benefit.'" Br. 5. But that disclosure refers to a different provision of the Election Code that requires "[a] person who assists a voter to prepare a ballot," including "depositing a sealed carrier envelope in the mail," to disclose "whether the person received or accepted any form of compensation or other benefit." Tex. Elec. Code § 86.010. The injunction has no effect on that law.

Defendants fail to cite a single case where *Purcell* was applied to allow a state to criminalize core political speech. By contrast, an Illinois district court declined to apply *Purcell*—less than a month before the election—in a decision enjoining a campaign finance law that burdened the plaintiffs' First Amendment rights. *See Chancey v. Illinois State Bd. of Elections*, 635 F. Supp. 3d 627, 629-30, 644 (N.D. Ill. 2022). The court reasoned that the injunction did "not implicate the same concerns" as *Purcell* because "it is difficult to imagine … that if relief is granted, then voters will be confused about whether, how, where, when, or for whom they can vote." *Id.* at 635-42, 644. The same is true here.

Moreover, even if *Purcell* applied, it would be "overcome" because (i) "the underlying merits are entirely clearcut in favor of [Plaintiffs]"; (ii) Plaintiffs "would suffer irreparable harm absent the injunction"; (iii) Plaintiffs have "not unduly delayed bringing the complaint to court";

and (iv) "the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). Far from causing significant costs, confusion, or hardship, the injunction protects voters' and advocates' core political speech at a time when their "speech is most critical"—"in the weeks before an election." App.F.3, 10; *see Citizens United*, 558 U.S. at 335.

## III. A Stay Will Substantially Injure Plaintiffs

The district court correctly found that "[t]he injury to Plaintiffs in the absence of injunctive relief—the chill on their core political speech in the weeks before an election—would be great." App.F.10-11. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (citation omitted). A plaintiff satisfies the "substantial threat of irreparable injury" prong by showing the challenged statute "represents a substantial threat to his First Amendment rights." *Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996). And political speech "occupies the core of the protection afforded by the First Amendment." *McIntyre*, 514 U.S. at 346-47.

The district court detailed the law's "chilling effect on speech," including chilling Plaintiffs from "conduct[ing] in-person community events and political outreach to voters," causing Plaintiffs to "limit[] their

in-person interactions with voters in the weeks before elections," and "impair[ing] Plaintiffs' ability to recruit members." App.A.24, 26, 76. A stay therefore would cause grave harm to Plaintiffs' constitutional rights.

## IV. A Stay Would Harm The Public Interest

The district court correctly found "[t]he public interest is not served by Texas officials' enforcement of a restriction on speech that Plaintiffs have shown violates their fundamental rights." App.A.76. "Injunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 298 (5th Cir. 2012). Defendants note that "the State is the appealing party." Br. 7 (citation omitted). But "an injunction preventing" state officials from enforcing an unconstitutional law serves the public interest. *Ingebretsen*, 88 F.3d at 280. Specifically, the permanent injunction "serves the … public interest[] of restoring clarity," and "vindicate[s] the right to free speech." App.F.11.

## CONCLUSION

For these reasons, this Court should deny Defendants' motion for a stay pending appeal and lift the administrative stay.

Respectfully submitted,

/s/ Nina Perales

Nina Perales
Fátima L. Menéndez
Julia R. Longoria
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
nperales@maldef.org

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, NY 10004
(212) 589-8000

*Counsel for La Unión del Pueblo
Entero; Southwest Voter
Registration Education Project;
Mexican American Bar
Association of Texas; Texas
Hispanics Organized for Political
Action; JOLT Action; William C.
Velasquez Institute; FIEL
Houston, Incorporated*

/s/ Zachary D. Tripp

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

Aaron J. Curtis
Charles Gehnrich
Natalie Howard
Augustus Ipsen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8901

Sean Morales-Doyle
Jasleen K. Singh
Patrick A. Berry
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(212) 463-7308

Leah J. Tulin
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
1140 Connecticut Avenue NW,
Suite 1150
Washington, DC 20036
(202) 650-6397

*Counsel for Friendship-West
Baptist Church; Texas Impact;
James Lewin*

/s/ Zachary Dolling
Zachary Dolling
Sarah Chen
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
(512) 474-5073
zachary@texascivilrightsproject.org

Adriana Pinon
Thomas Buser-Clancy
Edgar Saldivar
Savannah Kumar
Ashley Harris
ACLU FOUNDATION OF TEXAS, INC.
5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146

Christopher McGreal
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816

*Counsel for OCA-Greater Houston
and League of Women Voters of Texas*

Adriel I. Cepeda Derieux
Dayton Campbell-Harris
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334

Jessica Ring Amunson
JENNER & BLOCK LLP
1099 New York Ave. NW,
Suite 900
Washington, DC 20001
(202) 639-6000

October 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

/s/ *Zachary D. Tripp*

Zachary D. Tripp
Weil, Gotshal & Manges LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

October 8, 2024

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 5,164 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14-point size.

*/s/ Zachary D. Tripp*
Zachary D. Tripp
Weil, Gotshal & Manges LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

October 8, 2024