No. 24-50783

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

LA UNION DEL PUEBLO ENTERO, *et al.*,
*Plaintiffs-Appellees*,

v.

GREGORY W. ABBOTT, *et al.*,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Texas
(Case No. 5:21-CV-00844-XR)

## LULAC PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO APPELLANTS' MOTION FOR STAY PENDING APPEAL

Uzoma N. Nkwonta
Christopher D. Dodge
Marcos Mocine-McQueen
Julie Zuckerbrod*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
cdodge@elias.law
mmcqueen@elias.law
jzuckerbrod@elias.law

*Admission pending*

*Counsel for Plaintiffs-Appellees LULAC Texas, Texas Alliance for Retired Americans, Texas AFT, and Voto Latino*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

BACKGROUND ......................................................................... 3

LEGAL STANDARD ................................................................. 6

ARGUMENT .............................................................................. 6

    I.    Appellants are unlikely to succeed on the merits. .................... 6

        A.    Appellants' jurisdictional arguments do not apply to
LULAC Plaintiffs. ............................................................... 6

        B.    The Canvassing Restriction is an unconstitutional
restriction on core political speech. .................................. 9

            1.    The Court must apply strict scrutiny. ....................... 9

            2.    The Canvassing Restriction is not narrowly
tailored to further any compelling state
interest. .................................................................. 13

            3.    The district court correctly assessed LULAC
Plaintiffs' pre-enforcement challenge. .................... 17

    II.    *Purcell* does not require a stay. ............................................... 18

        A.    *Purcell* does not apply because the injunction does
not burden or confuse voters or administrators. ............. 19

        B.    Texans cannot be subject to unconstitutional
prosecution merely because an election is near. ............. 22

        C.    Even under *Purcell*'s heightened standards, a stay
would be improper. ............................................................ 24

    III.    The remaining equitable factors counsel against a stay. ........ 26

CONCLUSION ......................................................................... 27

CERTIFICATE OF ELECTRONIC SUBMISSION ............................. 29

CERTIFICATE OF SERVICE .................................................... 30

CERTIFICATE OF COMPLIANCE ....................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979) ............................................................... 18

*Barilla v. City of Houston,*
13 F.4th 427 (5th Cir. 2021) ................................................... 7

*Book People, Inc. v. Wong,*
91 F.4th 318 (5th Cir. 2024) ................................................. 27

*Buckley v. Am. Const. L. Found., Inc.,*
525 U.S. 182 (1999) ............................................................... 11

*Burson v. Freeman,*
504 U.S. 191 (1992) ......................................................... 16, 17

*Campbell v. Buckley,*
203 F.3d 738 (10th Cir. 2000) .............................................. 13

*Citizens United v. Federal Election Comm'n,*
558 U.S. 310 (2010) ............................................................... 10

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
596 U.S. 61 (2022) ................................................................. 10

*Coal. for Good Governance v. Kemp,*
558 F. Supp. 3d 1370 (N.D. Ga. 2021) ................................. 23

*Cole v. Gen. Motors Corp.,*
484 F.3d 717 (5th Cir. 2007) ................................................... 8

*Cotham v. Garza,*
905 F. Supp. 389 (S.D. Tex. 1995) ....................................... 11

*Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas
Lottery Comm'n,*
760 F.3d 427 (5th Cir. 2014) ................................... 10, 15, 16

*DNC v. Wis. State Leg.*,
    141 S. Ct. 28 (2020) ...................................................................... 19

*Elrod v. Burns*,
    427 U.S. 347 (1976) ...................................................................... 27

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) .................................................................... 8, 9

*Freedom From Religion Found., Inc. v. Mack*,
    4 F.4th 306 (5th Cir. 2021) ......................................................... 27

*Fusaro v. Cogan*,
    930 F.3d 241 (4th Cir. 2019) ...................................................... 13

*In re Georgia Senate Bill 202*,
    No. 1:21-CV-01259-JPB, 2023 WL 5334582
    (N.D. Ga. Aug. 18, 2023) ............................................................ 27

*Kareem v. Cuyahoga Cnty. Bd. of Elections*,
    95 F.4th 1019 (6th Cir. 2024) ..................................................... 24

*League of Women Voters of Mo. v. Ashcroft*,
    336 F. Supp. 3d 998 (W.D. Mo. 2018) ....................................... 27

*League of Women Voters of N.C. v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014) ...................................................... 27

*Lichtenstein v. Hargett*,
    83 F.4th 575 (6th Cir. 2023) ....................................................... 13

*Longoria v. Paxton*,
    585 F. Supp. 3d 907 (W.D. Tex. 2022) ....................................... 23

*Mazo v. New Jersey Sec'y of State*,
    54 F.4th 124 (3d Cir. 2022) ........................................................ 13

