No. 24-50783

# In the United States Court of Appeals for the Fifth Circuit

---

La Unión del Pueblo Entero, et al.,

*Plaintiffs-Appellees*,

*v.*

Gregory W. Abbott, et al.,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

---

## DEFENDANTS' REPLY IN SUPPORT OF STAY PENDING APPEAL

---

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | Aaron L. Nielson<br>Solicitor General |
| Brent Webster<br>First Assistant Attorney General | Lanora C. Pettit<br>Principal Deputy Solicitor General<br>Lanora.Pettit@oag.texas.gov |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Counsel for State Defendants-Appellants |

# Introduction

Although "federal court[s] should avoid altering state election rules close to an election," *Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 142 (5th Cir. 2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 6 (2006) (per curiam); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam)), the district court enjoined enforcement of Texas's paid-vote-harvesting ban with only 23 days until early voting starts and at least 7 days after Counties *already* started mailing out absentee ballots. The injunction creates different voting rules for voters participating in the same election because it applies to the District Attorneys of only 3 of Texas's 254 Counties as well as the Secretary of State and Attorney General, who cannot directly enforce the law at all. In other words, the injunction changed voting rules in the middle of an election for some Counties but not others, which is likely to cause significant voter confusion. Therefore, State-Defendants respectfully urge the Court to enter a stay pending appeal.

# Argument

Contrary to Plaintiffs' assertions, all four traditional factors favor a stay: (1) State-Defendants are likely to succeed on the merits; (2) they will suffer irreparable harm absent a stay; (3) Plaintiffs will not be substantially harmed by a stay; and (4) the public interest favors a stay. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

## I. The Equities Favor Granting a Stay.

An injunction preventing the enforcement of a state statute harms the State because "the power to enact and enforce [its own] laws" is "[p]aramount among" those powers retained by the State at the founding. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022). That is particularly true in the leadup to the election where a sudden change to the rules—even a minor one—can sow confusion and disrupt the most fundamental function of our democracy. *E.g.*, *Republican Nat'l Comm.*, 589 U.S. at 424. That is why this Court routinely stays injunctions like this one, *see* Mot.4, which purport to change the rules in the weeks leading up to an election—including regarding an earlier order issued by the district court in this case, Order Granting Stay Pending Appeal, *United States v. Paxton*, No. 23-50885 (5th Cir. Dec. 15, 2023), ECF 80-1. Plaintiffs make two primary arguments; neither has merit.

*First*, Plaintiffs counter (LUPE Resp.22) that in *Chancey v. Illinois State Board of Elections*, 635 F. Supp. 3d 627, 629, 644-45 (N.D. Ill. 2022), an Illinois court held that it did not violate *Purcell* to enjoin certain out-of-state contribution and individual expenditure caps. Leaving aside that the Northern District of Illinois is hardly binding on this Court, the Illinois court expressly premised its holding on the ground that "the *Purcell* cases concerned last-minute changes to election laws, not campaign financing regulations." *Id.* at 644. Assuming such a distinction is correct, it is inapplicable here because as Texas has explained (Mot.3-7), this case involves "eleventh-hour changes to election procedures," which *Chancey* acknowledges will "creat[e] confusion, disruption, and 'unanticipated and unfair consequences for

candidates, political parties, and voters, among others,'" *id.* (citation omitted). That is particularly so here where the injunction applies to only 3 of Texas's 254 Counties, creating unequal voting laws in the same election.

