No. 24-50783

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

LA UNION DEL PUEBLO ENTERO, *et al.*,

*Plaintiffs-Appellees*,

v.

GREGORY W. ABBOTT, *et al.*,

*Defendants-Appellants*

**On Appeal from the United States District Court for the
Western District of Texas, San Antonio Division
No. 5:21-cv-844 (Rodriguez, J.)**

## BRIEF OF INTERVENOR-APPELLANTS

Zachary Austin
JONES DAY
325 John H. McConnell Blvd. #600
Columbus, OH 43215
(614) 281-3105
zaustin@jonesday.com

John M. Gore
   *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com

*Counsel for Intervenor-Appellants Harris County Republican Party, Dallas
County Republican Party, Republican National Committee, National Republican
Senatorial Committee, and National Republican Congressional Committee*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-50826

LA UNION DEL PUEBLO ENTERO ET AL.,
*Plaintiffs-Appellees*,

*v.*

GREGORY W. ABBOTT ET AL.,
*Defendants-Appellants*.

The undersigned counsel of record certifies that the following listed persons and entities (other than governmental parties) as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

La Union del Pueblo Entero

Southwest Voter Registration Education Project

Mexican American Bar Association of Texas

Texas Hispanics Organized for Political Education

JOLT Action

William C. Velasquez Institute

Fiel Houston, Incorporated

Friendship-West Baptist Church

Texas Impact

James Lewin

OCA-Greater Houston

League of Women Voters of Texas

LULAC Texas

Texas Alliance for Retired Americans

Texas AFT

Voto Latino

Delta Sigma Theta Sorority, Incorporated

The Arc of Texas

Republican National Committee

Harris County Republican Party

Dallas County Republican Party

National Republican Senatorial Committee

National Republican Congressional Committee

Kim Ogg

Houston Area Urban League

Mi Familia Vota

Marla Lopez

Marlon Lopez

Paul Rutledge

REVUP-Texas

Nina Perales
Email: nperales@maldef.org
Mexican-American Legal Defense & Educational Fund
110 Broadway Street
San Antonio, TX 78205

Jason Scott Kanterman
Direct: 212-859-8519
Email: jason.kanterman@friedfrank.com
Fried, Frank, Harris, Shriver & Jacobson, L.L.P.
1 New York Plaza
New York, NY 10004

Michael Courtney Keats
Direct: 212-859-8914
Email: michael.keats@friedfrank.com
Fried, Frank, Harris, Shriver & Jacobson LLP
1 New York Plaza
New York, NY 10004

Rebecca L. Martin
Direct: 212-859-8305
Email: rebecca.martin@friedfrank.com
Fried, Frank, Harris, Shriver & Jacobson LLP
1 New York Plaza
New York, NY 10004

Elizabeth Ryan
Direct: 214-746-8158
Email: liz.ryan@weil.com
Fax: 214-746-7777
Weil, Gotshal & Manges, L.L.P.
200 Crescent Court, Suite 300
Dallas, TX 75201

Leah Tulin
Direct: 202-650-6397
Email: tulinl@brennan.law.nyu.edu
Brennan Center for Justice at NYU School of Law
1140 Connecticut Avenue, N.W., Suite 1150
Washington, DC 20036

Zachary Tripp
Direct: 202-682-7000
Email: zack.tripp@weil.com
Fax: 202-857-0940
Weil, Gotshal & Manges, L.L.P.
2001 M Street, N.W., Suite 600
Washington, DC 20036

Aaron J. Curtis
Direct: 212-310-8901
Email: aaron.curtis@weil.com
Weil, Gotshal & Manges, L.L.P.
767 Fifth Avenue
New York, NY 10153-0119

Charles K. Gehnrich
Direct: 212-310-8391
Email: charles.gehnrich@weil.com
Weil, Gotshal & Manges, L.L.P.
767 Fifth Avenue
New York, NY 10153-0119

Sean Morales-Doyle
Direct: 646-292-8363
Email: morales-doyles@brennan.law.nyu.edu
Brennan Center for Justice
120 Broadway, Suite 1750
New York, NY 10271

Patrick Berry
Direct: 646-925-8754
Email: berryp@brennan.law.nyu.edu
Brennan Center for Justice
120 Broadway
New York, NY 10271

Jasleen Kaur Singh
Direct: 646-292-8389
Email: singhj@brennan.law.nyu.edu
Brennan Center for Justice
120 Broadway
New York, NY 10271

Jessica Ring Amunson
Direct: 202-639-6023
Email: jamunson@jenner.com
Fax: 202-661-4993
Jenner & Block, L.L.P.
1099 New York Avenue, N.W., Suite 900
Washington, DC 20001-4412

Thomas Paul Buser-Clancy
Direct: 713-942-8146
Email: tbuser-clancy@aclutx.org
American Civil Liberties Union of Texas
P.O. Box 8306
Houston, TX 77288

Dayton Campbell-Harris
Direct: 425-516-8400
Email: dcampbell-harris@aclu.org
American Civil Liberties Union Foundation
Voting Rights Project
125 Broad Street
New York, NY 10004

Adriel I. Cepeda Derieux
Direct: 212-284-7334
Email: acepedaderieux@aclu.org
Fax: 212-549-2654
American Civil Liberties Union Foundation
915 15th Street, N.W.
Washington, DC 20005

Sarah Xiyi Chen
Direct: 512-474-5073

Email: schen@texascivilrightsproject.org
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741-3438

Zachary Dolling
Direct: 512-474-5073
Email: zachary@texascivilrightsproject.org
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741-3438

Ashely Alcantara Harris
Direct: 713-942-8146
Email: aharris@aclutx.org
American Civil Liberties Union of Texas
P.O. Box 8306
Houston, TX 77288

Savannah Kumar
Direct: 713-942-8146
Email: skumar@aclutx.org
American Civil Liberties Union of Texas
Suite 350
5225 Katy Freeway
Houston, TX 77007

Peter Hofer
Direct: 512-454-4816
Email: phofer@disabilityrightstx.org
Fax: 512-454-3999
Disability Rights Texas
2222 W. Braker Lane
Austin, TX 78758

Sophia Lin Lakin
Direct: 212-519-7836
Email: slakin@aclu.org
Fax: 212-549-2654
American Civil Liberties Union Foundation
Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004

Christopher McGreal
Direct: 214-630-0916
Email: cmcgreal@disabilityrightstx.org
Disability Rights Texas, North Texas Regional Office
1420 W. Mockingbird Lane, Suite 450
Dallas, TX 75247-4932

Adriana Cecilia Pinon
Direct: 713-942-8146
Email: apinon@aclutx.org
American Civil Liberties Union of Texas
P.O. Box 8306
Houston, TX 77288

Lucia Romano
Direct: 713-974-7691
Email: lromano@drtx.org
Fax: 713-974-7695
Disability Rights Texas
1500 McGowen Street, Suite 100
Houston, TX 77004

Edgar Saldivar
Direct: 713-942-8146
Email: esaldivar@aclutx.org
American Civil Liberties Union of Texas
5225 Katy Freeway, Suite 350
Houston, TX 77007

Ari J. Savitzky
Direct: 212-549-2681

Email: asavitzky@aclu.org
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004-2400

Christopher D. Dodge
Direct: 202-987-4928
Email: cdodge@elias.law
Elias Law Group, L.L.P.
250 Massachusetts Avenue, N.W., Suite 400
Washington, DC 20001

Marcos Mocine-McQueen
Direct: 202-968-4492
Email: mmcqueen@elias.law
Elias Law Group, L.L.P.
250 Massachusetts Avenue, N.W., Suite 400
Washington, DC 20001

Uzoma Nkem Nkwonta
Direct: 202-968-4490
Email: unkwonta@elias.law
Elias Law Group, L.L.P.
250 Massachusetts Avenue, N.W., Suite 400
Washington, DC 20001

Julie Zuckerbrod
Direct: 202-987-5680
Email: jzuckerbrod@elias.law
Elias Law Group, L.L.P.
250 Massachusetts Avenue, N.W., Suite 400
Washington, DC 20001

Jennifer A. Holmes
Direct: 202-682-1300
Email: jholmes@naacpldf.org
NAACP Legal Defense & Educational Fund, Incorporated
700 14th Street, N.W., Suite 600
Washington, DC 20005

J. Michael Showalter
Direct: 312-258-5561
Email: j.michael.showalter@afslaw.com
ArentFox Schiff LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606

Mohammed A. Badat
Direct: 212-965-2200
Email: abadat@naacpldf.org
Fax: 212-226-7592
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

Eitan G. Berkowitz
Direct: 408-334-8775
Email: eitan.berkowitz@afslaw.com
ArentFox Schiff LLP
44 Montgomery Street, 38th Floor
San Francisco, CA 94104

Kenneth E. Broughton, Jr.
Direct: 713-469-3819
Email: kbroughton@reedsmith.com
Fax: 713-469-3899
Reed Smith LLP
2850 N. Harwood St., Suite 1500
Dallas, TX 75201

James David Cromley
Direct: 312-258-5616
Email: james.cromley@afslaw.com
Fax: 312-258-5600
ArentFox Schiff LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606

William D'Angelo, III
Direct: 949-633-0879

Email: william.dangelo@afslaw.com
ArentFox Schiff LLP
555 W. Fifth Street, 48th Floor
Los Angeles, CA 90013

Victor Genecin
Direct: 212-965-2200
Email: vgenecin@naacpldf.org
Fax: 212-226-7592
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

Derek H. Ha
Direct: 415-757-5897
Email: derek.ha@afslaw.com
ArentFox Schiff LLP
44 Montgomery Street, 38th Floor
San Francisco, CA 94104

Ann Helen MacDonald
Direct: 312-258-5548
Email: ann.macdonald@afslaw.com
ArentFox Schiff LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606

Roswill Mejia
Direct: 512-409-2718
Email: rmejia@reedsmith.com
Fax: 512-623-1802
Reed Smith LLP
401 Congress Avenue, Suite 1800
Austin, TX 78701

Keely Dulaney Pippin
Direct: 713-469-3888
Email: kpippin@reedsmith.com
Fax: 713-469-3899
Reed Smith
1221 McKinney Street, Suite 2100
Houston, TX 77010

Kathryn Sadasivan
Direct: 212-965-2200
Email: ksadasivan@naacpldf.org
Fax: 212-226-7592
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

Uruj Sheikh
Direct: 212-965-2275
Email: usheikh@naacpldf.org
NAACP Legal Defense and Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

Ciara A. Sisco
Direct: 212-965-2200
Email: csisco@naacpldf.org
Fax: 212-226-7592
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

Sarah C. Stewart
Direct: 469-680-4228
Email: sarah.stewart@reedsmith.com
Fax: 469-680-4299
Reed Smith, LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201