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) .................................................................. 2, 11

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022) .............................................................. 24, 25

*Meyer v. Grant,*
486 U.S. 414 (1988) ...................................................................... 1, 9, 11

*Meyers ex rel. Benzing v. Texas,*
410 F.3d 236 (5th Cir. 2005) .................................................................. 7

*Mi Familia Vota v. Ogg,*
105 F.4th 313 (5th Cir. 2024) ............................................................... 5

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
559 U.S. 229 (2010) ............................................................................ 18

*Moody v. NetChoice, LLC,*
144 S. Ct. 2383 (2024) ......................................................................... 9

*Nat'l Press Photographers Ass'n v. McCraw,*
90 F.4th 770 (5th Cir. 2024) .............................................................. 2, 7

*Nken v. Holder,*
556 U.S. 418 (2009) .............................................................................. 6

*Plaquemines Par. v. Chevron USA, Inc.,*
84 F.4th 362 (5th Cir. 2023) .............................................................. 26

*Purcell v. Gonzalez,*
549 U.S. 1 (2006) ............................................................................... 19

*R.A.V. v. City of St. Paul,*
505 U.S. 377 (1992) ........................................................................... 13

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ...................................................................... 10, 12

*Robinson v. Ardoin,*
37 F.4th 208 (5th Cir. 2022) (per curiam) .......................................... 25

*Serafine v. Branaman,*
810 F.3d 354 (5th Cir. 2016) ................................................................ 3

*Serv. Emps. Int'l Union v. City of Hous.,*
595 F.3d 588 (5th Cir. 2010) ............................................................. 10

*Speech First, Inc. v. Fenves*,
   979 F.3d 319 (2020)....................................................8, 18

*State v. Stephens*,
   663 S.W.3d 45 (Tex. Crim. App. 2021) ......................4, 7, 20

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................18

*Towbin v. Antonacci*,
   885 F. Supp. 2d 1274 (S.D. Fla. 2012)............................23

*U.S. v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000) ........................................................13

*Veasey v. Perry*,
   769 F.3d 890 (5th Cir. 2014)........................................6, 26

*Voting for America Inc. v. Steen*,
   732 F.3d 382 (5th Cir. 2013)......................................12, 13

**Statutes**

Tex. Elec. Code §32.031......................................................20

Tex. Elec. Code §32.071......................................................20

Tex. Elec. Code §64.012(a) ................................................14

Tex. Elec. Code §64.034......................................................21

Tex. Elec. Code §64.036......................................................14

Tex. Elec. Code §64.0321..............................................21, 22

Tex. Elec. Code §86.010(e)...........................................21, 22

Tex. Elec. Code §276.013....................................................21

Tex. Elec. Code §276.013(a) ..............................................14

Tex. Elec. Code §276.015.................................1, 3, 16, 21

Tex. Elec. Code §276.015(a)) ........................................ 3, 9, 12

Tex. Elec. Code §276.015(f) ........................................ 3

Tex. Penal Code §12.34 ........................................ 3

**Other Authorities**

Tex. Sec'y of State, *Form 6-26*, https://perma.cc/QGT9-UH9E ............. 21

Tex. Sec'y of State, *Form 6-29*, https://perma.cc/N5FYXSCL................. 21

# INTRODUCTION

Shortly after the 2020 elections, Texas enacted a law that—among other changes—made it a *felony* to engage in speech "intended to deliver votes for a specific candidate or measure," if the speaker is in the "presence" of a ballot and also happened to receive "compensation" or any "other benefit." Tex. Elec. Code §276.015 ("Canvassing Restriction"). On its face, the Canvassing Restriction punishes core political speech: efforts to persuade someone to support "a specific candidate or measure," *id.*, are precisely the sort of "interactive communication[s] concerning political change" where First Amendment protections are at their "zenith." *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988). The district court, after a six-week trial featuring extensive testimony about the Canvassing Restriction's chilling effect, properly enjoined this free speech violation.

Appellants—the Texas Attorney General, Secretary of State, and various Republican Party intervenors—seek to stay the district court's well-reasoned order. To do so, they rely overwhelmingly on procedural arguments, few of which apply to LULAC Plaintiffs—a collection of civic organizations that engage in voter mobilization and canvassing efforts throughout Texas and who seek no relief from Appellants. For example,

Appellants claim sovereign immunity shields them as state officials. But LULAC Plaintiffs sued only county district attorneys who did not—and under Fifth Circuit law *cannot*—assert sovereign immunity. *See Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 787 (5th Cir. 2024). So, too, with Appellants' standing arguments, which depend chiefly upon traceability theories inapplicable to district attorney defendants—none of whom even seek to stay the injunction.