*Second*, Plaintiffs argue (LUPE Resp.20-21; LULAC Resp.18-22) that the Court should disregard the fact that mail-in ballots have been dispatched because (in their view) the vote-harvesting ban does not control the mailing, returning, or counting of ballots. Even if true, *Purcell* would still apply contrary to Plaintiffs' assertions (LULAC Resp.19-22) because it covers a wider range of issues. *See, e.g., Robinson v. Callais*, 144 S.Ct. 1171 (2024) (gerrymandering). It is, however, not true. For example, these ballots—which cannot be *unsent*—included an instruction that any person who "**deposits your [c]arrier [e]nvelope in the mail or delivers your ballot to a common or contract carrier**" must disclose "**whether he or she received or accepted any form of compensation or other benefit**." Tex. Sec'y of State, *Form 6-26*, https://perma.cc/QGT9-UH9E. Plaintiffs insist (LUPE Resp.22; LULAC Resp.20-22) that the vote-harvesting ban is irrelevant to this instruction because section 86.010 requires this disclosure. True enough, but it misses Defendants' point: Whether ballots are collected by paid harvesters is a procedural limitation on voting, *contra* App.A.101-02, which federal courts should not alter this close to an election. *Purcell*, 549 U.S. at 5-6. By contrast, Plaintiffs will not be injured by continuing to apply a vote-harvesting ban, which has been in effect since 2021. Indeed, their argument for injury is entirely dependent on their argument that the law is unconstitutional.

## II. The State Will Likely Succeed on the Merits.

### A. The paid-vote-harvesting ban is not unconstitutionally vague.

The State is likely to show that, properly construed, the vote-harvesting ban provides "'fair notice' of the conduct [the] statute proscribes," and thus is not unconstitutionally vague. *See Sessions v. Dimaya*, 584 U.S. 148, 155-56 (2018) (plurality op.) (citation omitted). "Fair notice" does not require precision, and "[m]any perfectly constitutional statutes use imprecise terms." *Id.* at 159 (majority op.). Plaintiffs merely re-urge (LUPE Resp.13-15; LULAC Resp.15-16) their arguments that the terms "compensation," "benefit," and "physical presence" are confusing and therefore unconstitutionally vague.

*First*, as to "compensation," Plaintiffs ignore the fact that the district court should have considered any reasonable interpretation that *avoided* constitutional infirmity. *See Ostrewich v. Tatum,* 72 F.4th 94, 107 (5th Cir. 2023). The district court did the opposite when it read "compensation" broadly to include not only *monetary* compensation but also meals, bus fare, t-shirts, and water. App.A.91, 94. Instead, Plaintiffs argue (LULAC Resp.15-16) that "compensation" is vague because it is undefined in the statute and, regardless, Plaintiffs assert (LUPE Resp.14) that Defendants' definition of "compensation," Mot.9 (citing *Compensation*, Black's Law Dictionary (12th ed. 2024)), is wrong, presumably because it is narrower than the *Merriam-Webster Dictionary* definition. But "mere breadth ... is insufficient for unconstitutional vagueness." *United States v. Portanova*, 961 F.3d 252, 263 n.76 (3d Cir. 2020) (citing, *inter alia*, *United States v. Caldwell*, 655 F. App'x 730, 732-33 (11th Cir. 2016) (per curiam)); *see also, e.g.*, *Draper v. Healey*, 827 F.3d 1, 4 (1st Cir. 2016).

*Second*, Plaintiffs do not dispute that under the associated-words canon, the phrase "benefit" should be read to mean something like the accompanying examples of "employment," "political favors," and "official acts." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012). Instead, they essentially argue (LUPE Resp.14) that "ordinary person[s]"—presumably non-lawyers—would not be familiar with such a canon. Leaving aside that ignorance of the law is no defense, this argument disregards that linguistic canons were developed precisely because they represent how most people communicate. *See, e.g.*, Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 117 (2010).

*Third*, as to "physical presence," Plaintiffs have no real response to Defendants' arguments about scienter, choosing instead to parrot the district court. *See* LUPE Resp.15; LULAC Resp.15. For good reason. Paid persuaders must *know* that a ballot is physically present, so unwittingly individuals will not and cannot be prosecuted for an alleged violation. *See* Tex. Elec. Code §§ 276.015(a)-(b). And Plaintiffs have presented zero evidence to the contrary.