Shira Wakschlag
Direct: 202-534-3708
Email: wakschlag@thearc.org
Fax: 202-534-3731
The Arc of the United States
1825 K Street, N.W., Suite 1200
Washington, DC 20006

Evan Monod
Direct: 202-534-3710
Email: monod@thearc.org
The Arc of the United States
2000 Pennsylvania Avenue, N.W., Suite 500
Washington, DC 20006

Breanna Della Williams
Direct: 405-602-4779
Email: bwilliams@naacpldf.org
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006

Mark L. Bieter
Phone: 208-389-9000
Email: mark.bieter@stoel.com
Fax: 208-389-9040
Stoel Rives LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702

John Bonifaz
Phone: 617-244-0234
Email: jbonifaz@freespeechforpeople.org
Fax: 512-628-0142
Free Speech For People
1320 Centre Street, Suite 405
Newton, MA 02459

Ben Clements
Phone: 617-244-0234
Email: bclements@freespeechforpeople.org
Fax: 512-628-0142
Free Speech For People
1320 Centre Street, Suite 405
Newton, MA 02459

Courtney M. Hostetler
Phone: 617-249-3015
Email: chostetler@freespeechforpeople.org
Fax: 512-628-0142
Free Speech For People
1320 Centre Street #405
Newton, MA 02459

Sean Michael Lyons
Direct: 210-225-5251
Email: sean@lyonsandlyons.com
Fax: 210-225-6545
Lyons & Lyons, PC
237 W. Travis Street, Suite 100
San Antonio, TX 78205

Amira Marcella Mattar
Phone: 617-564-0464
Email: amira@freespeechforpeople.org
Free Speech For People
48 N. Pleasant Street, Suite 304
Amherst, MA 01002

Wendy J. Olson
Phone: 208-389-9000
Email: wendy.olson@stoel.com
Fax: 208-389-9040
Stoel Rives LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702

Bradley R. Prowant
Phone: 612-373-8800
Email: bradley.prowant@stoel.com
Fax: 612-373-8881
Stoel Rives LLP
33 S. Sixth Street, Suite 4200
Minneapolis, MN 55402-3722

Laura E. Rosenbaum
Phone: 503-294-9642
Email: laura.rosenbaum@stoel.com
Fax: 503-220-2480
Stoel Rives LLP
760 S.W. 9th Avenue, Suite 3000
Portland, OR 97205

Cory R. Liu
Phone: 737-802-1800
Email: cory.liu@butlersnow.com
Butler Snow LLP
1400 Lavaca Street, Suite 1000
Austin, TX 78702

Eric J.R. Nichols
Phone: 737-802-1800
Email: eric.nichols@butlersnow.com
Butler Snow LLP
1400 Lavaca Street, Suite 1000
Austin, TX 78702

John Matthew Gore
Direct: 202-879-3930
Email: jmgore@jonesday.com
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001

E. Stewart Crosland
Direct: 202-879-3951
Email: scrosland@jonesday.com

Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001

Louis Joseph Capozzi, III, Esq.
Direct: 717-802-2077
Email: lcapozzi@jonesday.com
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001

Zachary Austin
Direct: 614-281-3105
Email: zaustin@jonesday.com
Jones Day
325 John H. McConnell Blvd. #600
Columbus, OH 43215

   January 2, 2025

<u>s/John M. Gore</u>
John M. Gore
*Counsel for Intervenor-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Intervenor-Appellants respectfully request oral argument. *See* Fed. R. App. P. 34; 5th Cir. R. 28.2.3. As a panel of this Court recognized when granting a stay pending appeal, the order under review raises legally and practically significant questions regarding the proper construction and constitutionality of the Texas Election Code. Oral argument will assist this Court in answering those questions.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................................i

STATEMENT REGARDING ORAL ARGUMENT .........................................xvi

INTRODUCTION ...........................................................................................1

JURISDICTIONAL STATEMENT ................................................................4

STATEMENT OF ISSUES ...........................................................................4

STATEMENT OF THE CASE........................................................................5

      A.     Texas enacts a commonsense election law ...............................5

      B.     The District Court accepts Appellees' speculative arguments ....................................................................................7

      C.     This Court enters a stay pending appeal ..................................10

SUMMARY OF ARGUMENT ....................................................................11

STANDARD OF REVIEW ........................................................................13

ARGUMENT ..............................................................................................14

      I.     SECTION 7.04 COMPLIES WITH THE FIRST AMENDMENT UNDER ANY STANDARD OF REVIEW ...............................................16

      A.     Section 7.04 easily passes muster under the *Anderson-Burdick test* ...........................................................................17

      B.     Section 7.04 is a permissible time, place, and manner restriction ................................................................................24

      C.     Section 7.04 survives strict scrutiny ......................................28

      II.    SECTION 7.04 IS NOT VOID FOR VAGUENESS....................................40

      III.   AT MINIMUM, APPELLEES' CHALLENGES ARE PREMATURE ..............44

      A.     Appellees' First Amendment challenges are premature ..........45

      B.     Appellees' vagueness challenge is premature ..........................48

CONCLUSION...........................................................................................49

CERTIFICATES OF COMPLIANCE AND SERVICE .......................................51

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983)......................................................................17

*Babbitt v. United Farm Workers,*
    442 U.S. 289 (1979)......................................................................49

*Brnovich v. Democratic Nat'l Comm.,*
    594 U.S. 647 (2021).............................................................*passim*

*Burdick v. Takushi,*
    504 U.S. 428 (1992)................................................................17, 18

*Burson v. Freeman,*
    504 U.S. 191 (1992).............................................................*passim*

*Cameron v. Johnson,*
    390 U.S. 611 (1968)......................................................................42

*Crawford v. Marion Cnty. Election Bd.,*
    553 U.S. 181 (2008)................................................................18, 30

*Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery*
    *Comm'n,*
    760 F.3d 427 (5th Cir. 2014) ........................................29, 33, 36, 38

*Fischer v. United States,*
    603 U.S. 480 (2024)......................................................................42

*Flint v. Dennison,*
    488 F.3d 816 (9th Cir. 2007) ........................................................28

*Frisby v. Schultz,*
    487 U.S. 474 (1988)......................................................................47

*Gonzalez v. Carhart*,
  550 U.S. 124 (2007)......................................................................42

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018)......................................................................47

*Johnson v. United States*,
  576 U.S. 591 (2015)........................................................40, 43, 44

*La Union Del Pueblo Entero v. Abbott*,
  119 F.4th 404 (5th Cir. 2024) ...............................................*passim*

*La Union Del Pueblo Entero v. Abbott*,
  29 F.4th 299 (5th Cir. 2022) ...........................................................5, 8

*La Union Del Pueblo Entero v. Abbott*,
  68 F.4th 228 (5th Cir. 2023) ...........................................................5

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*,
  66 F.4th 905 (11th Cir. 2023) ........................................................42

*Mazo v. N.J. Sec'y of State*,
  54 F.4th 124 (3d Cir. 2022) .....................................................17, 22

*McDonald v. Bd. of Election Comm'rs of Chicago*,
  394 U.S. 802 (1969)......................................................................25

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995)......................................................................23

*Meyer v. Grant*,
  486 U.S. 414 (1988)................................................................23, 24

*Mi Familia Vota v. Ogg*,
  105 F.4th 313 (5th Cir. 2024) .........................................................5

*Minnesota Voters All. v. Mansky*,
  585 U.S. 1 (2018)................................................................*passim*

*Moody v. Netchoice*,
144 S. Ct. 2383 (2024)....................................................................16, 45, 46

*Nat'l Rifle Ass'n of Am. v. McCraw*,
719 F.3d 338 (5th Cir. 2013) ...........................................................13

*Oettle v. Guthrie*,
189 N.E.3d 22 (Ill. App. Ct. 2020) ......................................26, 27, 28

*Ostrewich v. Tatum*,
72 F.4th 94 (5th Cir. 2023) ......................................................*passim*

*Richardson v. Tex. Sec'y of State*,
978 F.3d 220 (5th Cir. 2020) ...........................................................25

*Roark & Hardee LP v. City of Austin*,
522 F.3d 533 (5th Cir. 2008) .....................................................13, 48

*Rosenberger v. Rector and Visitors of Uni. of Va.*,
515 U.S. 819 (1995).........................................................................28

*Schirmer v. Edwards*,
2 F.3d 117 (5th Cir. 1993) ...............................................................48

*Sessions v. Dimaya*,
584 U.S. 148 (2018).....................................................................40, 41

*Snyder v. United States*,
603 U.S. 1 (2024).........................................................................31, 40

*Storer v. Brown*,
415 U.S. 724 (1997).........................................................................16

*Tex. Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020) ...........................................................25

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 (1997)...........................................................14, 18, 26, 27

*U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., LLC,*
  987 F.3d 436 (5th Cir. 2021) ............................................................13

*United States v. Paxton,*
  No. 23-50885, ECF 80-1 (5th Cir. Dec. 15, 2023) ...........................5

*United States v. Petrillo,*
  332 U.S. 1 (1947) ...................................................................41, 43

*United States v. Robinson,*
  367 F.3d 278 (5th Cir. 2004) .............................................................48

*United States v. Stevens,*
  559 U.S. 460 (2010) .........................................................................4

*United States v. Williams,*
  553 U.S. 285 (2008) ...................................................................3, 36

*Veasey v. Abbott,*
  830 F.3d 216 (5th Cir. 2016) (en banc) ..........................2, 21, 26, 30

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
  455 U.S. 489 (1982) ...............................................................*passim*

*Vote.Org v. Callanen,*
  89 F.4th 459 (5th Cir. 2024) ...................................................*passim*

*Voting for Am., Inc. v. Steen,*
  732 F.3d 382 (5th Cir. 2013) ..................................................*passim*

*Wash. St. Grange v. Wash. St. Republican Party,*
  552 U.S. 442 (2008) ...................................................................45, 47

*Weddington v. United Nat. Ins. Corp.,*
  346 F. App'x 224 (9th Cir. 2009) ......................................................42

STATUTES

28 U.S.C. § 1292 .................................................................................4

28 U.S.C. § 1331 ................................................................4

Tex. Code of Crim. Pro. Art. 42.0373 .................................44

Tex. Elec. Code § 32.092 ...................................................41

Tex. Elec. Code § 64.012 ...............................................31, 32

Tex. Elec. Code § 64.034 ...................................................34

Tex. Elec. Code § 64.036 ...........................................31, 32, 35

Tex. Elec. Code § 276.013 ..................................................31

Tex. Elec. Code § 276.015 .............................................*passim*

Tex. Penal Code § 49.04 .....................................................33

**OTHER AUTHORITIES**

Merriam-Webster Dictionary ................................................39

Senate Bill 1 .................................................................1, 5, 6

**INTRODUCTION**

Casting a vote in our Republic's early days was "not a very pleasant spectacle." *Burson v. Freeman*, 504 U.S. 191, 202 (1992) (plurality op.) (cleaned up). Entering the voting place was "akin to entering an open auction," where "voter intimidation and election fraud" were rife. *Id.* "Crowds would gather to heckle and harass voters who appeared to be supporting the other side." *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 7 (2018). Yet even then, voters enjoyed one critical protection—they "typically deposited *privately prepared ballots* at the polls." *Id.* at 6 (emphasis added). And eventually, all 50 States "enacted viewpoint-neutral restrictions on election-day speech in the immediate vicinity of the polls." *Id.* at 7 (cleaned up). By creating "an island of calm in which voters can peacefully contemplate their choices" when they perform the "weighty civic act" of voting, *id.* at 15, those commonsense and constitutional restrictions "protect[] voters from confusion and undue influence," "preserv[e] the integrity of … election[s]," and combat "fraud in … election[s]," *Burson*, 504 U.S. at 199.