Appellants' reliance on *Purcell* is also misses the mark. LULAC Plaintiffs' injunction runs to *criminal prosecutors*—not election administrators. And *Purcell* does not give prosecutors license to enforce criminal laws that unconstitutionally burden political speech simply because an election is near. Quite the opposite: the impending election means First Amendment protections are at their apex, as "[n]o form of speech is entitled to greater constitutional protection" than speech meant to persuade voters. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). That is all the more reason why the Court should decline to enter uncharted waters and extend *Purcell* to political discourse.

The district court properly enjoined the Canvassing Restriction, and this Court should decline to restore such sweeping prohibitions on

political speech in the moments when the First Amendment "has its fullest and most urgent application." *Serafine v. Branaman*, 810 F.3d 354, 361 (5th Cir. 2016).

## BACKGROUND

In 2021, Texas adopted Senate Bill 1 ("S.B. 1"), an omnibus set of election rules and restrictions. As relevant here, S.B. 1 banned any individual from interacting with a voter "in the presence of an official ballot or a ballot voted by mail" if they "intended to deliver votes for a specific candidate or measure" and also happened to receive any "compensation or other benefit." Tex. Elec. Code ("TEC") §276.015. The term "benefit" includes "anything reasonably regarded as a gain or advantage." *Id.* §276.015(a)(1). Violating the Restriction is a felony punishable with imprisonment for up to 10 years, and a fine of up to $10,000. *See* TEC §276.015(f); Tex. Penal Code §12.34.

Plaintiffs LULAC Texas, Texas Alliance for Retired Americans, and Texas AFT each operate extensive in-person canvassing operations in pursuit of their respective missions. App.A.12-14.[1] These operations rely

---

[1] "App.A" refers to State Appellants' Appendix A—the district court's Findings of Fact and Conclusions of Law, ECF No. 1157.

on both paid canvassers and volunteers who often receive benefits for their efforts, such as gas cards, free food, and the like. *Id.*

Faced with the threat of felony prosecution for seeking to advance their missions, these organizations sued the district attorneys of Travis, Dallas, Hidalgo, and Harris Counties ("County DAs") to enjoin the Canvassing Restriction.[2] They alleged the Canvassing Restriction violates the First Amendment because it is a content-based restriction and a direct regulation of political speech.

During a six-week trial, the district court heard unrefuted testimony that the Canvassing Restriction chilled LULAC Plaintiffs' canvassing efforts. *Id.* at 24-27, ¶¶80-86. For example, the Alliance's paid field organizer and long-time member testified to her confusion about the Restriction's meaning and explained she would need to cease certain in-person advocacy work as a result. *Id.* at 25, ¶82. Texas AFT's President described how his organization had to significantly scale back its paid

---

[2] LULAC Plaintiffs' original complaint named Attorney General Ken Paxton as a defendant for this claim. The Texas Court of Criminal Appeals subsequently held the Attorney General lacks authority to unilaterally prosecute election law offenses, explaining it is "the specific duty of county and district attorneys" to prosecute such crimes. *State v. Stephens*, 663 S.W.3d 45, 52 (Tex. Crim. App. 2021). LULAC Plaintiffs therefore amended their complaint to name the County DAs instead.

block-walker program because of the Restriction. *Id.* at 26, ¶84. LULAC's President explained how LULAC restricted in-person get-out-the-vote efforts meant to aid seniors due to concerns about the Restriction. *Id.* The district court credited this testimony in its fact-finding. *Id.*

The County DAs each confirmed their responsibility for enforcing the Canvassing Restriction and stipulated that they had not disclaimed enforcement of the Restriction. *Id.* at 20, ¶64.[3] Several emphasized recent state legislation that threatened district attorneys with removal if they refused to prosecute certain criminal offenses. ECF No. 753-7 ¶4; ECF No. 753-13 ¶8; App.A.20-21 ¶65.

The district court permanently enjoined the County DAs, among others, from enforcing the Canvassing Restriction. App.A.77-78. None of the County DAs have yet appealed or sought to stay the injunction. Instead, the Texas Secretary of State and Attorney General—joined by various Republican Party intervenors—have appealed. The district court

---

[3] The Harris County District Attorney alone asserted sovereign immunity. The district court dismissed all constitutional claims against her following this Court's ruling in *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024). The remaining district attorneys have not asserted sovereign immunity.

denied their motion for a stay on October 1. This motion followed on October 3.

## LEGAL STANDARD

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). The movant bears the burden of establishing: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citation omitted).

## ARGUMENT

**I.    Appellants are unlikely to succeed on the merits.**

### A.    Appellants' jurisdictional arguments do not apply to LULAC Plaintiffs.

Appellants argue the district court lacked jurisdiction to enjoin *them* as state officials, but they do not seriously dispute that the court had subject matter jurisdiction over LULAC Plaintiffs' claims against the

County DAs. To start, the County DAs did not assert sovereign immunity, waiving any such defense. *See* App.A.27, n.18; *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 245 (5th Cir. 2005). Further, this Court recently held that district attorneys lack any right to invoke sovereign immunity because they are not state officials. *McCraw*, 90 F.4th at 787.