Plaintiffs are correct (LUPE Resp.15) that the Secretary of State's office cannot advise paid persuaders about what constitutes "physical presence"—or provide any other legal advice to the public for that matter. But that does not mean the vote-harvesting ban runs afoul of *Smith v. Goguen*, 415 U.S. 566 (1974). There, the Supreme Court held that a statute banning "contemptuous" treatment of the flag was unconstitutionally vague not just because it allowed "selective law enforcement," *id.* at 574-76, but because the word "contemptuous" is inherently

5

subjective, providing no "ascertainable standard for inclusion and exclusion," *id.* at 578. By contrast, "physical presence" is inherently *objective*: a ballot is present when a paid harvester is attempting to influence a ballot, or it is not. As a result, there may be instances in which the ban's "application to … behavior is uncertain," but that does not render it unconstitutionally vague. *Id.*

### B. The paid-vote-harvesting ban complies with the First Amendment.

#### 1. The vote-harvesting ban is not overbroad.

Nor is the ban unconstitutionally overbroad because it does not "'prohibit[] a substantial amount of protected speech' relative to its 'plainly legitimate sweep.'" *United States v. Hansen*, 599 U.S. 762, 769-70 (2023) (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). That the law "might cover" Plaintiffs farfetched hypotheticals does not establish constitutional overbreadth because "[t]he 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *Williams*, 553 U.S. at 303 (citation omitted). As Defendants have explained (Mot.11), the district court's overbreadth analysis rests on nothing more.

Plaintiffs' responses here (LUPE Resp.12-13; LULAC Resp.3-5) rest on the same farfetched hypotheticals of potentially chilled speech and examples of activities from which they abstained due to a vague fear of prosecution that they relied upon at trial. But Plaintiffs' fear is not the standard for determining overbreadth. *Cf. Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (refusing to find a First Amendment injury from "[a]llegations of a subjective 'chill'"). Moreover, for the reasons Defendants have

already explained (Mot.11), each of the examples that Plaintiffs cite is either speculative or outside the scope of the vote-harvesting ban.

### 2. The vote-harvesting ban satisfies First Amendment scrutiny.

As a regulation of the privilege of voting by mail, it is questionable if anything more than a rational basis is required. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 406 (5th Cir. 2020). But, even if heightened scrutiny applied, the vote-harvesting ban would survive review.

The State has a compelling interest "in protecting voters from confusion and undue influence," *Burson v. Freeman*, 504 U.S. 191, 199 (1992), and "in preserving the integrity of its election process," *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 685 (2021). The statute is narrowly tailored because it restricts paid persuaders from advocating while physically in the presence of a ballot—a moment when the risk of pressure is highest. *Veasey v. Abbott*, 830 F.3d 216, 239 (5th Cir. 2016) (plurality op.). And "[l]imiting the classes of persons who may handle early ballots to those less likely to have ulterior motives" furthers the State's compelling interests. *Brnovich*, 594 U.S. at 685. Plaintiffs make three counterarguments, which all fail.

*First*, Plaintiffs insist that the vote-harvesting ban is unnecessary as Texas has another statute prohibiting people from intentionally or knowingly "influenc[ing] the independent exercise of the vote of another in the presence of the ballot" or during the voting process. LUPE Resp.10 (quoting Tex. Elec. Code § 276.013(a)). But this statute criminalizes different conduct than the vote-harvesting ban, which covers certain efforts to influence a voting decision rather than the exercise of the

vote itself. *See* Tex. Elec. Code § 276.013(a). Moreover, as Plaintiffs do not seem to challenge the legality of this *other* restriction, it is hard to see how any overlap between the two statutes harms Plaintiffs. The conduct is a crime either way.

*Second*, Plaintiffs maintain (LUPE Resp.10-11; LULAC Resp.16-17) that the vote-harvesting ban is overinclusive notwithstanding *Burson v. Freeman*. There, the Court held that a 100-foot limit on electioneering around a polling location was not a "significant impingement." *Burson,* 504 U.S. at 210. Similarly, the vote-harvesting ban limits conduct only in the "physical presence" of a (in-person or mail-in) ballot. *See* Tex. Elec. Code § 276.015(e). If anything, the "physical presence" of a ballot is more restrictive than the 100-foot limit in *Burson*, which did not even require that there be a ballot present. 504 U.S. at 193-94. The State's interests are also greater because the vote-harvesting ban applies only when voters have the ballot in-hand out of the presence of election officials. *See Brnovich*, 594 U.S. at 685-86; *Veasey*, 830 F.3d at 239.