This case presents a simple question: Can Texas extend those same basic protections to those who vote by mail?

The Texas Legislature enacted Senate Bill 1 § 7.04 (Texas Election Code § 276.015) to criminalize efforts by paid advocates to pressure individuals to vote in a particular way while they are filling out their mail ballot or when their mail ballot

1

is immediately at hand. The District Court struck down that vote-harvesting ban, holding that it violates the First Amendment and is void for vagueness. That judgment denies Texas mail-ballot voters the same privacy and security protections enjoyed by those who vote in person—even though this Court has recognized that the risk of undue influence is *greater* in the mail-voting context than for in-person voting. *See, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 255-56, 263 (5th Cir. 2016) (en banc) (acknowledging particular risks for elderly voters).

Unsurprisingly, the District Court erred profoundly on the merits. To start, the court was wrong to apply strict scrutiny to Section 7.04. Election rules like this one should be evaluated under either the *Anderson-Burdick* balancing test or the reasonableness standard applicable to time, place, and manner restrictions. *See Vote.Org v. Callanen*, 89 F.4th 459, 490 (5th Cir. 2024); *Mansky*, 585 U.S. at 11-12. In any event, Section 7.04 survives even strict scrutiny: Just like the electioneering rule the Supreme Court upheld in *Burson*, Section 7.04 is narrowly tailored to prohibit electioneering while voters are engaged in (or could imminently engage in) the act of voting. *See* 504 U.S. at 206. It preserves voter privacy, guards against undue influence by paid partisans, and helps ensure the integrity of Texas elections. In short, "some restricted zone is necessary in order to serve the State's compelling interests in preventing voter intimidation and election fraud," *id.*—and Section 7.04 provides exactly that for those who vote by mail.

The District Court's void-for-vagueness holding is equally meritless. Despite the Supreme Court's instruction not to consider "fanciful hypotheticals" in assessing vagueness challenges, *United States v. Williams*, 553 U.S. 285, 301 (2008), the District Court did precisely that in an attempt to broaden Section 7.04's reach. Read fairly, the vast majority of Section 7.04's applications are clear. And the fact that Section 7.04 has some borderline applications does not render it unconstitutional; it simply makes it like every other criminal statute.

Finally, at a minimum, the District Court erred in permitting Appellees to bring facial, pre-enforcement challenges. The trial record contains *zero* evidence of any Appellee or witness being investigated or prosecuted under Section 7.04, *see, e.g.*, ROA.40291:9-14 (acknowledgment by Appellee witness), and the record contains no evidence of *any* prosecutions under Section 7.04 in all of Texas. No Texas court has had the chance to interpret the provision. Consequently, Appellees rely only on speculation about how unreasonable prosecutors *might* enforce Section 7.04 (often ignoring elements of the statute). But all that speculation cannot obscure the fact that Appellees have *conceded* (and the District Court acknowledged) that Section 7.04 can and does lawfully prohibit electioneering while individuals fill out their mail ballots. *See La Union Del Pueblo Entero*, 2024 WL 4337515, at *32; CA5 Doc. 67 at 9. In fact, that is most of what Section 7.04 captures, and this "plainly legitimate sweep" forecloses Appellees' facial First Amendment challenge. *Voting*

*for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)). By the same token, Section 7.04 is not "impermissibly vague in all of its applications," dooming Appellees' facial vagueness challenge. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982).

This Court should reverse, and reaffirm that States have the power to adopt reasonable regulations of mail voting to preserve voter privacy, prevent undue influence, protect election integrity, and prohibit fraud.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331 because Appellees' constitutional claims arise under federal law. The District Court entered its findings of facts and conclusions of law as to Section 7.04 on September 28, 2024, following a bench trial. Dist. Ct. Doc. No. 1157. On October 1, 2024, Intervenor-Appellants and the State Defendants-Appellants each timely filed notices of appeal, which were docketed on October 3, 2024. Dist. Ct. Doc. Nos. 1162-63; Doc. No. 1. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because the District Court permanently enjoined Section 7.04. This Court previously stayed that injunction pending appeal. *See La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404 (5th Cir. 2024).

## STATEMENT OF ISSUES

**1.** Does Section 7.04 violate the First Amendment?

**2.**     Is Section 7.04 unconstitutionally void for vagueness?

**3.**     Are Appellees' facial challenges premature?

## STATEMENT OF THE CASE

**A.     Texas enacts a commonsense election law.**

In 2021, the Texas legislature enacted Senate Bill 1 "[i]n response to difficulties faced by election officials in the 2020 election." *La Union del Pueblo Entero*, 119 F.4th at 407. Even before Governor Abbott signed the law, various organizations challenged almost every provision, and those challenges were ultimately consolidated into the current case in which the District Court has put vast swaths of Texas's Election Code on trial. This Court has already heard multiple disputes arising out of this litigation. *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 333 (5th Cir. 2024) (reversing District Court's holding that District Attorney Ogg was a proper defendant); *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 231 (5th Cir. 2023) (reversing District Court's rejection of non-party state legislators' legislative-privilege assertion); *United States v. Paxton*, No. 23-50885, ECF 80-1 at 5 (5th Cir. Dec. 15, 2023) (staying pending appeal of District Court's invalidation of voter-identification requirements for mail ballots); *La Union Del Pueblo Entero v. Abbott*, 29 F.4th 299, 304 (5th Cir. 2022) (reversing District Court's denial of intervention to Intervenor-Appellants).

Relevant here is Section 7.04 (Texas Election Code § 276.015). Under it, a "person commits … a felony of the third degree" if the person either (1) "knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit" or (2) "knowingly provides or offers to provide compensation or other benefit to another person in exchange for vote harvesting services." §§ 276.015(b), (c), (f).

A "benefit" is "anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person." *Id.* (a)(1). "Vote harvesting services" means "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." *Id.*(a)(2). Section 7.04 expressly does not apply to, among other things, "interactions that do not directly involve" a mail ballot or "activity that is not designed to deliver votes for or against a specific candidate or measure." *Id.*(e)(3), (5).[1]

In other words, the law creates a crime when seven elements exist:

(1) In the physical presence of an official ballot;

---

[1] The relevant Code section also prohibits knowingly "collect[ing] or possess[ing] a mail ballot or official carrier envelop in connection with vote harvesting services." Tex. Elec. Code § 276.015(d). This provision predates Senate Bill 1, and Intervenor-Appellants do not understand Appellees to challenge it.

(2) a paid individual;

(3) knowingly;

(4) has an in-person interaction with a voter;

(5) directly involving a mail ballot;

(6) during the voting process;

(7) that is intended to deliver votes for a specific candidate or measure.

*See id.*(b). The law also creates a crime when someone offers to, or does, provide compensation to an individual to engage in these seven elements. *See id.*(c).

The quintessential example of prohibited vote harvesting is this: An employee of an advocacy group knocks on a voter's door, and—while the voter holds the mail ballot in hand—urges the voter to fill the ballot out on the spot while advocating that the voter vote for a particular candidate or ballot issue. *See La Union Del Pueblo Entero*, 2024 WL 4337515, at *32 ("The State Defendants insist that [§ 276.015] was enacted to prevent paid partisans from haranguing Texas citizens while they fill out their mail ballots.") (cleaned up). The District Court and Appellees have acknowledged that Section 7.04's ban on this conduct is constitutional. *See La Union Del Pueblo Entero*, 2024 WL 4337515, at *32; CA5 Doc. 67 at 9.

### B. The District Court accepts Appellees' speculative arguments.

Before any Section 7.04 prosecution was ever brought, several organizations sued to permanently enjoin the law, arguing that it violated their First Amendment

rights and those of their members, and that it was unconstitutionally vague. As the stay panel recognized, these were facial challenges seeking to enjoin all applications of Section 7.04. *See La Union Del Pueblo Entero*, 119 F.4th at 407.

The Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee (collectively, Intervenor-Appellants) intervened to defend the challenged laws alongside the State Defendants-Appellants. *See La Union Del Pueblo Entero*, 29 F.4th at 299, 304.

After refusing to rule on summary judgment motions against Appellees' claims filed by Intervenor-Appellants and the State Defendants-Appellants, the District Court presided over a bench trial in September and October 2023. At trial, Appellees offered no evidence that they or any of their witnesses had ever been investigated, prosecuted or threatened with prosecution under Section 7.04. *See, e.g.*, ROA.40291:9-14 (acknowledgment by Appellee witness). In fact, they offered no evidence of *any* prosecutions under Section 7.04 in all of Texas. Instead, they offered extensive hypotheticals and speculation about how Section 7.04 *might* be enforced. For example, Appellees' witnesses frequently expressed fear about being held liable for accidentally canvassing around hidden mail ballots, *La Union Del Pueblo Entero*, 2024 WL 4337515, at *12, even though Section 7.04 requires *knowledge* that a mail ballot is immediately present and an interaction that "directly

involve[s]" the mail ballot. *See* Tex. Elec. Code § 276.015. Appellees presented evidence that they preemptively changed their behavior to avoid perceived liability risks under their speculative version of Section 7.04. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *12-14. For example, they claimed to have cancelled meetings in which mail voters would come to a lecture hall, listen to speakers discuss the issues on the ballot, and then fill out their mail ballots together while sitting at tables in the audience. *See id*.

Appellants offered testimony from Keith Ingram, former Election Division Director in the Texas Secretary of State's Office, about what the Texas Legislature was trying to accomplish in Section 7.04 and how the Office understood the provision. Section 7.04, Mr. Ingram explained, was enacted primarily to prevent paid partisans from haranguing Texas citizens while they fill out their mail ballots. *See, e.g.*, ROA.40422:22-40423:13, 40425:3-25. He further explained that canvassers violate the law only if they *know* that the voter's mail ballot is immediately, physically present *and* they have an in-person interaction with the voter directly involving the ballot. *See* ROA.40425:3-25. Consistent with Section 7.04's plain text, Mr. Ingram also explained that the provision does not affect the vast majority of canvassing activities and permits organizations to "pay canvassers to go solicit votes for [their] preferred candidate." ROA.40425:17-19.