Even if the County DAs *could* have invoked sovereign immunity, *Ex parte Young*'s exception would apply. The district court found that it is the "specific duty" of the County DAs to prosecute violations of the Canvassing Restriction, App.A.42; *see also Stephens*, 663 S.W.3d at 52, and each district attorney sued by LULAC Plaintiffs stipulated that they will enforce the Canvassing Restriction absent an injunction in this case, *see* App.A.20 ¶64 (citing ECF No. 753-6 (Travis) ¶¶3-6; ECF No. 753-7 (Dallas) ¶¶3-4; ECF No. 753-13 (Hidalgo) ¶¶3-6). Appellants do not dispute the district court's findings, let alone claim they are clear error. LULAC Plaintiffs thus face no sovereign immunity bar.

LULAC Plaintiffs have standing to sue the County DAs for similar reasons. They wish to engage voters through canvassing efforts that are at least "arguably proscribed" by §7.04. *Barilla v. City of Houston*, 13 F.4th 427, 433 (5th Cir. 2021) (citing *Susan B. Anthony List v. Driehaus*,

573 U.S. 149, 161 (2014)). Because the County DAs have not disclaimed enforcement, LULAC Plaintiffs face a substantial threat of prosecution that has chilled their speech, App.A.39-40—an injury directly traceable to the County DAs' duty to enforce the Canvassing Restriction, *id.* 42-43; *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (2020) ("courts will assume a credible threat of prosecution in the absence of compelling contrary evidence"). The State does not dispute these findings either.

The Supreme Court's decision in *Hippocratic Medicine* only serves to *confirm* LULAC Plaintiffs' standing. *Contra* Mot.17 n.5 (citing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024)). That decision held organizations may sue when a challenged policy "affect[s] and interfere[s]" with their "core" activities. 602 U.S. at 395. LULAC Plaintiffs introduced overwhelming evidence explaining how the Canvassing Restriction severely impairs their canvassing work. *E.g.*, App.A.22-25 ¶¶72, 76, 82, 84. The district court agreed, and Appellants provide no reason to disturb that finding.[4] Because LULAC Plaintiffs are directly regulated by the Canvassing Restriction, they "invariably satisfy

---

[4] This Court must accept the district court's factual findings on standing absent clear error. *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007).

both the injury in fact and causation requirements." *Hippocratic Medicine*, 602 U.S. at 382. (explaining standing is "easy to establish" in such instances).[5]

## B. The Canvassing Restriction is an unconstitutional restriction on core political speech.

### 1. The Court must apply strict scrutiny.

The Canvassing Restriction prohibits speech "intended to deliver votes for a specific candidate or measure," TEC §276.015(a)(2), which is precisely the kind of "interactive communication[s] concerning political change" that constitutes core political speech. *Meyer*, 486 U.S. at 421-22. The district court found that by criminalizing these in-person interactions, the Canvassing Restriction limits LULAC Plaintiffs from engaging in core political advocacy central to their missions. App.A.12-14 ¶¶26, 30-32, 35-36. Appellants do not dispute these findings, never mind claim clear error. Thus, because the Canvassing Restriction "burden[s] political speech," it is "subject to strict scrutiny, which requires the

---

[5] The district court also concluded LULAC Plaintiffs "would also have associational standing as membership organizations with members in Texas who receive compensation or other benefits in connection with their in-person canvassing activities." App.A.45 n.32. Appellants' citation to *Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024), is inapposite; *NetChoice* made no holding about associational standing.

Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010) (cleaned up); *Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 438 (5th Cir. 2014).

Similarly, it is well-settled that strict scrutiny applies to regulations that restrict speech based on its content. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The Canvassing Restriction does exactly that: it "single[s] out specific subject matter for differential treatment"—namely speech intended to deliver votes for a specific candidate or measure. *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quoting *Reed*, 576 U.S. at 169). No other category of speech is targeted for similar disfavored treatment. *Serv. Emps. Int'l Union v. City of Hous.*, 595 F.3d 588, 596 (5th Cir. 2010) (holding that content-based regulations are those that distinguish between "favored" and "disfavored speech").[6]

---

[6] The Supreme Court has been clear that both content-based regulations and restrictions on political speech are subject to strict scrutiny, *e.g.*, *City of Austin*, 596 U.S. at 69; *Citizens United*, 558 U.S. at 340, notwithstanding its occasional use of the term "exacting" rather than "strict."