*Third*, Plaintiffs complain (LUPE Resp.11-12) that the ban is *underinclusive* because it restricts paid—but not unpaid—vote harvesting. But "the First Amendment imposes no freestanding underinclusiveness limitation." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (quotation marks omitted). It is relevant only to the extent that it undermines the State's asserted interest. *Id*. Here, it does no such thing as the significance and sincerity of the State's interest in preserving the integrity of its elections is indisputable. *Crawford v. Marion Cnty. Election Bd.,* 553 U.S. 181, 196 (2008) ("While the most effective method of preventing election fraud may well be debatable, the propriety of doing so is perfectly clear.").

## C. The district court lacked jurisdiction to enjoin the Attorney General and Secretary.

Finally, the Attorney General and Secretary are immune from suit, and Plaintiffs lack standing.

### 1. The Attorney General and Secretary have sovereign immunity.

Because of sovereign immunity, "individuals may not sue a state." *See Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022). Of course, the *Ex parte Young* doctrine provides a limited exception where state actors with enforcement authority have taken steps to enforce an unconstitutional law. *Id.*; *Tex. Democratic Party*, 961 F.3d at 400-01.

Plaintiffs make two responses; each ignores binding precedent to the contrary.[1] *First*, Plaintiffs contend (LUPE Resp.15-17; *contra* LULAC Resp.6-9) that the Attorney General and Secretary are connected to enforcement of the vote-harvesting ban because they investigate vote-harvesting violations. But examining this very statute, this Court has held that "investigations" (and investigation referrals) are not "enforcement" and will not bring a state official within the scope of *Ex parte Young*. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 331-32 (5th Cir. 2024).

*Second*, Plaintiffs argue (LUPE Resp.16) that a local prosecutor could ask the Attorney General to assist in enforcing criminal laws. Again, this Court has held that "[s]peculation that [the Attorney General] might be asked by a local prosecutor to

---

[1] LULAC-Plaintiffs do not contest that the Attorney General and Secretary have sovereign immunity—only whether the County District Attorneys do. *See* LULAC Resp.6-9.

'assist' in enforcing" criminal laws is sufficient "to support an *Ex parte Young* action." *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020).

### 2. The Plaintiffs lack standing.

Finally, Plaintiffs lack standing because they have suffered no injury that is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 668-69 (2021).[2] Specifically, for the reasons already discussed, *supra* at pp. 6-7, the record reflects that Plaintiffs' asserted fear of prosecution is "imaginary or wholly speculative," which does not satisfy Article III. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979).

Pointing to *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), Plaintiffs counter (LUPE Resp.18) that "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." This does not, however, demonstrate a credible threat of prosecution *by the Attorney General or Secretary. See Nat'l Press Photographers' Ass'n v. McCraw*, 90 F.4th 770 (5th Cir. 2024). As just discussed, Plaintiffs have not shown such an enforcement connection. As a result, Plaintiffs lack standing for the same reasons that they fall outside the scope of *Ex parte Young*. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (citation omitted).

---

[2] LULAC-Plaintiffs assert (at 7) only that they "have standing to sue the County DAs," not that they have standing to sue State-Defendants.

10

## Conclusion

The Court should enter a stay pending appeal by **October 10, 2024,** when its administrative stay expires.

Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | Aaron L. Nielson<br>Solicitor General |
| Brent Webster<br>First Assistant Attorney General | /s/ Lanora C. Pettit<br>Lanora C. Pettit<br>Principal Deputy Solicitor General<br>Lanora.Pettit@oag.texas.gov |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Counsel for State Defendants-Appellants |

11

## Certificate of Service

On October 9, 2024, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
Lanora C. Pettit

## Certificate of Compliance

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,585 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
Lanora C. Pettit