After trial, the District Court credited each of Appellees' arguments and permanently enjoined all applications of Section 7.04. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *41-42. It concluded that Section 7.04 is subject to strict scrutiny, and that it failed that test. *Id.* at 25-35. The District Court also found Section 7.04 was void for vagueness. *Id.* at 36-39.

**C.     This Court enters a stay pending appeal.**

The District Court issued its findings of fact and conclusions of law on September 28, 2024, and then enjoined Section 7.04 after early voting had begun in the 2024 Presidential Election. *See* Dist. Ct. Doc. 1157. State Defendants-Appellants and Intervenor-Appellants petitioned this Court for a stay pending appeal.

This Court granted that request. *See La Union Del Pueblo Entero*, 119 F.4th at 409. Among other things, this Court expressed skepticism about Appellees' likelihood of success on the merits. *See id.* With respect to the First Amendment claim, the panel noted that the "Supreme Court has upheld voter privacy and security protections at the voting booth" and that "the same concerns about privacy and security at the voting booth readily apply to privacy and security when it comes to mail-in ballots." *Id.* The Court also noted Section 7.04's limited scope, explaining that the "law has no effect outside of the voting process." *Id.* at 408. As for the vagueness challenge, the Court reiterated that "examining facial vagueness"—as the

District Court purported to do—"is often difficult, perhaps impossible" in "the context of pre-enforcement review." *Id.* at 409 (cleaned up).

## SUMMARY OF ARGUMENT

**I.** The District Court's invalidation of Texas's vote-harvesting ban under the First Amendment is erroneous under any standard of review.

**A.** This Court reviews laws regulating the electoral process under the *Anderson-Burdick* balancing test. Section 7.04 is constitutional under that test because it imposes modest time, place, and manner restrictions on speech in furtherance of several compelling governmental interests. The District Court erroneously claimed that this test does not apply because Section 7.04 does not "control the mechanics of the electoral process." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *27 (cleaned up). But as this Court has already recognized, Section 7.04 *does* "regulate the mechanics of voting." *La Union Del Pueblo Entero*, 119 F.4th at 408.

**B.** Alternatively, Section 7.04 can be upheld as a reasonable, viewpoint-neutral time, place, and manner rule governing the voting process. The Supreme Court and this Court have upheld anti-electioneering rules for *in-person* voting under this rationale. *See Mansky*, 585 U.S. at 11-13; *Ostrewich v. Tatum*, 72 F.4th 94, 104 (5th Cir. 2023). Those holdings also reach laws, like Section 7.04, that offer the same privacy and security protections to those who vote by mail.

11

**C.** The District Court refused to apply the *Anderson-Burdick* test or the time, place, and manner doctrine. It instead applied strict scrutiny. That decision was erroneous as a matter of law. But even if strict scrutiny applies, Section 7.04 passes muster because secret ballots and restrictions on third-party speech during voting are compelling state interests supported by centuries of practice and plain-old "common sense." *Burson*, 504 U.S. at 207. Section 7.04 is narrowly tailored to apply only to "the voting process." *La Union Del Pueblo Entero*, 119 F.4th at 408. It therefore leaves paid canvassers free to speak as much as they want—and about whatever they wish—at all times and places save one: in an interaction with a voter, directly involving a mail ballot, when that ballot is present. In that narrow and sensitive circumstance, paid electioneering must end.

**II.** Section 7.04 is also not unconstitutionally vague. To carry their demanding burden on this challenge, Appellees must show that Section 7.04 is "impermissibly vague in all of its applications." *Vill. of Hoffman Ests.*, 455 U.S. at 495. The District Court did not even purport to meet that standard, and relied instead on a finding that Section 7.04, like any criminal statute, has certain difficult, borderline applications. Because the vast majority of Section 7.04's applications—including to electioneering while a voter fills out her mail ballot—are crystal clear, Appellees' vagueness challenge fails.

**III.** The Court can and should apply well-settled precedent to uphold Section 7.04 on the merits. But the Court can also reverse because Appellees' facial challenges are premature. Appellees presented no evidence that *anyone* has been prosecuted under Section 7.04, and there are no state court decisions interpreting the law. Unsurprisingly, the trial was dominated by disagreement on Section 7.04's meaning, with Appellees offering (and the District Court accepting) outlandish hypotheticals. By crediting such speculation, the District Court usurped Texas's prerogative to adopt a sensible, narrow, and constitutional interpretation of Section 7.04. Avoiding these outcomes is exactly why facial First Amendment challenges are "generally disfavor[ed]," *Voting for Am.*, 732 F.3d at 386, and why facial vagueness challenges are usually "impossible" to mount outside of an actual enforcement proceeding, *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008).

## STANDARD OF REVIEW

"After a bench trial," this Court "review[s] findings of fact for clear error and legal conclusions *de novo*." *U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., LLC*, 987 F.3d 436, 441 (5th Cir. 2021). This Court also "examine[s] *de novo* the constitutionality of state statutes." *Nat'l Rifle Ass'n of Am. v. McCraw*, 719 F.3d 338, 343 (5th Cir. 2013) (citation omitted). "When interpreting Texas statutes, this

court employs the same methods of statutory interpretation used by the Texas Supreme Court." *Ostrewich*, 72 F.4th at 99.

## ARGUMENT

"States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Exercising that authority, "all 50 States and the District of Columbia have laws curbing various forms of speech in and around polling places on Election Day." *Mansky*, 585 U.S. at 7.

As the stay panel recognized, "[t]he theory of [Section 7.04] is simple: Just as the State can protect the privacy of citizens who vote in-person by prohibiting other individuals from contact them at the voting booth, [Section 7.04] protects the privacy of citizens who choose to vote by mail instead." *La Union del Pueblo Entero*, 119 F.4th at 407. Nevertheless, the District Court held that the First Amendment and vagueness doctrine prohibit Texas from aligning the protections available to in-person and mail-ballot voters.

That is profoundly wrong. Whether evaluated under the *Anderson-Burdick* test applicable in this Court or as a time, place, or manner restriction, Section 7.04 is reasonably designed to protect the privacy of those voting by mail and guard against undue influence by canvassers. Even if this Court applies strict scrutiny, Section 7.04 is constitutional for the same reasons that bans on electioneering in and

14

immediately around polling places are constitutional: It preserves secret voting, guards against undue influence and pressure by canvassers, and promotes election integrity by narrowly limiting a particular type of compensated speech while a voter is filling out her mail ballot or the ballot is immediately at hand. That narrow but crucial protection—which leaves paid canvassers free to advocate for candidates and measures whenever a mail ballot is not immediately present—survives First Amendment scrutiny under any test.

Not content with making a hash of First Amendment doctrine, the District Court also held that Section 7.04 is void for vagueness. Invoking unreasonable hypotheticals—such as volunteers being prosecuted because they accept glasses of water as "compensation"—the District Court deemed two elements of Section 7.04 unclear in some of their applications. *See La Union Del Pueblo Entero*, 2024 WL 4337515, at \*37. But Section 7.04 is not vague at all, let alone "impermissibly vague in all of its applications." *Vill. of Hoffman Ests.*, 455 U.S. at 495. That Section 7.04 has borderline applications makes the statute like almost every other criminal statute, not void for vagueness.

Section 7.04 is constitutional, and this Court should say so. But at minimum, it must reject Appellees' facial First Amendment and vagueness challenges because they are premature. At trial, no evidence was presented about *anyone* being prosecuted under Section 7.04. Instead, Appellees offered speculation and

hypotheticals about how unreasonable prosecutors *could* try to enforce Section 7.04. The District Court indulged much of this speculation, frequently ignoring Section 7.04's elements. But even the District Court and Appellees have acknowledged that Section 7.04 has a "plainly legitimate sweep": prohibiting canvassers from engaging in electioneering *while* voters fill out their mail ballots. *See La Union Del Pueblo Entero*, 2024 WL 4337515, at *32; CA5 Doc. 67 at 9. That concession dooms Appellees' facial First Amendment challenge. *See Moody v. Netchoice*, 144 S. Ct. 2383, 2397 (2024). Likewise, most of Section 7.04's applications are quite obvious, so it cannot be "impermissibly vague in all of its applications." *Vill. of Hoffman Ests.*, 455 U.S. at 495.

This Court should reverse and remind the District Court—which is still considering striking down vast swaths of the Election Code—that Texas has the authority to establish reasonable rules and regulations so that "some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1997). That is no less true when mail voting is at issue than when in-person voting is at issue.

## I. SECTION 7.04 COMPLIES WITH THE FIRST AMENDMENT UNDER ANY STANDARD OF REVIEW.

Section 7.04 comports with the First Amendment under the *Anderson-Burdick* standard applicable in this Court; alternatively, it is a reasonable time, place, and

manner restriction; and it even passes muster under the strict-scrutiny framework the District Court erroneously invoked.

### A. Section 7.04 easily passes muster under the *Anderson-Burdick test*.

"Where a state election rule directly restricts or otherwise burdens an individual's First Amendment rights, courts apply a balancing test derived from two Supreme Court decisions, *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992)." *Vote.Org*, 89 F.4th at 490 (quoting *Voting for Am.*, 732 F.3d at 387) (cleaned up); *accord Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 138, 144 (3d Cir. 2022). Section 7.04 is constitutional under that test: As the stay panel explained, the law "protect[s] voter privacy when it comes to mail-in ballots, just as state law protects privacy in the voting booth." *La Union del Pueblo Entero*, 119 F.4th at 408. Section 7.04 is carefully designed to shield mail voters from political canvassing while they fill out their ballots or when ballots are immediately present, and thus ensures a small but critical zone of privacy. *Cf. Burson*, 504 U.S. at 206.

The District Court, however, refused to apply the *Anderson-Burdick* test. That refusal and the District Court's resulting invalidation of Section 7.04 were reversible error.

1.     Courts applying the *Anderson-Burdick* test first assess whether an election rule imposes a "severe" burden on protected speech. *Voting for Am.*, 732

F.3d at 387-88. If so, the rule "must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Burdick*, 504 U.S. at 434). Less onerous burdens, by contrast, can be justified by "a State's 'important regulatory interests.'" *Id.* (quoting *Timmons*, 520 U.S. at 358). This standard of review is "deferential" to States. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 204 (2008) (Scalia, J., concurring in the judgment); *Vote.Org*, 89 F.4th at 481 (relying on *Crawford* and noting "the significance of a State's authority to set its electoral rules and the considerable deference to be given to election procedures so long as they do not constitute invidious discrimination").