Appellants seek to lower their burden by insisting the *Anderson-Burdick* balancing test applies. Mot.12. That is wrong. The Supreme Court has rejected similar attempts to conflate restrictions on core political speech with regulations that simply "control the mechanics of the electoral process." *McIntyre*, 514 U.S. at 345. *Anderson-Burdick* does not apply to "a regulation of pure speech" even in the election context. *Id.*; *see also Cotham v. Garza*, 905 F. Supp. 389, 396 (S.D. Tex. 1995) (same). As Justice Thomas summarized:

> When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny and required that the legislation be narrowly tailored to serve a compelling governmental interest.

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring). To hold otherwise would perversely mean speech restrictions receive *less* protection in the election context, where "the importance of First Amendment protections" is at its "zenith." *Meyer*, 486 U.S. at 425; *Serafine*, 810 F.3d at 361 (similar).

Appellants are also wrong that the Canvassing Restriction is "content neutral" just because it applies where an individual is in the physical presence of a ballot. Mot.13. To find a §7.04 violation, a factfinder must determine whether or not a canvasser "intended to

deliver votes for a specific candidate or measure." TEC §276.015(a)(2).
That is an obvious inquiry into the content of the speaker's message. *Cf.*
*Reed*, 576 U.S. at 170 ("The fact that a distinction is event based does not
render it content neutral."). Such regulations are presumed
unconstitutional unless "the government proves that they are narrowly
tailored to serve compelling state interests." *Id.* at 163.

Appellants' final gambit is to cite *Voting for America Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013), which they misread. *Steen* concerned
provisions that "regulate[d] the appointment and activities of volunteer
deputy registrars ('VDRs')," who are "individuals trained and
empowered" by Texas to collect "and deliver completed voter registration
applications." *Id.* at 385. The Court distinguished regulations governing
such state-regulated actors—who were required to perform the
ministerial task of returning completed applications to registrars—from
laws governing speech meant to "further[] [the speakers'] own or th[eir]
sponsors' advocacy." *Id.* at 393. *Steen* thus carefully distinguished
restrictions on "core political speech" where "advocates are trying to
persuade the voting public to consider supporting an initiative or … a
candidate." *Id.* (distinguishing advocacy performed by petition

circulators from ministerial tasks of VDRs). "[T]he character of any speech" limitations on VDRs in *Steen* is "qualitatively different from the political speech restricted by" the Canvassing Restriction, which impedes LULAC Plaintiffs' advocacy. *Id.*

Finally, accepting Appellants' argument would place this Court at odds with at least four other circuits that have uniformly rejected applying *Anderson-Burdick* in this context. *E.g.*, *Lichtenstein v. Hargett*, 83 F.4th 575, 593 (6th Cir. 2023) (explaining the Supreme Court has "applied strict scrutiny—not *Anderson-Burdick* balancing—to many election laws" implicating political speech) (collecting cases); *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 140 (3d Cir. 2022) (same); *Fusaro v. Cogan*, 930 F.3d 241, 258 (4th Cir. 2019) (same); *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000) (same). Appellants' strained reading of *Steen* offers no basis to cause such rupture.

### 2. The Canvassing Restriction is not narrowly tailored to further any compelling state interest.

To justify the Canvassing Restriction, Appellants must identify an "actual problem" in need of solving, *U.S. v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822-23 (2000), and demonstrate that restricting speech is necessary to the solution, *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 395

(1992). Appellants fall woefully short of this rigorous narrow tailoring standard, particularly given the district court's undisputed findings.

The Canvassing Restriction fails at the outset because it does not further a compelling state interest. Appellants assert Texas has a compelling interest in protecting voters from undue influence. Mot.13. But they fail to explain how the Canvassing Restriction furthers that interest, given preexisting criminal provisions that already prohibit (1) unduly influencing a person's vote in the presence of a ballot or during the voting process, TEC §276.013(a)(1); (2) voting or attempting to vote a ballot belonging to another person without their consent or specific direction, TEC §64.012(a)(3); and (3) suggesting how the voter should vote while providing assistance or preparing a voter's ballot in a way other than what the voter directs, TEC §64.036. As the district court concluded, "these preexisting provisions target the very conduct purportedly regulated by the Canvassing Restriction," rendering the law unnecessary to serve the government's purported interest in preventing voter coercion. App.A.59-60. Appellants fail to identify "even *hypothetical* scenarios in which the Canvassing Restriction would serve the

government's interest in ways that are not already accomplished" by existing laws. App.A.60.