Section 7.04's vote-harvesting ban passes muster under the *Anderson-Burdick* framework. Section 7.04 reaches only a narrow band of electioneering. On its face, it extends only to interactions that "directly involve" a mail ballot. Tex. Elec. Code § 276.015(e)(3). Canvassers thus remain free to approach voters and push them to support candidates in all other situations. Section 7.04 itself makes this clear: It has no application to interactions "that do not occur in the presence of the ballot or during the voting process." *Id.*(e)(2). If a voter pulls out a mail ballot, the canvasser can enter a safe harbor by simply asking the voter to put the ballot away. *See id.*

Thus, as former Director of Elections Keith Ingram explained, the State agrees that the statute applies only to canvassers who are paid to press individuals to fill out their ballots in particular ways in the canvasser's presence. *See, e.g.,*

ROA.40422:22-40423:13, 40425:3-25.  It does not apply to canvassing beyond that narrow situation.  ROA.40425:3-25.

Section 7.04's burdens on paid canvassing thus are incidental at most.  On the other side of the scale, Section 7.04 advances a host of compelling and important regulatory interests.  In the first place, it vindicates Texas's "important regulatory interests" in voter privacy, secrecy in voting, and election integrity.  *Voting for Am.*, 732 F.3d at 387-88.  As the Supreme Court has recognized, States have broad authority to enact rules that advance those interests by creating "an island of calm in which voters can peacefully contemplate their choices."  *Mansky*, 585 U.S. at 15 (cleaned up).  After all, "[c]asting a vote is a weighty civic act" and is "a time for choosing, not campaigning."  *Id.*

Accordingly, the "State may reasonably take steps to ensure that partisan discord [does] not follow the voter up to the voting booth, and distract from a sense of shared civic obligation" during voting.  *Id.* at 15-16.  Like every other State, Texas has created, consistent with the Constitution, a zone of privacy around in-person voting.  By creating an identical zone around mail voting, Section 7.04 likewise advances Texas's important regulatory interests and therefore complies with the First Amendment.

Section 7.04 constitutionally promotes other related interests as well.  For example, States have compelling interests in shielding voters from "undue influence"

when they vote, and in preventing election fraud and vote-buying schemes. *Burson*, 504 U.S. at 199; *see also, e.g.*, *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 685 (2021). Those interests explain why the Supreme Court and this Court have held that States can lawfully prohibit others from engaging in political discourse with voters casting their ballots and in the areas surrounding polling places. *Burson*, 504 U.S. at 210; *Mansky*, 585 U.S. at 11-13; *Ostrewich*, 72 F.4th at 104. And as the stay panel noted, "the same concerns about privacy and security at the voting booth readily apply to privacy and security when it comes to mail-in ballots." *La Union del Pueblo Entero*, 119 F.4th at 409.

Section 7.04 addresses those concerns. Just like secret-voting rules, the law prohibits pressuring individuals to vote in a particular way when they are in the process of completing a ballot or have the ballot at hand. Like the laws prohibiting electioneering in the areas immediately surrounding polling places, Section 7.04 prohibits electioneering immediately surrounding a mail ballot. It thus guarantees at least *some* space between the influence of paid canvassers and the moment at which the voter casts her ballot. *See Burson*, 504 U.S. at 206.

If anything, voter-privacy protections are even *more* justified for mail voting than for in-person voting. *See, e.g.*, *Brnovich*, 594 U.S. at 685. As this Court has recognized, elderly voters and voters with disabilities—two groups that frequently cast mail ballots—are particularly vulnerable to undue influence and pressure from

third parties. *See Veasey*, 830 F.3d at 255-56. Moreover, unlike with in-person voting, election officials are not present, and therefore cannot deter heavy-handed pressure tactics, during mail voting. And as the Supreme Court has recognized, "[v]ote buying schemes are far more difficult to detect when citizens vote by mail." *Brnovich*, 594 U.S. at 685. Section 7.04 guards against all these risks and, thus, easily satisfies the governing *Anderson-Burdick* test.

2. The District Court refused to apply the *Anderson-Burdick* test as required by this Court's precedents in *Voting for America* and *Vote.Org*, instead opting to apply strict scrutiny. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *27-28. Those precedents, the court reasoned, do not govern because Section 7.04 does not "control the mechanics of the electoral process." *Id.* at *27 (cleaned up). That is wrong on multiple levels.

To start, this Court's precedents applying *Anderson-Burdick* are not so limited. Instead, this Court has made clear that *Anderson-Burdick* governs "[w]here[ver] a state election rule directly restricts or otherwise burdens an individual's First Amendment rights." *Voting for Am.*, 732 F.3d at 387. This Court reaffirmed that general standard in *Vote.Org*, again with no "mechanics" limitation. *See* 89 F.4th at 490.

The District Court therefore erred when it grafted such a "mechanics" limitation onto this Court's controlling precedent. To justify this departure from the

governing law, the District Court invoked the Third Circuit's approach, which applies *Anderson-Burdick* to resolve First Amendment challenges to laws that "primarily regulate the mechanics of the electoral process." *Mazo*, 54 F.4th at 138-32; *see also La Union Del Pueblo Entero*, 2024 WL 4337515, at *27 n.4 (relying on *Mazo*). But even if that limitation had any basis in this Court's case law, Section 7.04 satisfies it because Section 7.04 *does* "control the mechanics of the electoral process." *Id.* After all, just as secret-ballot laws guarantee privacy and secret ballots during in-person voting, Section 7.04 provides the same guarantee for mail voting. Because Section 7.04 is closely tied to the act of voting itself, it "primarily regulates the mechanics of the electoral process" and is not "primarily directed at regulating pure speech." *Mazo*, 54 F.4th at 138, 142 (cleaned up).

Indeed, the stay panel already reached that conclusion in this case. In particular, the District Court declined to stay its injunction under *Purcell* because it believed the *Purcell* doctrine (like the District Court's version of the *Anderson-Burdick* standard) "applies only to mechanics and procedures of election law applicable to voting." *La Union del Pueblo Entero*, 119 F.4th at 408 (cleaned up). This Court, however, granted a stay and concluded that Section 7.04 "does regulate the mechanics of voting, by protecting voter privacy when it comes to mail-in ballots, just as state law protects privacy in the voting booth." *Id.* That Section 7.04 has no "effect outside the voting process" only buttresses this conclusion, and confirms that

Section 7.04 satisfies any (non-existent) "mechanics" limitation on this Court's *Anderson-Burdick* precedent. *Id.*

The District Court next reasoned that the Supreme Court has applied strict scrutiny rather than *Anderson-Burdick* to rules that "happen[] to regulate speech during elections, when the importance of the First Amendment protections is at its zenith." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *27 (cleaned up). But unlike the cases the District Court cited, Section 7.04 does not broadly prohibit any category of political speech. Instead, it prohibits a particular type of speech by paid canvassers, and does so *only* during voting or when a mail ballot is immediately at hand. *See* Tex. Elec. Code § 276.015. Non-compensated individuals remain free to speak whenever they want, including when mail ballots are physically present. And even those compensated to advocate for specific candidates or measures may do so at any and every time and place save one: in an interaction that "directly involves" an immediately present mail ballot. *Id.*

These facts easily distinguish this case from those the District Court cited. *Meyer v. Grant* addressed a law prohibiting campaigns from paying persuaders to approach potential voters under *any circumstances*. 486 U.S. 414, 424 (1988). Similarly, *McIntyre v. Ohio Elections Comm'n* addressed a statute prohibiting *at all times and places* the distribution of anonymous campaign literature designed to influence elections. 514 U.S. 334, 336, 344 (1995). Section 7.04, by contrast, leaves

a vast array of situations in which paid canvassers can continue to reach potential voters. *See* Tex. Elec. Code § 276.015. Simply put, unlike in *Meyer* and *McIntyre*, Section 7.04 does not deny "access to the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication." *Meyer*, 486 U.S. at 424.

## B. Section 7.04 is a permissible time, place, and manner restriction.

This Court also can uphold Section 7.04 as a permissible time, place, and manner restriction. *See Mansky*, 585 U.S. at 11-13; *Ostrewich*, 72 F.4th at 102-03. Voting is an essential governmental process, and States can enact reasonable, viewpoint-neutral regulations of speech during that process. *See id.* Indeed, both the Supreme Court and this Court have upheld anti-electioneering rules for *in-person* voting under this rationale. *See id*. As the stay panel indicated, Texas has the same authority to safeguard voter privacy and security during mail voting. *See La Union Del Pueblo Entero*, 119 F.4th at 409.

1. The test for whether anti-electioneering restrictions in connection with the voting process are permissible time, place, and manner restrictions is "reasonableness." *Ostrewich*, 72 F.4th at 103. This "flexible" standard, *id.*, is met when States adopt rules that ensure "an island of calm in which voters can peacefully contemplate their choices" when they vote. *Mansky*, 585 U.S. at 15 (cleaned up). Accordingly, the Supreme Court has repeatedly held under this test that States may

shield voting spaces around ballots from political advocacy, at least for limited times. *See id.* at 11-13.

Indeed, a polling place used for casting ballots in person "qualifies as a nonpublic forum" that is "set aside for the sole purpose of voting." *Id.* at 12. States thus may establish "[r]ules [that] strictly govern who may be present, for what purpose, and for how long" in and around polling places. *Id.* And States may enact even "content-based restrictions" that "exclude political advocates and forms of political advocacy" in and around polling places where ballots are being completed and cast. *Id.*

This Court has recognized that states can likewise impose reasonable rules— including limits on political advocacy—around mail ballots and during mail voting. *See, e.g.*, *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 224 (5th Cir. 2020); *La Union Del Pueblo Entero*, 119 F.4th at 409. That makes perfect sense. States are not obligated to offer mail voting. *See McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 808 (1969); *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 405 (5th Cir. 2020) (recognizing that *McDonald* remains good law). If they chose to do so, the First Amendment does not deny States authority to protect the mail-voting process on equal terms with the in-person voting process. When States exercise that authority with respect to mail voting, they are regulating non-public fora by establishing rules for a governmental process (voting) and governmental

property (the ballot).  *See, e.g.*, *Oettle v. Guthrie*, 189 N.E.3d 22, 27 (Ill. App. Ct. 2020), *cert. denied* 142 S. Ct. 105 (Oct. 4, 2021) (recognizing that "a government-issued ballot is not a public forum and is instead a nonpublic forum"); *accord Timmons*, 520 U.S. at 363 ("Ballots serve primarily to elect candidates, not as forums for political expression."); *Mansky*, 585 U.S. at 15 (voting is "a time for choosing, not campaigning").