The Canvassing Restriction is also not "narrow[]" in any sense. *Veterans of Foreign Wars*, 760 F.3d at 440. Appellants attempt to characterize the Canvassing Restriction as a limited prohibition that "restricts paid persuaders from advocating while physically in the presence of a ballot," Mot.14, but they fail to dispute the district court's findings that there is widespread confusion about how to interpret the Canvassing Restriction, leading to "an environment in which Plaintiffs and their members fear that they risk criminal sanction for assisting and speaking with voters." App.A.72; *see also id.* at 21-24, ¶¶66-79. Appellants likewise ignore §7.04's plain text, which fails to clearly explain when core political speech—urging others to support a cause or candidate—is permitted, and when the same speech constitutes a felony. For example, because the term "physical presence" is not defined, LULAC Plaintiffs "are unsure how physically proximate a ballot must be to a volunteer or employee to violate the Canvassing Restriction and risk exposure to a decade in prison." App.A.23, ¶75. Similarly, it is unclear whether providing modest gifts or other benefits to volunteers and short-

term employees is unlawful because "compensation" is not defined anywhere. App.A.22, ¶71. These vague and undefined terms have chilled Plaintiffs' interactions with voters because "they are afraid to advocate for ballot measures or candidates in circumstances where voters have historically brought their mail ballots and/or requested assistance." App.A.73; *see also id.* at 24-27, ¶¶80-86.

Nor is there any doubt the law "sweep[s] too broadly." *Veterans of Foreign Wars*, 760 F.3d at 440. Appellants have no answer to the district court's conclusion that "the legislature could have crafted language specifically targeting speech that is 'intended to defraud, confuse, unduly influence or deceive,'" and "rather than restricting speech whenever a ballot is merely 'present,' the restriction at issue easily could have been limited to instances when a voter is actively completing their ballot." App.A.61. Instead, the Canvassing Restriction's broad terms prohibit voter persuasion whenever a ballot is "presen[t]," TEC §276.015, effectively treating the *entirety of Texas* as a polling place where conversations about candidates and causes risk criminal liability.

Appellants try to analogize the Canvassing Restriction to the polling place buffer upheld in *Burson v. Freeman,* 504 U.S. 191, 210

(1992), but that case only highlights the Canvassing Restriction's failings. To start, the 100-foot buffer zone at issue in *Burson* imposed a clearly-defined and "minor geographic limitation" on speech. *Id.* at 210. In contrast, under the Canvassing Restriction, "public parks and streets will vacillate from moment to moment" as places for speech based on whether a ballot is present. App.A.62. *Burson* rejected just such geographically amorphous restrictions, explaining that beyond "some measurable distance from the polls … governmental regulation of vote solicitation could effectively become an impermissible burden." 504 U.S. at 210. Further, the restriction in *Burson* was linked directly to the act of voting—it restricted speech "around the voting area" on "election-day." *Id.* at 193, 207-08. The Canvassing Restriction *could* have been narrowly drawn that way, App.A.61, but instead proscribes speech—anytime, anywhere—if a ballot is nearby.

### 3. The district court correctly assessed LULAC Plaintiffs' pre-enforcement challenge.

Intervenor-Appellants contend the trial court failed to properly assess LULAC Plaintiffs' pre-enforcement challenge as a facial challenge. But LULAC Plaintiffs' challenge is *not* purely facial. As the district court found, LULAC Plaintiffs' speech has *already* been chilled—and continues

to be chilled—by the Canvassing Restriction. App.A.24-27 ¶¶80-86. Pre-enforcement challenges are common and appropriate in such contexts. In *Driehaus*, for example, the Supreme Court construed a challenge as "both facial[] and as applied" where "the complaint alleged that [the plaintiff's] speech … had been chilled" and where the plaintiff intended to engage in similar speech going forward. *See* 573 U.S. at 155; *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301 (1979) (similar); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 234, 248–49 (2010) (similar).

## II. *Purcell* **does not require a stay.**

Appellants' chief argument is that the district court's injunction came at the wrong time. *See* Mot.3-7. That argument, made under the so-called *Purcell* principle, fails for three reasons. *First*, the injunction does not impact election administration—indeed, none of LULAC Plaintiffs' relief directs the actions of election administrators or voters—and thus does not even implicate *Purcell*. *Second*, and relatedly, courts routinely decline to apply *Purcell* to injunctions against unconstitutional *criminal* provisions. *Third*, even if *Purcell* did apply, it would not bar relief here.

### A. *Purcell* does not apply because the injunction does not burden or confuse voters or administrators.

The *Purcell* principle was born of concern that late-in-time injunctions regarding election rules "result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). It further recognized the need for "clear guidance" to those administering elections. *Id.* at 5. The principle thus weighs against injunctions that disrupt "administration of an election" because "election administrators must" understand and implement such orders. *DNC v. Wis. State Leg.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring).