Section 7.04 is a constitutional exercise of that authority because its narrow restrictions on paid canvassing are "reasonable in light of the purpose served by the forum: voting."  *Mansky*, 585 U.S. at 13 (cleaned up).  As former Director of Elections Ingram explained at trial, the Legislature enacted Section 7.04 to respond to a particular problem: paid partisan canvassers going door to door and pressuring voters to fill out their mail ballots in a particular way.  *See, e.g.*, ROA.40422:22-40423:13, 40425:3-25.  In such situations, with no election officials present to deter heavy-handed pressure, voters are vulnerable to undue influence, *see Veasey*, 830 F.3d at 255-56 (recognizing problem is especially acute with elderly voters), and vote-buying schemes are also more likely and more difficult to detect, *see Brnovich*, 594 U.S. at 685.  Even if voters are not actually bribed or coerced, they may simply fill out the ballot as the canvasser desires to bring an annoying interaction to an end.  Texas has a valid interest in deterring all of this and has reasonably done so through Section 7.04's vote-harvesting ban.

2. The District Court reasoned that Section 7.04 is not subject to First Amendment forum analysis because mail ballots can be physically present anywhere: It violates "common sense," the court posited, to say that "public parks and streets will vacillate from moment to moment between being traditional public forums and non-public forums designated for voting depending on whether a voter happens to be carrying or a [*sic*] casting a mail ballot on the premises." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *34. But that is hardly unusual. Government-owned buildings may oscillate between functioning as public fora and nonpublic fora, and private buildings (like churches) shift to being nonpublic fora, depending on whether in-person voting is underway there. *See Mansky*, 585 U.S. at 12. The same applies to voting by mail. Wherever a voter *chooses* to complete her ballot, the State can act to preserve a modicum of privacy around the ballot, which itself is *never* a public forum. *Oettle*, 189 N.E.3d at 27; *accord Timmons*, 520 U.S. at 363; *Mansky*, 585 U.S. at 15. Indeed, *regardless* of where one undertakes the sensitive act of voting, "common sense" protections remain "necessary" to "secure the advantages of the secret ballot and protect the right to vote." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *34 (cleaned up); *see Burson*, 504 U.S. at 206-07.

In any event, forum analysis applies not only to the physical spaces that the District Court focused on, but also to governmental processes. For example, the Supreme Court applied forum analysis to resolve a First Amendment challenge to a

public university's funding process, which it recognized was a "forum more in a metaphysical sense than in a spatial or geographic sense." *Rosenberger v. Rector and Visitors of Uni. of Va.*, 515 U.S. 819, 830 (1995). That is why courts have applied forum analysis to First Amendment challenges to regulations governing elections. *See, e.g.*, *Flint v. Dennison*, 488 F.3d 816, 831-33 (9th Cir. 2007) (elections at public university); *Oettle*, 189 N.E.3d at 27 (recognizing elections are nonpublic fora).

Voting is a governmental process that Texas has weighty interests in regulating *wherever* it occurs. Rather than affirm the District Court's approach, which would prevent States from meaningfully regulating speech during mail voting, this Court should recognize (as did the stay panel) that the First Amendment standard for election rules is the same for mail voting as it is for in-person voting. *See La Union Del Pueblo Entero*, 119 F.4th at 409. It should accordingly reverse and uphold Section 7.04.

**C.      Section 7.04 survives strict scrutiny.**

The District Court erred when it declined to apply the *Anderson-Burdick* test required by this Court's controlling precedent, *see supra* Part I.A, and instead applied strict scrutiny to assess Section 7.04's constitutionality under the First Amendment, *see La Union Del Pueblo Entero*, 2024 WL 4337515, at *28. It then

doubled-down on this error when it held that Section 7.04 fails that test when, in fact, Section 7.04 satisfies strict scrutiny in any event.

Although strict scrutiny is a demanding standard, its outcome here is preordained by the Supreme Court's decision in *Burson*, which held that prohibitions on political speech in the area immediately around where voting takes place satisfy strict scrutiny. *See Burson*, 504 U.S. at 191, 211. As in *Burson*, Section 7.04 advances compelling interests in protecting voter privacy and guarding against undue influence, and is narrowly tailored to prohibit only speech that jeopardizes those interests. *See, e.g.*, *Burson*, 504 U.S. at 211. Under the four factors this Court uses to apply strict scrutiny, *Dep't of Tex., Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 440 (5th Cir. 2014), Section 7.04 passes muster.

1.    Section 7.04 satisfies the first such factor because it "actually advances the state's interest[s]." *Id.* at 440. As explained, *see supra* Part I.A-B, and as the stay panel agreed, *see La Union Del Pueblo Entero*, 119 F.4th at 409, Section 7.04 serves Texas's important and compelling interests in preserving secret voting, *see, e.g.*, *Mansky*, 585 U.S. at 15; "in protecting voters from confusion and undue influence," *Burson*, 504 U.S. at 199; and "in preserving the integrity of [the] election process," including against vote-buying schemes to which mail voting is particularly vulnerable, *Brnovich*, 594 U.S. at 685.

Appellees offered (and the District Court accepted) two rebuttals, but neither is persuasive. *First*, the District Court refused to credit the State's policy interests and was unconvinced that paid vote harvesting is a serious problem. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *32. But precedent *required* the District Court to credit Texas's interests in preserving voter privacy, preventing undue influence, and preserving election integrity. And federal courts cannot substitute their policy judgments for those of the state legislature. *See, e.g.*, *Vote.Org*, 89 F.4th at 481. That is doubly true when, as now, that policy judgment is predictive. *See Crawford*, 553 U.S. at 193-95 (allowing States to enact prophylactic anti-fraud legislation in the absence of documented election fraud).

Thus, although this Court *has* documented the risks inherent in mail voting and examples of it within Texas, *see Veasey*, 830 F.3d at 255-56 ("Seven of the Plaintiffs further testified that they are reluctant to vote by mail due to the increased risk of fraud because of people who harvest mail-in ballots from the elderly."), the Texas Legislature did not need to prove that abuses are widespread within its borders before acting to prevent them, *see, e.g.*, *Brnovich*, 594 U.S. at 686 ("[I]t should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders."); *Ostrewich*, 72 F.4th at 106 ("[S]tates may properly respond to potential deficiencies in the electoral process with foresight, rather than react reactively, as long as the response is reasonable.")

(cleaned up). The District Court's failure to credit Texas's policy interests was a legal error.

*Second*, the District Court pointed to three other Texas criminal laws and questioned the necessity of Section 7.04. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *32. Those statutes make it a crime to: (1) mark a ballot inconsistent with voter instructions, Tex. Elec. Code § 64.012; (2) suggest how to vote while providing lawful assistance, *Id.* § 64.036; or (3) "influence the independent exercise of the vote of another in the presence of the ballot or during the voting process." *Id.* § 276.013.

To start, governments frequently enact overlapping criminal statutes to ensure the activity it wishes to proscribe is covered; far from being unconstitutional, such duplicative drafting is mundane. *See, e.g.*, *Snyder v. United States*, 603 U.S. 1, 19 (2024) ("So even if 'influenced' alone might have covered the waterfront of bribes, adding 'rewarded' made good sense to avoid potential ambiguities, gaps, or loopholes. Congress commonly writes federal statutes … in such a belt and suspenders manner.").

In any event, the statutes cited by the District Court do not clearly reach the core conduct of paid vote harvesting covered by Section 7.04, and therefore are not duplicative of it. Section 64.012's prohibition on marking ballots inconsistently with voter instructions is not coterminous with Section 7.04, which applies even when the

paid canvasser does *not* fill out the voter's ballot but instead attempts to (or does) induce the *voter* to fill out the voter's ballot in a certain way. Moreover, Section 64.012, unlike Section 7.04, does not require a paid canvasser at all, let alone one acting to deliver votes for a particular candidate. *Compare* Tex. Elec. Code § 276.015*, with id*. § 64.012.

The same is true of Section 64.036, which applies to electioneering by those providing voter assistance. That is, at most, a small subset of what Section 7.04 reaches because Section 7.04 reaches *beyond* individuals providing otherwise-legitimate voter assistance; it extends to paid canvassers who do not provide voter assistance. *See id.* § 276.015. In any event, suggesting how to vote while providing voter assistance is a misdemeanor, whereas Section 7.04 would make the same conduct a felony and thus subject to greater punishment. *See id.* § 276.015(g) (contemplating alternate liability under multiple statutory sections).

Finally, the Code's ban on "influenc[ing] the independent exercise of the vote of another," also does not reach all of what Section 7.04 prohibits. Section 7.04 criminalizes interactions intended to deliver votes for a particular candidate or measure, *regardless* of whether such interactions succeed in influencing the voter or overcome the voter's "independent exercise" of the franchise. *See id.* § 276.015. Indeed, Section 7.04 provides much clearer rules and recognizes that certain situations are inherently *capable* of resulting in undue influence of voters or eroding

election integrity. Even if voters are not *actually* coerced, Texas can ban activities that risk coercion, just as it can punish drivers who have consumed a certain amount of alcohol but are not driving erratically. *See* Tex. Penal Code § 49.04.

2. Section 7.04 satisfies this Court's second factor for assessing strict scrutiny because it "does not sweep too broadly." *Tex. Lottery Comm'n*, 760 F.3d at 440. A careful review of the offense's elements reveals the Legislature carefully tailored the statute to reach paid electioneering designed to pressure people filling out mail ballots:

- The individual engaging in the speech must receive compensation *in exchange* for engaging in interactions designed to deliver votes for or against candidates or measures. *See* Tex. Elec. Code § 276.015(a)-(b). The Legislature thus recognized that individuals *paid* to deliver partisan pressure are more likely to exert pressure on mail voters, which is why Section 7.04 leaves *uncompensated* individuals free to say whatever they want whenever they want.

- The paid canvasser must *knowingly* act in the immediate "physical presence" of a mail ballot. *Id.*(a)(2). Unless the canvasser knows that the ballot is immediately at hand—such as in the voter's hand or on a table next to the voter—the canvasser can say whatever he wants. If a canvasser sees that the voter has a mail ballot at hand, he can avoid liability by simply asking the voter to put her mail ballot away.

- The in-person interaction must "directly involve" the mail ballot. *Id.* (e)(3). A prototypical example is when the canvasser is walking the voter though the mail ballot and pushing him to fill it out in a particular way. Thus, as former Director of Elections Ingram agreed at trial, typical canvassing activities—even when a mail ballot sits in plain view across the room—are not vote harvesting because they do not "directly involve" a ballot. *See* ROA.40422:22-40423:13, 40425:3-25.

- The canvasser must urge an individual to support or oppose a candidate or measure. Tex. Elec. Code § 276.015(e)(5). Merely encouraging people to vote or providing voter assistance will never qualify as vote harvesting.