Appellants fail to explain how the district court's order implicates these concerns. To the extent sought by LULAC Plaintiffs, the injunction impacts only two classes of people: (1) canvassers and organizations, who receive the protection of the injunction; and (2) county district attorneys, who are bound by it. Appellants seem to recognize that *Purcell's* reach does not extend to such scenarios—they make no argument that an injunction binding *district attorneys* warrants invoking the doctrine. Nor do they explain how protecting the speech rights of organizations and canvassers does so either. Instead, they opine that the injunction will

confuse voters and election administrators, groups that are simply not within the injunction's scope.

As to administrators, Appellants claim that counties have spent months training election judges and clerks on "the rules they are to apply." Mot.5. Perhaps so, but Appellants never say how those rules concern the Canvassing Restriction, a criminal provision enforced by district attorneys. *Stephens*, 663 S.W.3d at 52. The duties of election judges concern "the management and conduct of the election at the polling place." TEC §32.071. And clerks serve "at the polling place" for just "a single election day." TEC §32.031. How such duties concern the Canvassing Restriction—a law governing conduct *away* from polling places—is a mystery Appellants fail to answer.

Appellants' argument as to how voters are impacted is just as reaching. The injunction indisputably does not govern how voters obtain a ballot; complete the ballot; return a ballot; or how their ballot is counted. Appellants thus point to several mail ballot inserts sent to voters which, they suggest, may no longer be "proper" in view of the injunction. Mot.5. This argument collapses upon even passing scrutiny; not one of these instructions is implicated by the injunction.

The first insert tells voters to inform law enforcement if someone "attempts to pressure or intimidate" them.[7] "Pressure" and "intimidate," of course, are words that appear **nowhere** in the Canvassing Restriction. *See generally* TEC §276.015. A separate—unchallenged—provision makes it a crime to "knowingly or intentionally … influence the independent exercise of [a person's] vote." TEC §276.013. This insert also states an assistant "cannot suggest how you should vote." *Supra* n.7. That language comes from TEC §64.034 which—prior to S.B. 1—required assistors to swear an oath not to "suggest … how the voter should vote." What these instructions have to do with the Canvassing Restriction is anyone's guess.

Appellants' reliance on the insert for returning carrier envelopes is similarly flawed. Those instructions provide bolded directions regarding the Oath of Assistance a person must sign if they help return a voter's mail ballot.[8] But that language too is governed by provisions that are not enjoined. *See* TEC §64.0321; *see also* TEC §86.010(e)(3) (similar). Appellants' insistence that the Oath's reference to "any form of

---

[7] Tex. Sec'y of State, *Form 6-29*, https://perma.cc/N5FYXSCL.

[8] Tex. Sec'y of State, *Form 6-26*, https://perma.cc/QGT9-UH9E.

compensation or other benefit" *must* allude to the Canvassing Restriction is bizarre. That **precise** language appears elsewhere in the election code, requiring assistors—not third-party canvassers—to disclose whether they "received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee." TEC §64.0321; *see also* TEC §86.010(e)(3).

Appellants do not in fact point to a *single* instruction issued to voters that draws its authority from the Canvassing Restriction, or that lacks clear authority elsewhere in Texas law. Given the continued and unchallenged operation of these other provisions, Appellants' suggestion that the injunction makes it unclear whether such "instructions are proper," Mot.5, borders on frivolous.

**B. Texans cannot be subject to unconstitutional prosecution merely because an election is near.**

Another reason exists to reject application of *Purcell*. Simply put, *Purcell* has no—or at best strictly limited—application to criminal laws. Many courts have recognized that injunctions against criminal prosecution do not implicate the concerns that animate the *Purcell* principle. Unlike the voter-ID requirement that governed the conduct of voters and election officials in *Purcell*, an injunction against criminal

proceedings is "removed in space and time from the mechanics and procedures of voting." *Longoria v. Paxton*, 585 F. Supp. 3d 907, 935 (W.D. Tex. 2022) (less than three weeks before primary, enjoining statute criminalizing solicitation of vote-by mail applications), *vacated and remanded on other grounds*, 2022 WL 2208519 (5th Cir. 2022); *Coal. for Good Governance v. Kemp*, 558 F. Supp. 3d 1370, 1393 (N.D. Ga. 2021) (enjoining SB 202 provision imposing criminal penalties one month before election); *Towbin v. Antonacci*, 885 F. Supp. 2d 1274, 1295-96 (S.D. Fla. 2012) (similar).

Appellants cite no authority explaining why *Purcell* should apply to a criminal law like the Canvassing Restriction. They instead cite to *gerrymandering* cases to suggest that even unconstitutional criminal statutes must be frozen into place when an election nears. Mot.6. But gerrymandering is not a criminal offense. It also impacts the printing, distributing, and counting of ballots; indeed, gerrymandering directly impacts the *contents* of a voter's ballot. The Canvassing Restriction carries no such *administrative* consequence; its effect is limited to the criminal realm (and so too the injunction).