In other words, for liability to attach under Section 7.04, the speech must be (1) at a specific time (during the voting process); (2) of a specific manner (promoting a candidate or measure); *and* (3) in a specific place (in-person, alongside the physical presence of a ballot, and directly involving that ballot).

The "district court erred in holding the statute[] unconstitutional because the court ignored [its] limiting language." *Ostrewich*, 72 F.4th at 106. The District Court acknowledged that Section 7.04 can, consistent with the First Amendment, apply to "individuals who are paid to press individuals to fill out their ballots—in the canvasser's presence—in particular ways." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *32; *see* CA5 Doc. 67 at 9 (same). That alone dooms the District Court's holding that Section 7.04 "reaches beyond that narrow situation to protected speech in a substantial number of its applications." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *32. It does not.

*First*, the District Court asserted that Section 7.04 "reaches organizers who provide voter assistance at a voter's request." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *30. That is false. Voter assistance involves specific activities that help a voter effectuate *her own choice*, *see* Tex. Elec. Code § 64.034, and unlike vote harvesting, does not involve an actual or proposed exchange of compensation

34

for the purpose of delivering votes for a particular candidate or measure, *see id.* § 276.015.  Voter assistance thus also does not include urging the assisted voter to vote in a particular way.  *Id.*  Indeed, a separate and unchallenged statute prohibits attempts to influence the voter while providing assistance.  *Id.* § 64.036.  No one who complies with the voter-assistance laws will ever violate Section 7.04.

*Second*, the District Court suggested that Section 7.04 can apply to canvassers who happen to discover that a mail ballot is nearby—perhaps lying "on the kitchen table in the next room." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *38. To start, it is hard to imagine canvassers will confront many situations in which mail ballots happen to be sitting out in plain view.  *See* Tex. Elec. Code § 276.015.  In any event, such interactions do not fall within Section 7.04, which proscribes only those interactions that "directly involve" the ballot.  *Id.*  And advocating for candidates and measures after noticing a mail ballot in the next room does not "directly involve" the mail ballot.  As former Director of Elections Ingram explained at trial, the State agrees that Section 7.04 reaches only situations where a canvasser is *interacting with the mail ballot—e.g.*, walking the voter through the ballot and urging them to select a certain candidate or a certain choice on a measure.  *See, e.g.*, ROA.40422:22-40423:13, 40425:3-25.

*Third*, the District Court suggested Section 7.04 would apply to a few farfetched hypotheticals.  Of course, in adjudicating a facial challenge, courts must

not concoct "fanciful hypotheticals" utterly divorced from any evidence of enforcement. *Williams*, 553 U.S. at 301. But the District Court's hypotheticals fail anyway. A situation where a canvasser uses her own mail ballot "as a visual aid during conversations with voters" would not fall within Section 7.04's literal terms unless that canvasser was urging the voter to cast her own ballot in a particular way. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *30. A scenario in which a voter gives a glass of water to a canvasser is not vote harvesting because the voter is not providing compensation *with the intent* to deliver votes. *Id.* And as for the District Court's myriad hypotheticals in which a voter might not be able to successfully effectuate a vote in accordance with the canvasser's wishes, *id.* at *54-55, the State has the right to protect security and privacy in voting regardless of whether and how the elector's ballot is ultimately cast or counted.

3. Section 7.04 satisfies this Court's third strict-scrutiny factor because it "is the least-restrictive alternative" to achieve the State's ends—that is, it "could be replaced by no other regulation that could advance the interest as well with less infringement of speech." *Tex. Lottery Comm'n*, 760 F.3d at 440. As explained, the Legislature established several distinct elements for vote harvesting designed to ensure the statute applies exclusively to situations in which paid canvassers could meaningfully pressure voters who are actively casting or holding their mail ballots.

*See supra* at 33-34.  It is a carefully targeted time, place, and manner restriction.  *See* Part I.B.

In concluding otherwise, the District Court asserted that Section 7.04 is not narrowly tailored because the court believed the Legislature could have achieved its policy goals by other means.  *La Union Del Pueblo Entero*, 2024 WL 4337515, at *33.  But none of the District Court's proposed alternative policies would solve the problem the Legislature set out to fix.

The District Court first suggested that the Legislature could have prohibited only "speech that is intended to defraud, confuse, unduly influence or deceive."  *Id.* For one thing, it is not even clear what would qualify as "unduly influenc[ing]" or "confus[ing]" a voter under that proposed statute.  Such a prohibition would likely not even reach the prototypical behavior prohibited by Section 7.04: electioneering by paid canvassers while voters fill out their mail ballots.  Texas has the right to ensure secret and private voting, and it need not permit outsiders to be present during voting so long as they intend to engage in "political advocacy" that falls short of undue influence or confusion, *Mansky*, 585 U.S. at 12; *see also Burson*, 504 U.S. at 206.

Next, the District Court suggested Texas could have banned vote harvesting during "instances when a voter is actively completing their ballot."  *La Union Del Pueblo Entero*, 2024 WL 4337515, at *33.  That is the *majority* of what Section 7.04

reaches, but the law also prophylactically reaches *slightly* further to interactions *involving* the mail ballot when the mail ballot is immediately at hand. It does so because the Legislature realized that, even where voters are not already filling out their ballot, they may feel substantial pressure to do so in the canvasser's presence if the canvasser is permitted to walk the voter through the ballot. Just as the "State may reasonably take steps to ensure that partisan discord not follow the voter up to the voting booth, and distract from a sense of shared civic obligation at the moment it counts the most," *Mansky*, 585 U.S. at 15-16, the State can prevent paid canvassers from pressing individuals to fill their ballots out in a particular way while the ballot is immediately at hand and ready to be filled out in response to canvassers' advocacy or pressure.

4.      Finally, Section 7.04 satisfies the fourth strict-scrutiny factor because it "is not underinclusive" by leaving "significant influences bearing on the interest unregulated." *Tex. Lottery Comm'n*, 760 F.3d at 440. Once again, the Legislature surgically targeted behavior and situations in which voters are most likely to feel pressure to vote a mail ballot in a particular way. *See supra* at 33-34.

The District Court suggested that Section 7.04 is underinclusive based on the strange notion that it covers only advocacy "*for* a specific candidate or measure" and not speech *against* a candidate or measure. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *28, 35. But plain text and common sense make clear that the statute

applies to conduct "designed to deliver votes *for or against* a specific candidate or measure." Tex. Elec. Code § 276.015(e)(5) (emphasis added). Even without that explicit textual instruction, advocating *against* a candidate or measure amounts to advocating *for* the candidate's opponent or the status quo. *For*, Merriam-Webster Dictionary ("a function word to indicate an intended goal"). Indeed, the stay panel already rejected the District Court's sophistry, explaining that Section 7.04's scope extends to speech "designed to deliver votes *for or against* a specific candidate or measure." *La Union Del Pueblo Entero*, 119 F.4th at 407.

Next, the District Court chided Texas for not including advocacy for or against "political parties" in the vote-harvesting prohibition. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *35. To be sure, an abstract speech about the virtues of a particular political party would not violate Section 7.04. But if a paid canvasser walks the voter through the ballot and encourages him to vote only for a particular party's candidates, that is advocacy for a candidate and *would* be proscribed by Section 7.04. *See* Tex. Elec. Code § 276.015. That fact—ignored by the District Court—disproves its underinclusivity theory.

Similarly, the District Court believed Section 7.04 is underinclusive because there is an *absolute* ban on electioneering within 100 feet of an in-person polling place, while Section 7.04 prohibits only *paid* vote harvesting. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *35. This distinction, however, makes perfect sense.

The Legislature recognized that people *paid* to deliver votes for a candidate or measure are more likely to apply pressure than those who are not. That is why, for example, bribery is illegal but merely attempting to influence a politician is not. *See, e.g.*, *Snyder*, 603 U.S. at 10-12. On the other hand, the Legislature had good reasons to exclude unpaid individuals from the reach of Section 7.04. Consider, for example, a husband and wife sitting at their kitchen table trying to convince each other how to complete their mail ballots. Such interactions, and others like it, are unlikely to be characterized by undue or unwelcome pressure, and thus are properly excluded from the reach of Section 7.04.

## II.   SECTION 7.04 IS NOT VOID FOR VAGUENESS.

The District Court's ruling that Section 7.04 is void for vagueness is also riddled with legal error. This Court should reverse it as well.

The Due Process Clause prohibits States from enforcing a statute that does not give "fair notice of the conduct [it] proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (cleaned up). This standard is deferential to legislatures; a statute is not unconstitutionally vague merely because its application is sometimes unclear. *Johnson v. United States*, 576 U.S. 591, 603-04 (2015); *id.* ("the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree."). Indeed, "[m]any perfectly constitutional statutes use imprecise terms,"

*Dimaya*, 584 U.S. at 159, and due process "does not require impossible standards" of clarity, *United States v. Petrillo*, 332 U.S. 1, 7 (1947).

The District Court found two aspects of Section 7.04 vague, but its analysis of each is flawed. *First*, it deemed vague the definition of "compensation or other benefit." *La Union Del Pueblo Entero*, 2024 WL 4337515, at *37. It expressed confusion as to whether "providing volunteers food, water, swag, letters of recommendation, academic credit, gas cards, bus fare, free parking, or even the official use of [] offices … is unlawful." *Id.* It also suggested that providing a "glass of water" would be "compensation." *Id.* at 30.

The word "compensation" here, as elsewhere in the Texas Election Code, means pay. *See, e.g.*, Tex. Elec. Code § 32.092 ("entitled to compensation for that service in an amount not to exceed $25"). That is not remotely vague. Nor is the term "other benefit," which is defined as "anything *reasonably regarded* as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person." *Id.* § 276.015(a)(1) (emphasis added).

To the extent the District Court objects that the "other benefit" provision is broad, breadth does not amount to vagueness. And Section 7.04's breadth is not unlimited. Rather, it establishes an *objective* reasonableness standard—a commonplace idea in American law that the Supreme Court has upheld against

constitutional challenge. *See, e.g.*, *Cameron v. Johnson*, 390 U.S. 611, 616 (1968) (reasonableness standards are not vague); *Weddington v. United Nat. Ins. Corp.*, 346 F. App'x 224, 226 (9th Cir. 2009) ("'reasonably' is not ambiguous"). Especially in a pre-enforcement facial vagueness challenge, *see infra* Part III.B, this Court should not presume that prosecutors, judges, and juries will find things like glasses of water "reasonably" akin to money compensation. *See, e.g.*, *Fischer v. United States*, 603 U.S. 480, 487 (2024) (*noscitur a sociis* canon "avoids ascribing to one word a meaning so broad that it is inconsistent with the company it keeps").

*Second*, the District Court deemed unconstitutionally vague Section 7.04's requirement that a mail ballot be physically present because—in its view—it may not always be *absolutely clear* whether a ballot was physically present. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *38-39. For example, the District Court was not sure if electioneering was permissible if the "ballot is on the kitchen table in the next room." *Id.* at *38.

The District Court, once again, attacked a strawman version of Texas's vote-harvesting law. At the threshold, the law applies only in instances where the paid canvasser *knows* the ballot is physically present. *See* Tex. Elec. Code §§ 276.015(b), (c). This scienter requirement "alleviates vagueness concerns," *Gonzalez v. Carhart*, 550 U.S. 124, 149 (2007); *see Vill. of Hoffman Ests.*, 455 U.S. at 499 & n.14; *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 946-47 (11th Cir.

2023), as the District Court itself acknowledged, *La Union Del Pueblo Entero*, 2024 WL 4337515, at *38.

Moreover, Section 7.04 applies only to interactions that "directly involve" the mail ballot. Tex. Elec. Code § 276.015(e). Urging a candidate to support particular candidates or measures while the ballot is in another room is not vote harvesting because it does not "directly involve" the ballot. *Id.* The same interaction when the ballot "lies nearby on the entryway table" is closer to the line, but still is unlikely to amount to knowing vote harvesting. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *38. Regardless, just because a court can imagine borderline applications of a statute does not mean it is vague; just about any criminal statute has borderline cases (consider murder and self-defense, for example). *See, e.g.*, *Johnson*, 576 U.S. at 603-04; *Petrillo*, 332 U.S. at 7.

Finally, analogizing to *Johnson v. United States*, the District Court suggested that Section 7.04 is vague because Appellees' witnesses and election officials did not agree on every application of Section 7.04. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *38-39 (quoting *Johnson*, 576 U.S. at 595). But *Johnson*'s extreme facts only confirm the District Court's error. *Johnson* addressed a statute mandating two distinct inquiries that courts, including the Supreme Court, tried and failed to consistently conduct over many years and a long series of cases. 576 U.S. at 602. Here, no Texas court has *ever* interpreted Section 7.04, and there is no evidence of

any prosecutions, *see infra* Part III.B, let alone disparate interpretations by courts that would justify an analogy to *Johnson*. Indeed, physical-presence elements are common, and Appellees offer no evidence that courts have trouble interpreting them. *See, e.g.*, Tex. Code of Crim. Pro. Art. 42.0373 (mandatory restitution for child witness of family violence if "offense was committed in the physical presence of … a person younger than 15 years of age"). Appellees' void-for-vagueness challenge fails.

## III. AT MINIMUM, APPELLEES' CHALLENGES ARE PREMATURE.

This Court should reject Appellees' challenges on the merits and reaffirm States' authority to establish reasonable privacy and undue-influence regulations to protect mail voting. *See La Union Del Pueblo Entero*, 119 F.4th at 409. But at the very least, this Court should reverse because Appellees' pre-enforcement facial challenges are premature.

The facts on this point are simple and undisputed. No evidence was presented at trial of *any* Appellee or witness being investigated, prosecuted, or threatened with prosecution under Section 7.04. *See, e.g.*, ROA.40291:9-14 (acknowledgment by Appellee witness). No evidence was presented that *any* prosecutions have occurred under Section 7.04. No state court has had a chance to interpret Section 7.04, and *no* court has interpreted it in the context of an actual prosecution. Rather than offer evidence about how Section 7.04 will be enforced, Appellees' witnesses repeatedly

speculated about hypothetical enforcement scenarios—such as a canvasser being convicted for speaking to a voter who had a ballot hidden in her purse—completely divorced from Section 7.04's elements. *See, e.g.*, ROA.40290:17-40291:4. Unfortunately, the District Court indulged this speculation and adopted an untenable interpretation of Section 7.04 designed to ensure a finding of unconstitutionality. *See supra* at 34-35.

In doing so, the District Court disregarded fundamental rules of judicial restraint and usurped the authority of Texas's courts to reasonably interpret Section 7.04 and preserve its constitutionality. Thus, at minimum, this Court should reject Appellees' facial challenges and order the District Court to dismiss them.

### A.    Appellees' First Amendment challenges are premature.

"Courts generally disfavor facial challenges, and for good reason." *Voting for Am.*, 732 F.3d at 386. They "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. St. Grange v. Wash. St. Republican Party*, 552 U.S. 442, 451 (2008). Even where a claimant brings First Amendment challenges, the standard for overcoming this presumption is "rigorous." *Moody*, 144 S. Ct. at 2397. To prove that Section 7.04 is facially unconstitutional under the First Amendment, Appellees must make the "daunting" showing that "'a substantial number of [a law's] applications are unconstitutional, judged in relation to the

statute's plainly legitimate sweep.'" *Ostrewich*, 72 F.4th at 107 (quoting *Voting for Am.*, 732 F.3d at 387); *accord Moody*, 144 S. Ct. at 2397 (reaffirming that demanding standard).

Section 7.04 survives any facial challenge under this standard, as even the District Court's analysis underscored. The District Court seemed to acknowledge that Section 7.04 can lawfully shield voters from electioneering *while* they fill out their mail ballots. *See La Union Del Pueblo Entero*, 2024 WL 4337515, at *32. Appellees have made the same concession. CA5 Doc. 67 at 9. That should end this case: Preventing compensated electioneering while voters complete mail ballots is most of what Section 7.04 proscribes, *see supra* at 33-37, which means the statute has a "plainly legitimate sweep" and survives any facial challenge unless Appellees can prove that its "unconstitutional applications *substantially* outweigh its constitutional ones," *Moody*, 144 S. Ct. at 2397 (emphasis added).

In an effort to satisfy that standard, the District Court labored to stretch Section 7.04's meaning so that the statute would apply in variety of unlikely and unreasonable situations. Again, those efforts are unpersuasive. *See supra* at 33-37. Section 7.04 reaches only electioneering while voters fill out their mail ballots and interactions directly involving mail ballots that are immediately at hand—just like the constitutional and lawful anti-electioneering rules for in-person polling places in all 50 States. *See supra* at 33-35.

Further, even if this Court thinks that the District Court's overbroad reading of Section 7.04 is plausible, Texas's courts must be given a chance to "implement [Section 7.04] in a manner consistent with the constitution." *Wash. St. Grange*, 552 U.S. at 451. This Court, moreover, must adopt any narrowing construction that preserves the statute's constitutionality, just as it did in *Voting for America*. 732 F.3d at 396-97. "When a serious doubt is raised about the constitutionality" of a statute, "it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (cleaned up). Appellants have offered such a construction—which aligns with the provision's plain text—before the District Court and this Court. *See supra* at 33-35. By refusing to adopt it, or even to give Texas's courts a chance to do so, the District Court contravened these well-established rules.

In fact, the District Court turned these rules on their head because it held the lack of enforcement evidence *against Texas*, blaming the Secretary of State and Attorney General for not providing "definitive answers about the scope of" Section 7.04. *La Union Del Pueblo Entero*, 2024 WL 4337515, at *11. The District Court, however, cited no authority suggesting that such official guidance documents are required. To the contrary, the Supreme Court and this Court have accepted narrowing constructions offered *during litigation*, *see Frisby v. Schultz*, 487 U.S.

474, 483 (1988) (construing town ordinance "more narrowly" based on "representations of counsel for the town at oral argument"), *Voting for America*, 732 F.3d at 396-97 & n.9, and that is precisely what Appellants are offering here. In any event, as the State Defendants-Appellants explain, neither the Attorney General nor the Secretary of State enforce Section 7.04. Instead, county district attorneys do, and they would not be bound by guidance issued from Austin. But those officials *would* be bound by rulings from Texas's state courts, which will undoubtedly ensue once officials in Texas are given a chance to enforce Section 7.04.

### B. Appellees' vagueness challenge is premature.

Appellees' pre-enforcement, facial void-for-vagueness challenge is also doomed to failure. "In the context of pre-enforcement review … examining facial vagueness is often difficult, perhaps impossible, because facts are generally scarce." *Roark & Hardee*, 522 F.3d at 547; *see United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004) (such challenges are among "the most difficult … to mount successfully"). That is why a vagueness challenge must ordinarily be raised as a defense to prosecution. *See Burson*, 504 U.S. at 210 n.13; *Schirmer v. Edwards*, 2 F.3d 117, 124 (5th Cir. 1993).

If a court does plow ahead to adjudicate a pre-enforcement, facial vagueness challenge, it must find that the challenged provision is "impermissibly vague in *all* of its applications." *Vill. of Hoffman Ests.,* 455 U.S. at 495 (emphasis added).

Section 7.04 easily passes this test because (again) everyone *agrees* that it prohibits paid canvassers from pressuring voters to vote for particular candidates while completing their ballots. *La Union Del Pueblo Entero*, 2024 WL 4337515, at \*32; CA5 Doc. 67 at 9.

The District Court's smattering of unrealistic hypotheticals—canvassers paid with glasses of water or prosecuted based on mail ballots sitting idle in neighboring rooms—cannot render a statute facially void for vagueness. *See supra* at 34-36. But even if this Court somehow agrees that the terms "benefit" or "physical presence" are vague, the District Court was required to give Texas's courts a chance to adopt a "limiting construction rather than a facial invalidation." *Burson*, 504 U.S. at 210 n.13; *see Vill. of Hoffman Ests.*, 455 U.S. at 494 n.5; *Babbitt v. United Farm Workers*, 442 U.S. 289, 307-09 (1979). The District Court erred once again when it failed to do so.

## CONCLUSION

This Court should reverse the order permanently enjoining Section 7.04 and dismiss Appellees' challenges to that provision.

January 2, 2025                    Respectfully submitted,


                                   *s/John M. Gore*
                                   _____

Zachary Austin                     John M. Gore
JONES DAY                             *Counsel of Record*
325 John H. McConnell Blvd. #600   E. Stewart Crosland
Columbus, OH 43215                 Louis J. Capozzi, III
(614) 281-3105                     JONES DAY
zaustin@jonesday.com               51 Louisiana Ave., N.W.
                                   Washington, DC 20001
                                   (202) 879-3939
                                   jmgore@jonesday.com
                                   scrosland@jonesday.com
                                   lcapozzi@jonesday.com


        *Counsel for Intervenor-Appellants*

## CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(5)-(a)(6), (a)(7)(B), (c)(1), and Fifth Circuit Rule 32.1-32.2. Excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, the brief contains 11,624 words and has been prepared using Microsoft Word in Times New Roman 14-point font.

I certify that on January 2, 2025, I caused a copy of the foregoing to be served on all counsel of record via CM/ECF.

January 2, 2025

*s/John M. Gore*
John Gore
*Counsel for Intervenor-Appellants*