Pre-enforcement challenges are critical constitutional safeguards "in the First Amendment context … because 'self-censorship' is 'a harm that can be realized even without an actual prosecution." *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1023 (6th Cir. 2024) (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). Accordingly, the "rationale for pre-enforcement challenges applies with particular force to the First Amendment." *Id*. This Court should not strain *Purcell*'s boundaries to restrict citizens from challenging criminal laws that proscribe their protected conduct simply because an election is on the horizon.

### C. Even under *Purcell*'s heightened standards, a stay would be improper.

Even if *Purcell* applies, it does not bar the district court's injunction. *Purcell* is not an "absolute" restriction on the equitable authority of courts in the runup to an election. *See Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). It simply informs what is required to enjoin an election law when an election is near. *Id*. Specifically, courts consider whether: (1) "the underlying merits are entirely clearcut in favor of the plaintiff;" (2) "the plaintiff would suffer irreparable harm absent the injunction;" (3) the "plaintiff has [] unduly

delayed bringing the complaint to court;" and (4) "the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Id.*; *see also Robinson v. Ardoin*, 37 F.4th 208, 228 n.11 (5th Cir. 2022) (per curiam) (citing *Merrill* concurrence as authority on *Purcell*). Each element is satisfied.

First, the merits are clearcut in Plaintiffs' favor; as explained, the Canvassing Restriction is a content-based restriction on political speech that cannot survive strict scrutiny. *See supra* §I.B.

Second, LULAC Plaintiffs will suffer irreparable harm in the form of the deprivation of their First Amendment rights. *See infra* §III.

Third, no party has asserted Plaintiffs "unduly delayed" bringing their complaint to court.

Fourth, implementing the district court's injunction is plainly feasible—it requires nothing more than restraining district attorneys from charging a specific offense, while leaving them with many other tools to punish wrongdoing. *Supra* §I.B.2 (collecting statutes). And the injunction imposes no "cost, confusion, or hardship" on election *administrators*—they play no role in enforcing the Canvassing Restriction.

Finally, Appellants offer no serious reason to believe voters will be confused—the Canvassing Restriction simply does not regulate them either.

## III.   The remaining equitable factors counsel against a stay.

Appellants make no irreparable harm argument apart from their flawed invocation of *Purcell*. And they tellingly make no separate argument as to how the injunction harms *them*. The Attorney General and the Secretary invoke sovereign immunity, asserting that they have *no connection* to the law. Mot.15-17. And the Republican Party Intervenor-Appellants do not even claim they will be harmed absent a stay. That fails to meet the basic requirement that "*the applicant* will be irreparably injured absent a stay." *Veasey*, 769 F.3d 892; *see also Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 376–77 (5th Cir. 2023) (denying stay absent showing irreparable harm factor "weighs heavily" in favor).

Appellants ignore the district court's findings about the irreparable harm LULAC Plaintiffs will suffer if the injunction is stayed, including the continued chill of their speech rights. *See* App.A.74-75. But this Court routinely concludes that First Amendment injuries constitute irreparable

harm. *E.g.*, *Book People, Inc. v. Wong*, 91 F.4th 318, 340-41 (5th Cir. 2024); *accord Elrod v. Burns*, 427 U.S. 347, 373 (1976). Further, "[c]ourts routinely recognize that organizations suffer irreparable harm when a defendant's conduct causes them to lose opportunities to conduct election-related activities, such as voter registration and education." *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1005 (W.D. Mo. 2018) (collecting cases). This includes "mobilization opportunities [that] cannot be remedied once lost." *In re Georgia Senate Bill 202*, No. 1:21-CV-01259-JPB, 2023 WL 5334582, at *11 (N.D. Ga. Aug. 18, 2023) (quotation omitted); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (similar).

Finally, the "public interest always lies in a correct application of the First Amendment," *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 317 (5th Cir. 2021) (cleaned up), and is served here by preventing unconstitutional criminal prosecutions.

## CONCLUSION

For the reasons above, Appellants' motion to stay should be denied.

Dated: October 8, 2024

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
Christopher D. Dodge
Marcos Mocine-McQueen
Julie Zuckerbrod*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW,
Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
unkwonta@elias.law
cdodge@elias.law
mmcqueen@elias.law
jzuckerbrod@elias.law

*\*Admission pending*

*Counsel for Plaintiffs-Appellees
LULAC, Texas Alliance for
Retired Americans, Texas AFT,
and Voto Latino*

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that: (1) all required privacy redactions have been made in compliance with 5th Cir. Rule 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, in compliance with 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for Appellants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta

# CERTIFICATE OF COMPLIANCE

This document contains 5,182 words, excluding parts exempted by Federal Rule of Appellate Procedure 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in a proportionally spaced, serifed typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta