# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 24-50783

---

LA UNIÓN DEL PUEBLO ENTERO; SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS; TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION; JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; FIEL HOUSTON, INCORPORATED; FRIENDSHIP-WEST BAPTIST CHURCH; TEXAS IMPACT; JAMES LEWIN,

*Plaintiffs-Appellees,*

v.

GREGORY W. ABBOTT, in his official capacity as Governor of Texas; WARREN K. PAXTON, in his official capacity as Attorney General of Texas; STATE OF TEXAS; JANE NELSON, in her official capacity as Texas Secretary of State; HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE,

*Defendants-Appellants,*

REPUBLICAN NATIONAL COMMITTEE,

*Movant-Appellant.*

---

OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS,

*Plaintiffs-Appellees,*

v.

KEN PAXTON, Texas Attorney General,

*Defendant-Appellant.*

---

LULAC TEXAS; TEXAS ALLIANCE FOR RETIRED AMERICANS; TEXAS AFT; VOTO LATINO,

*Plaintiffs-Appellees,*

v.

KEN PAXTON, in his official capacity as the Texas Attorney General,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION, NO. 5:21-CV-844

## BRIEF FOR THE LUPE PLAINTIFFS-APPELLEES

*(Cover Continued on Next Page)*

NINA PERALES
FÁTIMA L. MENÉNDEZ
JULIA R. LONGORIA
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
110 Broadway, Suite 300
San Antonio, Texas 78205
(210) 224-5476
nperales@maldef.org

MICHAEL C. KEATS
REBECCA L. MARTIN
JASON S. KANTERMAN
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, New York 10004
(212) 589-8000

*Attorneys for Plaintiffs-Appellees*
*La Unión del Pueblo Entero; Southwest*
*Voter Registration Education Project;*
*Mexican American Bar Association of*
*Texas; Texas Hispanics Organized for*
*Political Action; JOLT Action;*
*William C. Velasquez Institute; and*
*FIEL Houston, Incorporated*

ZACHARY D. TRIPP
ANNE CORBETT
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

AARON J. CURTIS
CHARLES GEHNRICH
NATALIE HOWARD
AUGUSTUS IPSEN
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8901

LEAH J. TULIN
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
1140 Connecticut Avenue NW,
Suite 1150
Washington, DC 20036
(202) 650-6397

SEAN MORALES-DOYLE
JASLEEN K. SINGH
PATRICK A. BERRY
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, New York 10271
(646) 292-8310

*Attorneys for Plaintiffs-Appellees*
*Friendship-West Baptist Church;*
*Texas Impact; and James Lewin*

CP COUNSEL PRESS    (800) 4-APPEAL • (376808)

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1)    Plaintiffs-Appellees:

La Unión del Pueblo Entero
Friendship-West Baptist Church
Southwest Voter Registration Education Project
Texas Impact
Mexican American Bar Association of Texas
Texas Hispanics Organized for Political Action
JOLT Action
William C. Velasquez Institute
James Lewin
FIEL Houston, Inc.
OCA-Greater Houston
League of Women Voters of Texas
LULAC Texas
Voto Latino
Texas Alliance for Retired Americans
Texas AFT

2)    Defendants-Appellants:

Attorney General Kenneth Paxton Jr.
Secretary of State Jane Nelson
State of Texas

3)    Intervenors-Appellants:

Harris County Republican Party

Dallas County Republican Party

Republican National Committee
National Republican Senatorial Committee
National Republican Congressional Committee

4) Counsel for Plaintiffs-Appellees La Unión del Pueblo Entero; Southwest Voter Registration Education Project; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Action; JOLT Action; William C. Velasquez Institute; and FIEL Houston, Inc.:[1]

Nina Perales
Fátima L. Menéndez
Julia R. Longoria
Mexican American Legal Defense & Educational Fund

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
Fried Frank, Harris, Shriver & Jacobson LLP

5) Counsel for Plaintiffs-Appellees Friendship-West Baptist Church; Texas Impact; and James Lewin:

Sean Morales-Doyle
Leah J. Tulin
Jasleen K. Singh
Patrick A. Berry
Brennan Center for Justice at NYU Law School

Zachary D. Tripp

---

[1] The following parties are collectively referred to as the LUPE Plaintiffs-Appellees: La Unión del Pueblo Entero; Mexican American Bar Association of Texas; Southwest Voter Registration Education Project; Texas Hispanics Organized for Political Education; JOLT Action; William C. Velasquez Institute; FIEL Houston, Inc.; Friendship-West Baptist Church; Texas Impact; and James Lewin.

Aaron J. Curtis
Anne Corbett
Charles Gehnrich
Natalie Howard
Augustus Ipsen
Weil, Gotshal & Manges LLP

6)     Counsel for Plaintiffs-Appellees OCA-Greater Houston and League of Women Voters of Texas:

Zachary Dolling
Sarah Chen
Veronikah Warms
Texas Civil Rights Project

Adriana Pinon
Thomas Buser-Clancy
Edgar Saldivar
Savannah Kumar
Ashley Harris
ACLU Foundation of Texas, Inc.

Adriel I. Cepeda Derieux
Ari Savitzky
Sophia Lin Lakin
Dayton Campbell-Harris
Susan Mizner
Brian Dimmick
American Civil Liberties Union Foundation

Lucia Romano
Peter Hofer
Christopher McGreal
Disability Rights Texas
Patrick Stegemoeller
Asian American Legal Defense and Education Fund

Jessica Ring Amunson
Jenner & Block LLP

7)    Counsel for Plaintiffs-Appellees LULAC Texas; Voto Latino; Texas Alliance for Retired Americans; and Texas AFT:

Christopher D. Dodge
Elena Rodriguez Armenta
Mark E. Elias
Marisa O'Gara

Meaghan E. Mixon
Omeed Alerasool
Uzoma N. Nkwonta
Daniela Lorenzo
Marcos Mocine-Mcqueen
Elias Law Group LLP

James A. Rodman
Rodman Law Office

8)    Counsel for Defendants-Appellants Attorney General Kenneth Paxton Jr.; Secretary of State Jane Nelson; and State of Texas:

Ken Paxton
Aaron L. Nielson
Kathleen T. Hunker
Meagan Corser
Mark A. Csoros
Kateland R. Jackson
Ryan Glen Kercher
William D. Wassdorf
Office of the Attorney General of Texas

9) Counsel for Intervenors-Appellants Harris County Republican Party; Dallas County Republican Party; Republican National Committee; National Republican Senatorial Committee; and National Republican Congressional Committee:

John M. Gore
Louis J. Capozzi, III
Jones Day

/s/ *Zachary D. Tripp*
Zachary D. Tripp
*Attorney of record for Appellees*

February 21, 2025

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs respectfully request oral argument. This appeal presents significant questions regarding First Amendment protections for core political advocacy during political campaigns. Plaintiffs respectfully submit that oral argument would assist the Court in resolving the appeal.

# TABLE OF CONTENTS

Introduction ............................................................................. 1

Statement of Issues ................................................................. 5

Statement of the Case ............................................................. 5

    A.  Section 7.04 criminalizes compensated advocacy for candidates or measures in the presence of a ballot .................... 5

    B.  Section 7.04 has chilled Plaintiffs' speech ................................... 6

    C.  Plaintiffs' lawsuits and the trial ................................................ 9

Jurisdiction ............................................................................. 11

Standard of Review ................................................................. 11

Summary of the Argument ..................................................... 12

Argument ................................................................................ 18

  I.  The Canvassing Restriction violates the First and Fourteenth Amendments ....................................................... 18

    A.  Strict Scrutiny applies because Section 7.04 is a content-based and speaker-based restriction on core political speech .. 18

    B.  Section 7.04 fails strict scrutiny ................................................ 20

        1.  Section 7.04 sweeps in a broad range of compensated political advocacy ............................................ 20

        2.  Section 7.04 is not narrowly tailored to achieve a compelling state interest ......................................................... 24

        3.  *Burson* confirms Section 7.04 is unconstitutional ............... 33

        4.  Defendants' arguments for lesser scrutiny fail .................... 37

        5.  Section 7.04 is unconstitutional as applied and on its face ........................................................................................ 42

    C.  Section 7.04 is unconstitutionally vague ................................... 47

        1.  Section 7.04 is vague ............................................................ 48

        2.  Plaintiffs' void-for-vagueness challenge is ripe for review ..................................................................................... 51

II. The District Court has jurisdiction to hear this case ...................... 53

    A. Plaintiffs have standing to enjoin Defendants........................... 54

    B. The Attorney General and Secretary of State are not
       entitled to sovereign immunity ................................................... 56

Conclusion.................................................................................................... 60

Certificate of Service.................................................................................... 62

Certificate of Compliance ............................................................................ 63

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023) ................................................................. 53

*Ashcroft v. Free Speech Coal.*,
   535 U.S. 234 (2002) ................................................................. 19

*Barto v. Shore Const., L.L.C.*,
   801 F.3d 465 (5th Cir. 2015) .................................................... 11

*Book People, Inc. v. Wong*,
   91 F.4th 318 (5th Cir. 2024) .................................................... 54

*Buckley v. Am. Const. Law Found., Inc.*,
   525 U.S. 182 (1999) ........................................................ *passim*

*Burson v. Freeman*,
   504 U.S. 191 (1992) ........................................................ *passim*

*Butler v. City of Big Springs*,
   652 S.W.3d 149 (Tex. 2022) .................................................... 22

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ........................................................ *passim*

*Connally v. Gen. Constr. Co.*,
   269 U.S. 385 (1926) ................................................................. 50

*Dakotans for Health v. Noem*,
   52 F.4th 381 (8th Cir. 2022) ............................................. 29, 43

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ................................................................. 48

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ................................................................. 54

*Frank v. Lee*,
   84 F.4th 1119 (10th Cir. 2023) ................................................ 26

*Garrison v. State of La.*,
   379 U.S. 64 (1964) ................................................................. 19

*Gentile v. State Bar of Nev.*,
   501 U.S. 1030 (1991) ............................................................. 52

*In re Goode,*
821 F.3d 553 (5th Cir. 2016) ....................................... 11

*Hess Corp. v. Schlumberger Tech. Corp.,*
26 F.4th 229 (5th Cir. 2022) ...................................... 11

*Hiett v. United States,*
415 F.2d 664 (5th Cir. 1969) ...................................... 48

*Holder v. Humanitarian L. Project,*
561 U.S. 1 (2010) ..................................................... 52

*Hollingsworth v. Perry,*
570 U.S. 693 (2013) ................................................. 54

*Jennings v. Rodriguez,*
583 U.S. 281 (2018) ................................................. 46

*Kolender v. Lawson,*
461 U.S. 352 (1983) ................................................. 52

*La Unión Del Pueblo Entero v. Abbott,*
119 F.4th 404 (5th Cir. 2024) .................................... 10

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State,*
66 F.4th 905 (11th Cir. 2023) .................................... 50

*Martin v. City of Struthers,*
319 U.S. 141 (1943) ................................................. 34

*McClelland v. Katy Indep. Sch. Dist.,*
63 F.4th 996 (5th Cir. 2023) ................................. 15, 47

*McCullen v. Coakley,*
573 U.S. 464 (2014) ................................................. 31

*McIntyre v. Ohio Elections Comm'n,*
514 U.S. 334 (1995) ............................................ 13, 38

*Meyer v. Grant,*
486 U.S. 414 (1988) ........................................... *passim*

*Mi Familia Vota v. Ogg,*
105 F.4th 313 (5th Cir. 2024) ............................... 56, 58

*Mills v. Alabama,*
384 U.S. 214 (1966) ................................................. 34

*Minn. Voters All v. Mansky,*
585 U.S. 1 (2018) ............................................ 35, 36, 41

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ............................................................ 20, 36, 42

*NAACP v. Button,*
    371 U.S. 415 (1963) ...................................................................... 48

*Nat'l Press Photographers Ass'n v. McCraw,*
    90 F.4th 770 (5th Cir. 2024) ...................................................... 55

*NIFLA v. Becerra,*
    585 U.S. 755 (2018) .................................................................. 4, 12

*Ostrewich v. Tatum,*
    72 F.4th 94 (5th Cir. 2023) ...................................................... 58, 59

*Purcell v. Gonzalez,*
    549 U.S. 1 (2006) ........................................................................ 10

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ...................................................................... 24

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ............................................................... *passim*

*Reno v. ACLU,*
    521 U.S. 844 (1997) ...................................................................... 48

*Roarke & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ...................................................... 48

*Sessions v. Dimaya,*
    584 U.S. 148 (2018) ...................................................................... 48

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ...................................................................... 19

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020), *as revised* (Oct. 30, 2020) ............... 53

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016), *as revised* (May 24, 2016) ............................ 54

*State v. Stephens,*
    663 S.W.3d 45 (Tex. Crim. App. 2021) .................................... 57, 58

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...................................................................... 46

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ...................................................... 56

*Texas v. EEOC,*
  933 F.3d 433 (5th Cir. 2019) .......................................................... 11

*Thompson v. W. States Med. Ctr.,*
  535 U.S. 357 (2002) ...................................................................... 26

*United States v. Playboy Ent. Grp., Inc.,*
  529 U.S. 803 (2000) ...................................................................... 24

*Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n,*
  760 F.3d 427 (5th Cir. 2014) ............................................. 24, 30, 31

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
  455 U.S. 489 (1982) ........................................................... 47, 48, 50

*Voting for Am. v. Steen,*
  732 F.3d 382 (5th Cir. 2013) ........................................................ 39

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ...................................................................... 48

*Whitney v. California,*
  274 U.S. 357 (1927) ........................................................................ 1

*Ex Parte Young,*
  209 U.S. 123 (1908) ...................................................................... 56

**Statutes**

28 U.S.C. § 1292(a)(1) .......................................................................... 11

28 U.S.C. § 1331 .................................................................................... 11

Tex. Elec. Code § 13.008(a) ................................................................. 28

Tex. Elec. Code § 61.003 ...................................................................... 26

Tex. Elec. Code § 85.036 ...................................................................... 26

Tex. Elec. Code § 86.004 ................................................................. 14, 27

Tex. Elec. Code § 273.001(a) ............................................................... 57

Tex. Elec. Code § 276.013 ............................................................... 3, 15

Tex. Elec. Code § 276.013(a) ........................................................ 30, 33

Tex. Elec. Code § 276.015 ......................................................... 1, 19, 48

Tex. Elec. Code § 276.015(a)(1) .......................................... 6, 15, 21, 49

Tex. Elec. Code § 276.015(a)(2) ................................................... *passim*

Tex. Elec. Code § 276.015(e)(2) .......................................... 6, 13, 22, 25

Tex. Elec. Code § 276.015(e)(5) ............................................ 40

Tex. Elec. Code § 276.015(f) ................................................ 5

Tex. Gov't Code § 44.001 .................................................... 51

Tex. Penal Code § 15.01 ..................................................... 33

Tex. Penal Code § 12.34 ..................................... 1, 5, 18, 19

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The
    Interpretation of Legal Texts* (2012) ............................... 21

*Compensation*, Webster's Third New International
    Dictionary (2002) .......................................................... 20

*Physical*, Webster's Third New International Dictionary
    (2002) ........................................................................... 22

*Presence*, Webster's Third New International Dictionary
    (2002) ........................................................................... 22

# INTRODUCTION

"Those who won our independence" knew the vital importance of the "freedom to think as you will and to speak as you think." *Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, J., concurring). Thus, "[t]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (citations omitted).

Texas nonetheless enacted an "outright ban" on core political speech "backed by criminal sanctions." *Id.* at 337. Section 7.04 of S.B.1 prohibits political canvassers who received "compensation or other benefit" from engaging in any "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2)-(c). "Physical presence" is not defined and "other benefit" reaches anything regarded as a "gain or advantage," including "political favor[s]." *Id.* § 276.015(a)(1). And Section 7.04 is backed by harsh penalties: up to ten years in prison and $10,000 in fines. Tex. Penal Code § 12.34.

It is undisputed that Section 7.04 is both content-based and speaker-based. On its face, it criminalizes political speech because of its subject and the speaker. It prohibits a door-to-door canvasser who receives any "compensation or other benefit" from advocating for candidates or measures in

the "physical presence" of a mail ballot, even if a homeowner invites the canvasser in. It prohibits an employee of a grassroots organization who has spoken in favor of a ballot measure from helping a voter fill out a mail ballot at the voter's request. And it prohibits organizations from advocating for measures during community forums if voters bring their mail ballots. The law reaches interactions throughout the state and is effective for the entire election season. Remarkably, it singles out compensated advocates for disfavored treatment: compensated canvassing is a crime, but wholly volunteer canvassing is not.

Worse, Section 7.04 leaves Texans of ordinary intelligence to guess its guardrails—further exacerbating the chilling effect. The key terms "physical presence" and "compensation or other benefit" do not tell advocates how close a ballot must be or what qualifies as a mere "gain or advantage." As a result, Plaintiffs have self-censored their political speech to avoid crossing the line between protected political advocacy and a crime.

After holding a six-week bench trial, the district court correctly held that Section 7.04 is unconstitutional both as applied and on its face. Content-based laws trigger strict scrutiny and are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "When Government seeks to use its full power, including the criminal law, to command

… what distrusted source [a person] may not hear, it uses censorship to control thought." *Citizens United*, 558 U.S. at 356.

Defendants assert that the law applies only to coercion while voters are "filling out their ballots," and then analogize it to a traditional buffer zone around an in-person polling place. But that argument fails at every level. Section 7.04 does not include any requirements relating to "filling out the ballot" or coercion. Rather, the plain text reaches all compensated advocacy in the "physical presence" of a ballot, without regard to what, if anything, the voter is doing with the ballot, whether the voter wants help, or whether there is fraud or coercion. Indeed, Texas separately prohibits crossing the line into coercion in the presence of a ballot. *See* Tex. Elec. Code § 276.013. That law remains fully operational. The district court correctly found that Section 7.04 goes much farther and bans all compensated advocacy in the physical presence of a ballot.

Defendants' analogy to a traditional buffer zone also fails. *See Burson v. Freeman*, 504 U.S. 191, 210 (1992) (plurality opinion). The *Burson* plurality applied strict scrutiny to that law, a "rare" case that survived because the buffers were narrow, well-defined, and dated back over a century. *See id.* at 202-11. Here, as the district court correctly held, strict scrutiny applies and this law does not survive. Section 7.04 is far broader than the law upheld in *Burson*; its limits are roving, vague, and amorphous;

3

and tradition cuts the other way. This law criminalizes in-person political advocacy anywhere in the entire state when a ballot is physically present—including in private homes or other venues where the voter has welcomed the advocate or even sought out the advocate. There is no tradition of such a roving "force field" criminalizing political speech.

Even worse, unlike the speaker-neutral law in *Burson*, Section 7.04 singles out a class of disfavored speakers: only advocacy by individuals who receive "compensation" or "anything reasonably regarded as a gain or advantage" is a crime. The Supreme Court's "precedents are deeply skeptical of laws that distinguish among different speakers, allowing speech by some but not others." *NIFLA v. Becerra*, 585 U.S. 755, 777-78 (2018) (cleaned up). The Court has resoundingly rejected the idea that the government can single out paid political advocacy in the run-up to an election: There is "no basis for the proposition that, in the context of political speech, the Government may impose restrictions on certain disfavored speakers." *Citizens United*, 558 U.S. at 341.

Both facially and as-applied, Section 7.04 runs headlong into the Supreme Court's precedents interpreting the First Amendment. The district court correctly held that the law is an unconstitutional restriction on core political speech. This Court should affirm.

## STATEMENT OF ISSUES

1.  Whether Section 7.04 violates the First Amendment on its face and as applied to Plaintiffs.

2.  Whether Section 7.04 is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

3.  Whether the district court had jurisdiction to enjoin the Texas Attorney General and the Secretary of State from enforcing Section 7.04.

## STATEMENT OF THE CASE

### A. Section 7.04 Criminalizes Compensated Advocacy For Candidates Or Measures In The Presence Of A Ballot

In 2021, Texas enacted Senate Bill 1 ("S.B.1"). Section 7.04 of S.B.1 established a new felony—backed by up to ten years in prison and a $10,000 fine—for giving, offering, or receiving "compensation or other benefit" for "vote harvesting services." Tex. Elec. Code § 276.015(f); *see* Tex. Penal Code § 12.34. "Vote harvesting services" are defined to mean any "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2). The advocacy ban "does not apply" to interactions that are not compensated, "do not occur in the presence of the ballot or during the voting process," "do not directly involve" a ballot, "are not conducted in-person with a voter," and

5

are "not designed to deliver votes for or against a specific candidate or measure." Tex. Elec. Code § 276.015(e)(2).

"Benefit" is defined broadly to mean "anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person." *Id.* § 276.015(a)(1). The law does not define "physical presence" or other terms.

## B.  Section 7.04 Has Chilled Plaintiffs' Speech

As the district court found, "Plaintiffs are membership-driven, non-partisan civil rights and social advocacy groups in Texas that regularly conduct in-person voter outreach and engagement activities, such as block-walking and candidate forums." ROA.37613. Plaintiff organizations work to advance their organizational missions, including by "encouraging civic participation, supporting K-12 public school employees, advocating for the interest[s] of senior citizens, [and] improving infrastructure in the colonias." ROA.37511. All "rely on in-person voter advocacy to advance their causes." ROA.37511.

"Plaintiffs have endorsed ballot measures (and some have supported candidates) aligned with their organizational missions and deployed staff, independent contractors and volunteers to engage with voters in person to

increase turnout and electoral support for their preferred measure or candidate." ROA.37511. "Plaintiffs' voter engagement activities generally occur in the weeks before elections (when they are most effective), when voters are likely to have received their mail ballots." ROA.37512. These efforts include "neighborhood door-knocking campaigns, voter registration drives, candidate forums, town hall meetings, tabling at community events, and exit-polling." ROA.37511. "Plaintiffs' volunteers often receive refreshments, t-shirts, pens, gas cards, and other tokens of appreciation for their canvassing and assistance efforts." ROA.37512.

"During some outreach events, voters have taken out their mail ballots while speaking with Plaintiffs' organizers to ask questions about their ballots or request voting assistance." ROA.37512. "Plaintiffs' staff and volunteers have also regularly helped voters with disabilities and/or voters with limited English proficiency … including voters who vote by mail." ROA.37511.

Since S.B.1 went into effect, Plaintiffs have been unable to determine from the text "whether the Canvassing Restriction prohibits their organizations' routine voter engagement activities." ROA.37527. "To avoid putting staff members and volunteers in legal jeopardy under the Canvassing Restriction, Plaintiffs and their members have limited in-person interactions with voters in the weeks before elections, when voters are most likely

to have mail ballots in their possession—and when Plaintiffs' speech is most likely to be effective." ROA.37527.

For example, Tania Chavez Camacho, the executive director at La Unión del Pueblo Entero ("LUPE"), testified that LUPE staff have ceased in-person advocacy, such as promoting ballot measures and get-out-the vote efforts, because of the risk that staff members will be criminally prosecuted under Section 7.04 for advocating in the presence of a ballot. ROA.38601-02; *see also* ROA.37528 (finding Texas Alliance for Retired Americans and OCA-Greater Houston no longer conduct in-person advocacy with voters in the weeks before an election due to Section 7.04).

There is also "widespread confusion about the meaning of the Canvassing Restriction." ROA.37524. "Even local election administrators … are unsure about how to interpret Section 7.04." ROA.37524. Likewise, "Plaintiffs are uncertain whether providing volunteers food, beverages, gas cards, bus fare, letters of recommendation, or academic credit to volunteers for their advocacy work is unlawful because 'compensation' is not defined in the Election Code and benefit is merely defined by a synonym." ROA.37525. Moreover, "[b]ecause 'physical presence' is not defined in Section 7.04, Plaintiffs are unsure how physically proximate a ballot must be to a volunteer or employee to violate the Canvassing Restriction and risk exposure to a decade in prison." ROA.37526.

### C. Plaintiffs' Lawsuits And The Trial

Plaintiffs brought these lawsuits to enjoin Defendants from enforcing Section 7.04 because it violated their First and Fourteenth Amendment rights. The district court held a bench trial from September 11, 2023, to October 20, 2023, which included "about 80 witnesses (both live and by deposition testimony), [and] nearly 1,000 exhibits." ROA.37509. The parties presented closing arguments on February 13, 2024. ROA.37509.

On September 28, 2024, the district court enjoined Section 7.04 as an unconstitutional restriction on political speech.[2] The court found that Plaintiffs had standing to challenge Section 7.04 and that Plaintiffs' claims fall within the *Ex parte Young* exception to sovereign immunity. ROA.37530-48. On the merits, the court "assesse[d] the scope" of the law, determining that it reaches in-person interactions with the requisite intent, and is not limited to fraud, coercion, or speech during active voting. ROA.37556-60. The court concluded that Section 7.04 is subject to strict scrutiny "both because it is … content-based and because it burdens Plain-

---

[2] In addition, on October 11, 2024, the district court issued a 114-page decision enjoining several provisions of S.B.1, including Section 7.04, as preempted by Section 208 of the Voting Rights Act of 1965. ECF No. 1173. Defendants brought a separate appeal challenging that ruling. *See La Unión del Pueblo Entero v. Abbott*, No. 24-50826 (5th Cir.).

tiffs' core political speech." ROA.37550. The law "singles out specific subject matter—speech intended to deliver votes for a specific candidate or measure—for differential treatment." ROA.37551 (cleaned up).

The district court determined Section 7.04 fails strict scrutiny. The court found the law "is not 'necessary' to serve" the State's asserted interests because "preexisting provisions" already target undue influence, coercion, and fraud during the voting process. ROA.37562-63. The court emphasized that "the State Defendants have not offered even *hypothetical* scenarios in which the Canvassing Restriction would serve the government's interest … let alone identified an 'actual problem' in need of solving." ROA.37563. The court concluded that the law is both "overbroad and underinclusive," and "unconstitutional in most of its applications," judged in relation to any plainly legitimate sweep. ROA.37569.

The district court also concluded that the law is unconstitutionally vague. The terms "compensation or other benefit" and "physical presence" are vague, fail to provide clear notice, and allow arbitrary and discriminatory enforcement. ROA.37569-77. The court entered a permanent injunction against its enforcement.

Defendants appealed and sought to stay the injunction pending appeal. *See* ROA.37624; ROA.37584. Relying on *Purcell v. Gonzalez,* 549 U.S. 1 (2006), this Court granted the stay. *See La Unión Del Pueblo Entero v.*

*Abbott*, 119 F.4th 404, 407 (5th Cir. 2024). The election has passed and it is undisputed that *Purcell* is no longer applicable.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. On October 1, 2024, State Defendants and Intervenors filed timely notices of appeal. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STANDARD OF REVIEW

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 471 (5th Cir. 2015) (citations omitted). "Factual findings made during a bench trial deserve great deference. A district court's finding of fact is clear error only if it is implausible in the light of the record considered as a whole." *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 233 (5th Cir. 2022) (citations omitted). The determination of whether a statute violates First Amendment free speech rights is a mixed question of law and fact. *See In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016). Rulings on legal questions, including rulings on standing, are reviewed *de novo*. *See Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019). "[F]actual findings, including those on which the court based its legal conclusions, are reviewed for clear error." *Id.* (citation omitted).

## SUMMARY OF THE ARGUMENT

**I.** The district court correctly held that Section 7.04 violates the First and Fourteenth Amendments on its face and as applied to Plaintiffs.

**A.** Section 7.04 triggers strict scrutiny because it is a content-based and speaker-based restriction on speech. Remarkably for a First Amendment case, Defendants do not dispute that the law is both content- and speaker-based. Section 7.04 criminalizes compensated in-person interactions "in the physical presence" of a ballot that are "intended to deliver votes for a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2). The law, which prohibits advocacy only "for a particular candidate or measure," *id.*, "single[s] out specific subject matter for differential treatment," *Reed*, 576 U.S. at 169. And this limitation targets "interactive communication concerning political change." *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 186 (1999). Thus, Section 7.04 is a content-based restriction on core political speech. It therefore triggers strict scrutiny. *See Reed*, 576 U.S. at 163

Even worse, Section 7.04 singles out compensated political advocacy for disfavored treatment. Singling out specific speakers is suspect. *E.g.*, *NIFLA*, 585 U.S. at 777-78. And singling out paid political advocacy is particularly suspect, if not categorically illegitimate. *E.g.*, *Citizens United*, 558 U.S. at 341. Strict scrutiny applies.

Contrary to Defendants' submissions, lesser scrutiny does not apply. First, there is no merit to Defendants' argument that lower scrutiny should apply merely because Section 7.04 is an "election law." That argument would cut a gaping hole in the First Amendment and is foreclosed by *Burson*, the very Supreme Court precedent on which Defendants primarily rely: *Burson* applied strict scrutiny. *See Burson*, 504 U.S. at 197. The Supreme Court has also rejected the argument that *Anderson-Burdick* scrutiny applies to election regulations that directly regulate political speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345-46 (1995); *see also Meyer v. Grant*, 486 U.S. 414, 420 (1988).

Second, because Section 7.04 is content-based and speaker-based, it is not a content-neutral regulation of the time, place, and manner of speech. *See id.* Third, the law applies anywhere in the state, not only to non-public fora. *See* Tex. Elec. Code § 276.015(a)(2), (e)(2). Indeed, it applies to the most traditional public fora like public parks and sidewalks, and even inside people's homes when they have invited the canvasser inside. That is a stark break from our traditions. Strict scrutiny therefore applies.

**B.** Under strict scrutiny, laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. The

district court correctly held that Defendants failed to overcome that demanding test.

Defendants contend the canvassing restriction is narrowly tailored to prohibit electioneering while voters are engaged in the act of voting (or are about to vote) with a mail-in ballot. But Section 7.04 unambiguously reaches beyond the act of voting. The statutory requirement is merely that the forbidden communication occur "in the physical presence" of a ballot, which cannot be plausibly read to be limited to active voting. *See* ROA.37557-60. Furthermore, the so-called buffer applies only to speech on a particular topic (for a specific candidate or measure) and by a particular speaker (compensated advocates rather than volunteers). The law would thus be unconstitutionally under- and over-inclusive even if it could be limited to filling out a ballot.

Unlike in *Burson*, the buffer is also roving and ill-defined. It is not confined to a defined geographic location (such as 100 feet from a polling place). Instead, it reaches interactions anywhere in the state that take place in the undefined "physical presence" of a ballot. And unlike in *Burson*, it is not limited to a short period: it remains effective for the entire election season, including at least 30 days, and sometimes 45 days, before each election, when mail ballots are sent out to voters. Tex. Elec. Code

§ 86.004. The law thus censors political speech when it has its "fullest and most urgent application." *Citizens United,* 558 U.S. at 339.

Section 7.04 is also not narrowly tailored to serve a compelling interest because Texas already has other existing criminal laws that serve its interests in preventing fraud, intimidation, or coercion. *See, e.g.*, Tex. Elec. Code § 276.013. Texas does not have a compelling interest in enacting an unnecessarily duplicative and far broader prohibition against all paid political advocacy in the mere presence of a ballot. Section 7.04 is thus not narrowly tailored to serve a compelling state interest.

**C.** Exacerbating the chilling effect and lack of tailoring, Section 7.04 is unconstitutionally vague because people of "common intelligence must necessarily guess at its meaning." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir. 2023). The key term "physical presence" is not defined, leaving ordinary Texans unable to tell how close the ballot must be to make political speech a crime. The sweeping phrase "compensation or other benefit" then exacerbates the problem. The law defines "benefit" to mean "anything reasonably regarded as a gain or advantage." Tex. Elec. Code § 276.015(a)(1). That leaves Plaintiffs to guess whether various items that are commonly used to support political advocacy—such as food, t-shirts, or letters of recommendation—will be "regarded" as a gain or advantage sufficient to transform advocacy into a crime. To avoid liability,

Plaintiffs must self-censor core political speech so long as they know that a ballot is anywhere in the vicinity.

The knowledge requirement does not cure Section 7.04's vagueness problem. Knowledge that a ballot is in the vicinity does not tell a person whether it is close enough to trigger criminal liability. And knowledge that you have given or received something does not tell a person whether that constitutes a "benefit." As such, the law is unconstitutionally vague and violates the Due Process Clause of the Fourteenth Amendment.

**II.** Defendants relegate their jurisdictional arguments to the end of their briefs. Those arguments lack merit. The district court correctly determined that it had jurisdiction to enjoin the Attorney General and Secretary of State from enforcing Section 7.04. Notably, Defendants fail to challenge any of the factual findings that support the district court's determination.

**A.** The district court correctly found that Plaintiffs have standing to sue the Attorney General and Secretary of State. In First Amendment cases such as this one, a substantial threat of future enforcement is presumed absent compelling contrary evidence. Defendants have produced no compelling evidence to the contrary. Rather, the district court made detailed factual findings that both the Attorney General and Secretary of State have actively engaged in enforcing the canvassing restriction: the

Attorney General has actively pursued investigations and prosecutions of election-related crimes, including for "voting harvesting"; the Secretary of State has referred allegations of "vote harvesting" to the Office of the Attorney General ("OAG"); and county attorneys can also refer cases to the Attorney General for prosecution. *See* ROA.37520-23. The court also found that the threat of investigation and enforcement by Defendants has, in fact, chilled Plaintiffs' speech. ROA.37534, 37537. Plaintiffs challenge none of those findings. Standing requirements therefore are satisfied.

**B.** The district court also correctly found that the Attorney General and Secretary of State had the requisite connection to enforcement under *Ex parte Young*. The Election Code specifically tasks the Attorney General and Secretary of State with enforcing the Election Code, and the district court made factual findings of the Defendants' connection to actual enforcement, including via referring investigations for prosecution. Those findings distinguish all of the cases on which Defendants rely and satisfy the *Ex parte Young* requirements.

## ARGUMENT

## I. The Canvassing Restriction Violates The First And Fourteenth Amendments

### A. Strict Scrutiny Applies Because Section 7.04 Is A Content-Based And Speaker-Based Restriction On Core Political Speech

Defendants do not dispute that Section 7.04 is content-based. "Content-based laws—those that target speech based on its communicative content"—trigger strict scrutiny. *Reed*, 576 U.S. at 163 (2015). Content-based restrictions "single[] out specific subject matter for differential treatment." *Id.* at 169. Section 7.04 does just that: it criminalizes speech "for a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2); *see* Tex. Penal Code § 12.34. The law thus distinguishes between speech that is lawful and speech that is not based on its communicative content. That is a paradigmatic content-based restriction on speech.

Worse, the targeted content involves "core political speech" because it prohibits "interactive communication concerning political change." *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 186 (1999). A prohibition of speech "for or against any person or political party or position" is "obviously" a restriction on "political speech." *Burson*, 504 U.S. at 193, 196. After a lengthy trial, Defendants failed to identify "how a canvasser could engage in an 'in-person interaction' with a voter 'intend[ing] to deliver

votes for a specific candidate or measure' *without* engaging in core political speech." ROA.37554-55 (alteration in original).

"Laws that burden political speech are subject to strict scrutiny." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (citations omitted). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. State of La.*, 379 U.S. 64, 74-75 (1964). And a "law imposing criminal penalties on protected speech is a stark example of speech suppression." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002).

Worse still, the law is "directed at certain content and is aimed at particular speakers." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). Political speech in the presence of a ballot is made a crime if, but only if, the speaker receives "compensation or other benefit." Tex. Elec. Code § 276.015(b)-(c); *see* Tex. Penal Code § 12.34. Advocacy by employees, staff, or volunteers who receive any compensation or benefit is thus criminalized, but entirely uncompensated volunteer advocacy is not—with the definition of "benefit" left entirely unclear. *See infra* Section I.B.1.

That rule flouts the First Amendment. Door-to-door campaigning where canvassers encourage voters to vote for a specific candidate or measure is a key part of our democratic process. *See Buckley*, 525 U.S. at 186. That is true for paid campaigning as well. *Meyer*, 486 U.S. at 424 (striking

down law making it a felony to pay a person to circulate for signatures of voters for a ballot initiative). There is "no basis for the proposition that, in the context of political speech, the Government may impose restrictions on certain disfavored speakers." *Citizens United*, 558 U.S. at 341.

## B. Section 7.04 Fails Strict Scrutiny

### 1. Section 7.04 Sweeps In A Broad Range of Compensated Political Advocacy

Under strict scrutiny, laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. To determine whether the statute satisfies that demanding standard, it is important to first assess the statute's scope. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 724-25 (2024). It is undisputed that Section 7.04 is a content-based and speaker-based criminal law against compensated political advocacy in the physical presence of a ballot. The parties dispute, however, the scope of the "compensation" and "physical presence" requirements.

First, Defendants contend that "compensation" is limited to "wages" or "payment for work." State Defs.' Br. 19. But the ordinary meaning of "compensation" is broader, reaching "payment for value received or services rendered." *Compensation*, Webster's Third New International Dictionary (2002). Furthermore, the statute expressly reaches beyond compensation to a mere "benefit," defined as "anything reasonably regarded

as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person." Tex. Elec. Code § 276.015(a)(1). The term "including" is inclusive, not exclusive. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132-34 (2012). The statute thus unambiguously reaches beyond wages to include anything else that is "reasonably regarded as a gain or advantage," including (but not limited to) non-monetary benefits like "political favors" and "act[s] of discretion." Tex. Elec. Code § 276.015(a)(1).

At trial, Defendants utterly failed to provide evidence of clarity. Their own witness, the former chief of the OAG's Election Integrity Division, stated that "he would need to perform legal research" to determine whether the kinds of benefits that Plaintiffs give to their volunteer canvassers, including "a meal, bus fare, or a gift bag," would trigger Section 7.04. ROA.37525-26.

Section 7.04 thus reaches political advocacy for any kind of compensation, benefit, gain, or advantage, but not wholly volunteer advocacy without any such benefit—with an ill-defined line between the two. In any event, even if Section 7.04 could be limited to wages, that would merely reinforce the glaring problem that the law singles out compensated advocacy for disfavored treatment.

Second, Section 7.04 bans advocacy in the "physical presence" of a ballot, but "physical presence" is not defined. This Court accordingly must turn to its ordinary meaning. *Butler v. City of Big Springs,* 652 S.W.3d 149, 152 (Tex. 2022). "Physical" ordinarily means "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary." *Physical*, Webster's Third New International Dictionary. And "presence" ordinarily means "the fact or condition of being present: the state of being in one place and not elsewhere." *Presence*, Webster's Third New International Dictionary. The ballot thus must be actually present rather than a mere topic of discussion.

Defendants assert that the statute is limited to the "actual voting process," State Defs. Br. 32, *i.e.*, situations where "voters are engaged in (or could imminently engage in) the act of voting." Intv. Br. 2, 33-34. But "nothing in the text of the Canvassing Restriction even limits its application to interactions involving *live* ballots." ROA.37559. Section 7.04 applies to interactions "in the physical presence" of a ballot, without further requiring voting or imminence of voting. Second, the statute clarifies that the ban applies to interactions "in the presence of the ballot *or during the voting process*." Tex. Elec. Code § 276.015(e)(2) (emphasis added). The disjunctive "or" confirms that the communication need *not* be "during the voting process." *Id.*

Defendants similarly rely on the "direct[] involve[ment]" requirement to require "*interacting with the mail ballot—e.g.*, walking the voter through the ballot and urging them to select a certain candidate or a certain choice on a measure." Intv. Br. 35. But again, the statutory text unambiguously forecloses that reading. It requires "interactions conducted in-person with a voter"—that is, a person—not interactions "with a ballot."

Defendants assert that to be physically present, "the ballot has to be in front of both of you[,] you both have to know it's there[,] and you both have to be looking at it." State Defs. Br. 28 (quoting ROA.40425). But the physical presence of an object does not depend on whether the object is in front (rather than behind or beside) a person, or whether they are both looking at it. Otherwise, if two canvassers were in the same room as a voter and the voter's ballot but the canvassers were facing opposite directions, the ballot would be physically present as to one canvasser but not the other—even though they were standing in the same place. That is nonsensical. A ballot cannot be physically present and not physically present at the same place and time.

At trial, State Defendants' own witness from the Office of the Secretary of State refused to offer a specific distance or any concrete guidance about how canvassers should determine whether they are in the "physical presence" of a mail ballot. ROA.37526. But "whether or not a prosecutor

agrees with us," he conceded, "is a different story entirely." ROA.37526. State Defendants' witness also testified that the Secretary of State does not have an official opinion on whether a ballot being within five or ten feet of a discussion constitutes physical presence under Section 7.04. ROA.37526.

### 2. Section 7.04 Is Not Narrowly Tailored To Achieve A Compelling State Interest

A law is "narrowly tailored" if it "actually advances the state's [compelling] interest," "does not sweep too broadly," "does not leave significant influences bearing on the interest unregulated (is not underinclusive)," and "could be replaced by no other regulation that could advance the interest as well with less infringement of speech (is the least-restrictive alternative)." *Veterans of Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 440 (5th Cir. 2014) (citation omitted). The government must identify an "actual problem" in need of solving, *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822 (2000), and must prove that the curtailment of speech is actually "necessary" to the solution, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395-96 (1992). Governments can rarely satisfy that standard. Regardless of how Section 7.04 is construed, Defendants failed to satisfy it here.

a. Defendants argue the canvassing restriction "is narrowly tailored to prohibit electioneering while voters are engaged in (or could imminently

engage in) the act of voting." Intv. Br. 2; *accord* State Defs. Br. 35. But as set forth above, the statutory text unambiguously reaches beyond the act of voting; it reaches interactions "in the presence of the ballot *or* during the voting process." Tex. Elec. Code § 276.015(e)(2); s*ee supra* Section I.B.1. The law is accordingly not narrowly tailored to that interest.

b.    Defendants contend that Section 7.04 is meant to prevent "paid partisan canvassers" from "going door to door and pressuring voters to fill out their mail ballots in a particular way." Intv. Br. 26; *accord* State Defs. Br. 35. But Section 7.04 does not limit its prohibitions to "partisan" actors or "canvassers." Nor is it limited to "pressure"—beyond whatever persuasive force the in-person interaction might have on the listener. And the state lacks even a legitimate interest in barring political speech because it is persuasive. It is up to the people—not the State—to decide what speech to utter, what to listen to, and whether to believe it, including in-person, door-to-door speech. "The First Amendment protects" a paid advocate's "right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Meyer*, 486 U.S. at 424. Texans listening to speech also have simple remedies if they find the speech unpersuasive or distasteful: among others, they can respond with more speech, tell canvassers to leave, close their doors, or walk away. "If the First Amendment means anything, it means that regulating speech must

be a last—not first—resort." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002).

The law is also not narrowly tailored because it criminalizes speech for the entire election season, anywhere statewide a ballot is physically present. To assess whether a regulation "is narrowly tailored to protect the act of voting itself," a court must "account for every component of the restriction"—"size, conduct, *and* temporal scope." *Frank v. Lee*, 84 F.4th 1119, 1149-50 (10th Cir. 2023). For example, Texas's electioneering safeguards for in-person voting apply only in specific locations—within 100 feet of polling places—during the early voting period or during voting hours on election day. *See* Tex. Elec. Code §§ 61.003, 85.036. Indeed, in upholding buffer zones around in-person polling places on election day, the Supreme Court emphasized that walking the final 100 feet to a polling place takes a mere "15 seconds." *Burson*, 504 U.S. at 210.

By contrast, Section 7.04 is vastly broader—both geographically and temporally—than the law challenged in *Burson*. *See* State Defs. Br. 32. If a compensated advocate is "in the physical presence" of a ballot, be it in a private home, a community meeting, or a public park, Section 7.04 prohibits that speaker from advocating for "a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2). And the law prohibits speech at any time, including *30-45 days* before each election, after mail-in ballots are sent. *See*

Tex. Elec. Code § 86.004. Especially during that 45-day window, advocates risk criminal punishment for routine in-person political advocacy with voters anywhere in Texas whenever a mail ballot is present. *See* Tex. Elec. Code § 276.015(a)(2). And unlike the buffer in *Burson*, Section 7.04's coverage is not fixed in one well-defined place, but is roving: it moves around the state (and even into public gatherings and private homes) wherever a ballot happens to be, and it is unclear how far away from the ballot it extends.

c.    Section 7.04 further fails strict scrutiny because it is underinclusive. "[A] law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited[.]" *Reed*, 576 U.S. at 172 (citation omitted). Section 7.04 does just that by singling out only compensated advocates for disfavored treatment, while allowing entirely uncompensated advocates to engage in the same communications the law otherwise proscribes.

Intervenors argue that this distinction "makes perfect sense" because "people *paid* to deliver votes for a candidate or measure are more likely to apply pressure than those who are not." Intv. Br. 39-40. But this appeal arises after a trial, and the Intervenors cite no factual findings to support

their supposition. The opposite may be true. A volunteer who is a true believer in a candidate or measure may be just as likely—if not more so—to apply "pressure" in support their candidate or cause. *See, e.g.*, *Meyer*, 486 U.S. at 426 (rejecting assumption that "professional circulator[s]" are "any more likely to" commit fraud "than volunteer[s] … motivated entirely by an interest in having the proposition placed on the ballot"). Regardless, because strict scrutiny applies, Defendants and the Intervenors cannot rely on mere supposition. They need factual findings proving that the law is narrowly tailored. *See Reed*, 576 U.S. at 163. The district court found the opposite.

Defendants assert "the record shows that paid canvassers represent a more acute threat than volunteer activity." State Defs. Br. 37. But they identify no factual findings in support of that claim, and the evidence does not support it. First, Defendants cite testimony from a county clerk who testified that she believed "there is nothing wrong with doing whatever it takes so that every single voter in Texas feels good about walking into that poll." ROA.48589. That says nothing about paid canvassers who interact with mail voters. Second, Defendants point to testimony from an elections administrator that "paid deputy registrars would have an incentive to bring more registration forms to impress the organization they were working for." ROA.39616. But that testimony is about gathering registration

forms. *See* Tex. Elec. Code § 13.008(a) (criminalizing "compensat[ing] another person based on the number of voter registrations that the other person successfully facilitates"). It says nothing about advocacy for candidates or measures. Where "the State has not shown that paid [advocates] create a greater risk of fraud than volunteers," "[t]he challenged statute effectively thumbs its nose at both *Meyer* and *Buckley.*" *Dakotans for Health v. Noem*, 52 F.4th 381, 390 (8th Cir. 2022) (enjoining a statute requiring paid ballot petition circulators to make certain disclosures not applicable to volunteer circulators); *see Meyer*, 486 U.S. at 426 (refusing "absent evidence to the contrary" to "assume that a professional circulator … is any more likely to accept false signatures than a volunteer"); *Buckley*, 525 U.S. at 203-04 (same).

For example, Section 7.04 permits the brother of a mayoral candidate (while not compensated) to sit at a voter's kitchen table and vigorously advocate for his brother's candidacy while the voter is filling out her mail ballot. At the same time, Section 7.04 prohibits a compensated canvasser from urging support for a local bond measure to a voter in her doorway, when the mail ballot is nearby, even if the voter marks her ballot days later while sitting alone in her kitchen.

At bottom, "[t]he underinclusiveness of the Canvassing Restriction undermines the State Defendants' argument that it is narrowly tailored

to further a compelling government interest." ROA.37568; *see Reed*, 576 U.S. at 172 ("The Town cannot claim that placing strict limits on temporary directional signs is necessary to beautify the Town while at the same time allowing unlimited numbers of other types of signs that create the same problem."); *Veterans of Foreign Wars*, 760 F.3d at 441 (concluding that the "obvious underinclusiveness" of the law undermines any argument that Texas is truly interested in regulating gambling).

d.    Section 7.04 is also not "'necessary' to serve the government's interests" because "preexisting provisions" of the Election Code already criminalize "the very conduct purportedly regulated" by the restriction, including fraud, coercion, or intimidation in the voting process. ROA.37563 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992)). Separate and unchallenged provisions of Texas law already make it a crime to engage in "any effort to … influence the independent exercise of the vote of another in the presence of the ballot or during the voting process, including by altering the ballot of another or by otherwise causing a ballot to not reflect the intent of the voter." Tex. Elec. Code § 276.013(a). Similarly, a person is already subject to freestanding criminal liability if she "marks or attempts to mark any portion of another person's ballot without the consent of that person." *Id.* § 64.012(a)(4). Other laws also cover what is ordi-

narily understood as compensated "vote harvesting": to "compensate[] another person for depositing" mail-ballot carrier envelopes "in the mail" as part of a "performance-based compensation scheme." *Id.* § 86.0052(a); *see also* ROA.42431 (former chief of the OAG's Election Integrity Division testifying that "[m]ost of the key activities that comprise vote harvesting were prohibited under the Election Code before SB 1"). Those provisions remain fully in force.

In view of these criminal provisions that already advance the asserted governmental interests and are actually tailored to them, the district court correctly found that Section 7.04's duplicative—and far broader and ill-fitting—prohibition is not necessary to advancing those same interests. *See, e.g.*, *McCullen v. Coakley*, 573 U.S. 464, 490-92 (2014) (statute was not narrowly tailored because the purported interest it served was already "addressed through existing local ordinances"); *Veterans of Foreign Wars*, 760 F.3d at 441 (similar).

In addition, Section 7.04 is also not narrowly tailored to the State's asserted interests because it "could be replaced" by another "regulation that could advance the interest … with less infringement of speech." *Veterans of Foreign Wars*, 760 F.3d at 440-41. The district court correctly found that "[r]ather than prohibiting protected expression—'intended[] to deliver votes for a specific candidate or measure'—the legislature could

have crafted language specifically targeting speech that is 'intended to defraud, confuse, unduly influence or deceive.'" ROA.37564. "Likewise, rather than restricting speech whenever a ballot is merely 'present,' the restriction at issue easily could have been limited to instances when a voter is actively completing their ballot." ROA.37564. And the legislature could have passed a law that did not single out compensated advocacy.

Put differently, the State could have enacted a content- and speaker-neutral time, place, and manner restriction to protect its interests regarding the act of mail-in voting. Such a law would not trigger strict scrutiny and could well pass muster. But Section 7.04 is fundamentally different. It is expressly content-based and speaker-based, it is under-and over-inclusive, its scope is ill-defined and roving, and it is needlessly duplicative. It is therefore unconstitutional.

Defendants assert that Section 276.013, one of the preexisting provisions of the Election Code, "criminalizes different conduct than the paid-vote-harvesting ban, which covers certain efforts to influence a voting decision rather than the exercise of the vote itself." State Defs. Br. 38. But the problem is that Section 7.04 reaches far beyond fraudulent or coercive interactions in the presence of a ballot to reach *any* compensated political speech in the presence of a ballot. Section 7.04 thus unnecessarily criminalizes core political speech.

Intervenors contend that Section 7.04 plugs a gap in preexisting election law because it applies "*regardless* of whether such interactions succeed in influencing the voter or overcome the voter's 'independent exercise' of the franchise." Intv. Br. 32-33. But there is no such gap because the other preexisting law, Section 276.013, already covers attempt: it applies to "any *effort* to … influence the independent exercise of the vote of another in the presence of the ballot or during the voting process." Tex. Elec. Code § 276.013(a) (emphasis added); *see also* Tex. Penal Code § 15.01 (general criminal attempt statute). In any event, Section 7.04 cannot be justified as a provision to bar attempted fraud or coercion because it does not mention attempt, fraud, or coercion, and is not remotely tailored to those interests.

### 3. *Burson* Confirms Section 7.04 Is Unconstitutional

Defendants' reliance on *Burson*, which upheld a law prohibiting solicitation of votes within 100 feet of the entrance to a polling place, is misplaced. *See* Defs. Br. 31-33. *Burson* was a "rare" case where a law satisfied strict scrutiny because the limitation was well-defined, narrow, and grounded in a "long history, a substantial consensus, and simple common sense." 504 U.S. at 202-11. This is not such a "rare" case. Indeed, *Burson* provides a striking contrast that confirms Section 7.04 fails strict scrutiny because it is neither narrowly tailored nor grounded in tradition.

First, unlike the buffer zones in *Burson*, Section 7.04 "effectively converts the entirety of Texas into a polling place where conversations about candidates can create criminal liability." ROA.37565. The buffer in *Burson* was fixed in a well-defined space, only 100 feet wide, and could be crossed in "15 seconds." *Burson*, 504 U.S. at 210. By contrast, Section 7.04's reach is constantly moving around the state, reaching any place—including community meetings and private homes—where a mail ballot is physically present. And whereas the *Burson* buffer zones only applied on election day, Section 7.04 applies during the entire election season, so long as a mail-in ballot is present, and without regard to whether the voter is going to mark her ballot in the near future (or vote at all).

Second, there is no American tradition of criminalizing paid political advocacy in such myriad and moving contexts. Our tradition is protecting "discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes." *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966). And speaking at community gatherings, talking to voters at public events, and door-to-door campaigning have been "common practice" "[f]or centuries" and "accepted techniques for seeking popular support." *Martin v. City of Struthers*, 319 U.S. 141, 141, 146 (1943).

Defendants concede that "there is not the same historical record of chaos and voter intimidation with mail ballots as with in-person voting." State Defs. Br. 34. Defendants chalk this up to "mail ballots [being] a far more recent phenomenon." *Id.* But the district court addressed this argument and rejected it on the facts: "[i]n-person voters are essentially captives to the circumstances of their polling locations from the moment they get in line until they receive their 'I voted' sticker." ROA.37566. By contrast, mail ballots offer voters the flexibility to vote when and where they want. "Because of the flexibility that voting by mail provides, mail voters who encounter unwelcome canvassing activities can simply put their ballots away and vote some other time." ROA.37566. Defendants overlook that commonsense distinction.

Third, and even worse, Section 7.04 is unlike *Burson* because it applies only to compensated canvassing, and not purely volunteer canvassing. *Burson* provides no support for such selective censorship of core political speech. *See supra* Section I.B.2.

Indeed, even if some kind of lesser scrutiny applied, Section 7.04 would still be unconstitutional because it is so poorly tailored. Even under rational basis review, "the State must draw a reasonable line." *Minn. Voters All v. Mansky*, 585 U.S. 1, 16 (2018). It must "be able to articulate some sensible basis for distinguishing what may come in from what must stay

out." *Id.* Section 7.04 fails that test. To the extent Section 7.04 serves any of the legitimate interests asserted, that reach is already covered by other existing criminal laws, and the State fails to articulate *any* legitimate basis for criminalizing only paid canvassing.

Intervenors argue that Texas has a "valid interest" in prohibiting paid canvassing in the presence of a ballot because "[e]ven if voters are not actually bribed or coerced, they may simply fill out the ballot as the canvasser desires to bring an annoying interaction to an end." Intv. Br. 26. An interest in suppressing political speech on the ground that it is "annoying," *id.*, "is very much related to the suppression of free expression, and it is not valid, let alone substantial." *Moody*, 603 U.S. at 740. "On the spectrum of dangers to free expression, there are few greater than allowing the government to change the speech of private actors in order to achieve its own conception of speech nirvana." *Id.* at 741-42.

Moreover, Section 7.04 prohibits political speech in a variety of other situations where the voter invites or welcomes the interaction: for example, where the voter *in their own home* requests assistance filling out the ballot, where a voter brings a mail ballot to a community forum, or even where a canvasser uses their own ballot to show where a voter must provide a required identification number on the mail ballot envelope. Section

7.04's prohibition applies in numerous routine and ordinary interactions that fall squarely within First Amendment protected speech.

### 4. Defendants' Arguments For Lesser Scrutiny Fail

a. Defendants concede that "strict scrutiny typically applies to content-based restrictions on speech," but argue that "different rules apply in the election context" and urge this Court to apply the "*Anderson-Burdick* test." State Defs. Br. 29-30; *see* Intv. Br. 21-23. The district court correctly rejected that unsupported argument, which has no limiting principle and would eviscerate First Amendment protections for political speech.

As the district court explained, "it would defy logic to subject a content-based restriction of core political speech to *lesser* scrutiny because it happens to regulate speech during elections, when 'the importance of First Amendment protections' is at its 'zenith.'" ROA.37553-54 (quoting *Meyer*, 486 U.S. at 425). Indeed, Defendants' own analogy to *Burson* is fatal to their argument: the Supreme Court applied *strict scrutiny* to the buffer zone around an in-person polling place because it was content-based—without even addressing the *Anderson-Burdick* framework. *Burson*, 504 U.S. at 198.

Indeed, multiple Supreme Court cases foreclose Defendant's argument. Among others, *Citizens United* involved paid advocacy in the election context, namely, in the "crucial phase" of 60 days before an election.

558 U.S. at 337. *Reed* involved restrictions on "political signs," defined as signs "designed to influence the outcome of an election," which could only be displayed between 60 days before to 15 days after an election. 576 U.S. at 160. In both, the Supreme Court applied strict scrutiny because the laws were content-based and invalidated the laws under the First Amendment. *See also, e.g.*, *Meyer*, 486 U.S. at 420 (applying strict scrutiny to a ban on paying proponents of a ballot initiative).

*McIntyre*, on which the Defendants rely, confirms that *Anderson-Burdick* is inapplicable. In *McIntyre*, the state invoked *Anderson-Burdick* to defend a ban on anonymous campaign leaflets and sought to justify the laws as "election code provisions." 514 U.S. at 344-45. The Supreme Court squarely rejected the argument. It explained that *Anderson-Burdick* did not apply because the ban was a "direct regulation of the content of speech"; indeed, "the category of covered documents [was] defined by their content." *Id.* at 345. The Court accordingly found that the ban was not an "ordinary election restriction" but instead a "limitation on political expression subject to exacting scrutiny." *Id.* at 345-46 (citation omitted).

So too here. This is no ordinary election restriction. It is a direct regulation of the content of speech (advocating for a particular candidate or measure) targeted at a particular class of speaker (compensated rather than uncompensated advocates).

Defendants take language out of context from *Voting for America, Inc. v. Steen* to assert that lesser scrutiny applies to any "state election rule" that "directly restricts or otherwise burdens an individual's First Amendment rights." Intv. Br. 21 (quoting *Voting for Am. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013)); *see also* State Defs. Br. 30-31. But the sentences immediately prior foreclose Defendants' position: the Court explained that, when States "regulate the conduct of voting," such regulations "invariably affect 'the individual's right to vote and his right to associate with others for political ends.'" *Voting for Am.*, 732 F.3d at 387 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). The Court thus was addressing laws regulating the "conduct of voting" which affect the right to vote and associate—not content-based and speaker-based laws that directly make political speech a crime.

Indeed, *Voting for America* recognized that strict scrutiny applied to "laws that specifically regulate[] the process of advocacy itself, dictating who could speak (only unpaid circulators and registered voters) or how to go about speaking (with name badges and subsequent detailed reports)." *Id.* at 390. The same holds here. Section 7.04 dictates who can speak (only individuals who receive no compensation or benefit), on what topics they may speak (not in support of candidates or measures), and how to go about speaking (outside the physical presence of a mail-in ballot).

In any event, even under *Anderson-Burdick*, election laws that impose "severe" burdens on First and Fourteenth Amendment rights trigger strict scrutiny. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). And a law that makes core political speech a felony, only if spoken by a disfavored class of speakers, "plainly impose[s] a 'severe burden.'" *Buckley*, 525 U.S. at 207-08 (Thomas, J., concurring). Moreover, the district court found, as a fact, that Section 7.04 restricted Plaintiffs' speech and chilled their in-person communications with voters. ROA.37527-30. Section 7.04 thus would trigger strict scrutiny even if *Anderson-Burdick* applied.

b.    Intervenors argue that Section 7.04 is a "permissible time, place, and manner restriction." Intv. Br. 24. But they assert merely that Section 7.04 is "viewpoint-neutral," without disputing that it is content-based. *See id.*[3] It is well-settled that the time, place, and manner doctrine requires laws to be content-neutral: Where the ability of individuals to "exercise their free speech rights near polling places depends entirely on whether the speech is related to a political campaign," the applicable law "is not a facially content-neutral time, place, or manner restriction." *Burson*, 504

_____

[3] It is unclear whether Section 7.04 is "viewpoint-neutral." Although the ban on "vote harvesting" prohibits speech "for" but not against "a specific candidate or measure"—suggesting the law is viewpoint-based—a separate subsection later states that the statute "does not apply" to activities "not designed to deliver votes for *or against* a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2), (e)(5) (emphasis added).

U.S. at 197; *see also id.* at 216 (Scalia, J., concurring in judgment) ("the 'time, place, and manner' doctrine … does not permit restrictions that are not content neutral").[4] Section 7.04 depends on whether the communication is "intended to deliver votes for a specific candidate or measure." Tex. Elec. Code § 276.015(a)(2). Thus, as in *Burson*, strict scrutiny applies.

Intervenors also assert that Texas is "regulating non-public fora" by "protect[ing] the mail-voting process on equal terms with the in-person voting process." Intv. Br. 25. But forum analysis does not help Intervenors. Unlike in *Mansky*, the ban does not "appl[y] only in a specific location" that is a "nonpublic forum," there "the interior of a polling place." 585 U.S. at 2. Rather, it applies *anywhere* in the state a compensated canvasser is "in the physical presence of an official ballot," Tex. Elec. Code § 276.015(a)(2), wherever that happens to be.

As the district court explained, "[i]n weeks before an election, public parks and streets will vacillate from moment to moment between being traditional public forums and non-public forums designated for voting depending on whether a voter happens to be carrying or … casting a mail ballot on the premises." ROA.37565. Interactions in the presence of a ballot may occur in a variety of contexts that are obviously not nonpublic

---

[4] Section 7.04 accordingly would also trigger and fail strict scrutiny under Justice Scalia's *Burson* concurrence.

fora—for example, when a voter brings her mail ballot to a town hall meeting, when a voter turnout organizer uses her own ballot to explain the mail voting process, or when a voter converses with a compensated canvasser who knocks on her door while the mail ballot is nearby sealed in its envelope. Forum analysis has never been used to create such a roving "force field" against a certain kind of speech—much less a force field that selectively excludes only a particular disfavored speaker and intrudes into people's homes. Rather, like any other content-based and speaker-based restriction on speech, Section 7.04 is subject to strict scrutiny.

### 5. Section 7.04 Is Unconstitutional As Applied And On Its Face

A statute is facially unconstitutional when it "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *Moody*, 603 U.S. at 723 (citation omitted). The district court correctly found that "the Canvassing Restriction is unconstitutional in most of its applications, judged in relation to its legitimate applications to voter fraud or coercion." ROA.37569.

Section 7.04 is unconstitutional in all or virtually all of its applications because, as set forth above, it is a content-based and speaker-based restriction on speech that carries criminal penalties, and the law is not narrowly tailored to serve any compelling governmental interest. Rather, it is both overbroad and underinclusive to the state's asserted interests, and is

not necessary to advancing any compelling interest because preexisting laws already advance the State's interests.

Defendants emphasize that the State has compelling interests in preventing fraud or coercion during the act of voting, and that Section 7.04 applies in those circumstances. Intv. Br. 19-21; State Defs. Br. 34-35. But that is no answer to the constitutional problem. That merely establishes that Texas could have enacted narrowly tailored laws to target those ills—indeed, it already has. But Section 7.04 is unconstitutional even as applied in those circumstances because it is not narrowly tailored to them. It sweeps far more broadly, is not necessary to advancing the State's legitimate interests because Texas already has other laws on the books that do just that, and it is markedly underinclusive in singling out paid advocacy for disfavored treatment. *See supra* Section I.B.2. Section 7.04 is thus unconstitutional in all or virtually all of its applications.

Responding to the district court's as-applied finding, Defendants argue that "Plaintiffs have offered nothing more than farfetched hypothetical examples of potentially chilled speech." State Defs. Br. 39. That is false. Plaintiffs presented extensive evidence showing that they were chilled from engaging in core political speech because of fear of prosecution. ROA.37527-30; *see also Noem*, 52 F.4th at 391 ("First Amendment freedoms need breathing space to survive.").

For example, Ms. Chavez Camacho testified that LUPE staff members can no longer conduct in-person advocacy to promote ballot measures or engage in get-out-the-vote efforts. ROA.38601-02. LUPE staff members worry that "they will end up in jail" if they "are advocating for a ballot measure in the presence of a ballot by mail." ROA.38601-02; *see also* ROA.37528 ("LUPE planned to advocate on a number of measures in the November 2023 Constitutional Amendment election but trained its staff not to advocate on the ballot measures in the presence of a mail ballot."). Similarly, members of the Mexican American Bar Association of Texas "are no longer willing to provide voting assistance because members fear that they might inadvertently commit a crime, potentially costing them their law licenses." ROA.37529; *see also* ROA.37528 (finding that "OCA has stopped hosting in-person events" and "candidate forums" where "members have historically brought mail-in ballots and received voting assistance" because of the "threat of criminal sanctions"). Those are not "farfetched" or "hypothetical" examples. They are concrete evidence of actual chill adduced at trial.

Defendants' attacks on the district court's specific examples also miss the mark. *See* Intv. Br. 34-36. For instance, the district court found that "[t]he text of the Canvassing Restriction reaches organizers who provide voter assistance at a voter's request." ROA.37558. In response, Defendants

claim that "[n]o one who complies with the voter-assistance laws will ever violate Section 7.04." Intv. Br. 34-35. But consider a paid canvasser who urges a voter to support a ballot measure. If that voter then asks the canvasser to assist with filling out the ballot, the canvasser must decline or risk felony punishment for engaging in an "in-person interaction" in the physical presence of a mail ballot with the intent to "deliver votes for a specific … measure." Tex. Elec. Code § 276.015(a)(2). The district court found that, "[w]hile canvassing neighborhoods in support of ballot measures, LUPE organizers have been invited into voters' homes and asked for assistance with voters' mail-in ballots." ROA.37518; *see also* ROA. 38597 (LUPE testifying that, if asked, they would "go [to a voter's] home and help them fill out their ballot by mail," but no longer provide this assistance for fear of prosecution).[5]

Defendants argue "it is hard to imagine canvassers will confront many situations in which mail ballots happen to be sitting out in plain view." Intv. Br. 35. Not so. The district court emphasized that Section 7.04 may prohibit speech when canvassers "speak to a voter about a candidate while the voter's mail ballot lies nearby on the entryway table."

---

[5] Similarly, communications designed to increase turnout among voters who are likely to vote for an organization's preferred candidate or measure are arguably "designed to deliver votes for the candidate or measure." ROA.37558.

ROA.37573. Paid canvassers knock on many doors in Texas each day during election season, and many voters leave mail on their entryway tables as they enter their homes. Further, the district court found that Plaintiffs' "members have historically brought their ballots to candidate forums, town hall meetings, and other in-person events at community centers, union halls, and people's homes." ROA.37526. There is no basis for concluding the district court's findings are clearly erroneous.

Intervenors argue that Texas's courts must be given a chance to 'implement [Section 7.04] in a manner consistent with the constitution.'" Intv. Br. 47 (citation omitted). But it is well-established that a plaintiff need not wait for an actual arrest or prosecution to challenge a law that chills their First Amendment rights. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-161 (2014) (collecting cases).

Intervenors also argue that this Court should "adopt a narrowing construction that preserves the statute's constitutionality." Intv. Br. 47. But "[t]he canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). There is no such ambiguity as to the critical elements of the statute that make it unconstitutional.

As set forth above, the text unambiguously forecloses a reading that would limit the statute to interactions "during the voting process." *See supra* Section I.B.1. But even if Section 7.04 could be limited to interactions during the voting process, it would still be unconstitutional in all or virtually all of its applications. It still would not be a reasonable and content-neutral time, place, or manner rule. Rather, it would still be a content-based criminal law that punishes speech only on a particular topic (for a candidate or measure) from a particular speaker (compensated individuals). And the restriction would still be unnecessarily duplicative because the state already has other laws that prohibit fraud or coercion during the voting process. *See supra* Section I.B.2. Defendants' various narrowing constructions thus are not only foreclosed by the text, but also fail to solve the core constitutional problem at the heart of the statute.

## C. Section 7.04 Is Unconstitutionally Vague

Section 7.04's tailoring and overbreadth problems are exacerbated by its unconstitutional vagueness. Ordinarily, "[a] law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *McClelland*, 63 F.4th at 1013. A "more stringent" vagueness standard applies to laws that regulate speech. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455

U.S. 489, 499 (1982); *accord Roarke & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008). Lack of notice "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997); *accord F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 254 (2012). While "perfect clarity" is not required, *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), "government may regulate in the area" of First Amendment freedoms "only with narrow specificity," *NAACP v. Button*, 371 U.S. 415, 433 (1963). The specificity requirement is most demanding for laws—like Section 7.04—carrying criminal penalties. *See Vill. of Hoffman Ests.*, 455 U.S. at 498-99; *cf. Citizens United*, 558 U.S. at 337.

The vagueness doctrine "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018); *accord Hiett v. United States*, 415 F.2d 664, 670 (5th Cir. 1969) ("vague statutes … furnish insufficient checks on Government discretion").

### 1. Section 7.04 Is Vague

Section 7.04 fails the requirement for "narrow specificity" because two key phrases are vague and amorphous: (1) "physical presence" and (2) "compensation or other benefit." Tex. Elec. Code § 276.015(a)-(c).

First, and as the district court explained, the term "physical presence" leaves ordinary people to guess how close to the ballot they need to be. ROA.37573-75; *see also supra* Section I.B.1. In a voter's hands? Within arm's reach? In the same room? Same building? What about when the voter is outdoors? Is closeness measured to the voter or the speaker? Plaintiffs cannot tell how nearby a ballot must be to create criminal liability. And as a result, they are left with no choice but to self-censor core political speech—as the district court found they already have. *See* ROA.37574.

At trial, the State Defendants pointedly failed to offer concrete guidance about how someone could know whether they are in the "physical presence" of a ballot and thus how to comply with the law. *See* ROA.37574 (noting Mr. Ingram's testimony admitting he did not have "an official opinion whether a ballot being within five or ten feet of a discussion constitutes physical presence"). That stands in stark contrast to the buffer zone in *Burson*, which was exactly 100 feet from the entrance of a polling place. *See Burson*, 504 U.S. at 193, 211.

Second, the phrase "compensation or other benefit" is broad and vague. As explained above, the sweeping definition of "benefit" reaches anything even "reasonably regarded as a gain or advantage," including intangible benefits like "political favor[s]." Tex. Elec. Code § 276.015(a)(1);

*see supra* Section I.B.1. That definition leaves people to guess what benefits will cross the line. Wages and employment benefits plainly do—but what about everyday benefits like providing volunteers with food, t-shirts, or letters of recommendation? Or other kinds of intangible benefits akin to favors? As with "physical presence," the ordinary person is left to "guess at its meaning." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). Notably, State Defendants' witness testified that he would need to perform legal research to determine whether the kinds of economic benefits Plaintiffs give to their volunteer canvassers, including meals, bus fares, or gift bags, constitute compensation under Section 7.04. ROA.37525-26. Defendants thus failed to articulate any clear rule of what kinds of benefits are not even "reasonably regarded" as providing "gain or advantage."

The knowledge requirement does not cure Section 7.04's vagueness problem. "[A] scienter requirement may mitigate a law's vagueness." *Vill. of Hoffman Ests.*, 455 U.S. at 499. But a scienter requirement does not automatically save a law from a vagueness challenge. *See League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 947-48 (11th Cir. 2023) (rejecting the argument that a state court interpreting the law would impose a *mens rea* requirement as a means of saving a law from vagueness, and explaining that "the promise of due process later on does not obliterate the vagueness doctrine altogether").

Here, a person's knowledge that a ballot is in the vicinity does not tell them whether political speech has become a crime. They will not know how close the ballot needs to be to fall within the statute's scope, and in particular how close it needs to be to trigger a potential prosecution. A person also may knowingly give or receive something beneficial, such as a t-shirt or a meal, but that does not clarify whether or not they could be committing an offense because they will not know whether it qualifies as a "benefit" triggering Section 7.04's criminal penalties.

Section 7.04's indefinite scope in turn invites arbitrary and discriminatory enforcement. The risk is particularly great because the law targets political canvassing, creating a perverse incentive to bring targeted enforcement actions to prevent political canvasing and get-out-the-vote efforts by perceived political opponents. Indeed, several Texas counties have an elected criminal district attorney, making the risk particularly acute. *See* Tex. Gov't Code § 44.001. Section 7.04 thus casts a pall on protected speech, as the record amply demonstrates, *e.g.*, ROA.37527-30, and violates the Due Process Clause of the Fourteenth Amendment.

## 2. Plaintiffs' Void-For-Vagueness Challenge Is Ripe For Review

Intervenors argue that Plaintiffs' "pre-enforcement facial challenges are premature." Intv. Br. 44. But Section 7.04 is the proper subject of a pre-enforcement facial challenge because "[t]he question is not whether

discriminatory enforcement occurred [in the case] … but whether [the statute] is so imprecise that discriminatory enforcement is a real possibility." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1051 (1991).

A pre-enforcement facial challenge on vagueness grounds is proper, where, as here, regulated parties must decide whether to forego engaging in lawful conduct aimed at protecting fundamental constitutional rights or risk prosecution. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 15, (2010) (preenforcement review of a criminal statute is justiciable where plaintiffs "face a credible threat of prosecution and should not be required to await and undergo criminal prosecution as the sole means of seeking relief" (internal quotation marks omitted)); *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (affirming plaintiffs can maintain facial vagueness challenges if the law "reaches a substantial amount of constitutionally conduct protected by the First Amendment"). A chilling of speech because of the mere existence of a vague law is sufficient, particularly in the highly sensitive area of political speech.

"[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), *as revised*

(Oct. 30, 2020). Defendants failed to present evidence—let alone compelling evidence—rebutting the fact that Plaintiffs face a credible threat of prosecution. To the contrary, the district court made factual findings that the "State Defendants" have "authority to enforce the Canvassing Restriction under Texas law" and have demonstrated their "willingness to do so." ROA.37544-48. Texas's history of enforcement of its pre-existing prohibitions on mail ballot interference further supports the credible threat of enforcement of Section 7.04. ROA.67535 (listing dozens of "vote harvesting" prosecutions by the Texas Attorney General and local district attorneys); *see 303 Creative LLC v. Elenis*, 600 U.S. 570, 581-82 (2023) (citing "past enforcement actions" under the same law as evidence of a credible threat of enforcement).

The district court further found, based on extensive evidence, that Plaintiffs "have self-censored speech that is 'arguably regulated by' the Canvassing Restrictions" because of this threat of enforcement. ROA.37543-44. Defendants do not challenge those findings as clearly erroneous. Thus, a pre-enforcement challenge was ripe.

## II.  The District Court Has Jurisdiction To Hear This Case

Defendants raise a jurisdictional argument at the end of their brief. It lacks merit. Federal courts must determine threshold jurisdictional issues, such as standing and sovereign immunity, before addressing the

merits. *See Hollingsworth v. Perry*, 570 U.S. 693, 704-05 (2013); *Book People, Inc. v. Wong*, 91 F.4th 318, 336 (5th Cir. 2024). The district court correctly held that Plaintiffs have standing and that "Plaintiffs' claims fall within the *Ex Parte Young* exception to sovereign immunity." ROA.37530-48.

### A. Plaintiffs Have Standing To Enjoin Defendants

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements. So in those cases, standing is usually easy to establish." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024).

Plaintiffs established standing. The district court correctly found that "Plaintiffs and their members are directly regulated by the Canvassing Restriction and have chilled their speech due to a credible threat of enforcement by the State Defendants and the County DAs." ROA.37537. The court further found that "[a]n order enjoining enforcement of the Canvassing Restriction would remove the chill from their protected speech." ROA.37537. Accordingly, standing is satisfied.

The State Defendants argue that Plaintiffs' fear of prosecution is "wholly speculative" and that Plaintiffs cannot show the State Defendants' enforcement of S.B.1 is "chilling" their speech. State Defs. Br. 47. But "in the speech context, [the Court] may *assume* a substantial threat of future enforcement absent compelling contrary evidence." *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024). And in a multi-week trial, Defendants failed to present evidence—let alone compelling evidence—that Plaintiffs do not face a credible threat of enforcement by Defendants.

To the contrary, the district court made factual findings that the Attorney General "has demonstrated a willingness to enforce the Canvassing Restriction"; the Secretary "has received allegations related to mail ballot 'vote harvesting'" that she has referred to the OAG for investigation; and Plaintiffs' injuries are traceable to the Attorney General's role in investigating and prosecuting election crimes (including for "vote harvesting"), and traceable to the Secretary's role in reviewing complaints about potential violations of election laws (including "vote harvesting") and duty to refer cases to the Attorney General. ROA.37520, 37523, 37547. The court further found, based on extensive evidence, that this threat of enforcement

had chilled Plaintiffs' speech and prevented them from engaging in canvassing. ROA.37542. Defendants do not assert that those findings are clearly erroneous, nor could they. Plaintiffs have standing.

## B. The Attorney General And Secretary Of State Are Not Entitled To Sovereign Immunity

The Attorney General and Secretary of State, as state officials tasked with enforcing and effectuating Section 7.04, are not entitled to sovereign immunity from this suit. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908). "To be a proper defendant under *Ex parte Young*, a state official 'must have some connection with the enforcement of' the law being challenged." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. at 157). Just as the district court correctly held Plaintiffs have standing to sue the Attorney General and Secretary of State, it correctly found those same officials fit within this exception to sovereign immunity. Both officials are "statutorily tasked with enforcing the challenged law" and engage in at least a "scintilla of 'enforcement.'" *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020).

First, the district court found the Attorney General "has demonstrated a willingness to enforce the Canvassing Restriction, and has actually enforced, the Election Code, including S.B. 1." ROA.37520. Indeed, the

Election Code dictates that the Attorney General "shall investigate" allegations of election crimes in elections covering more than one county. Tex. Elec. Code § 273.001(a).

Second, the district court made factual findings that the OAG's Election Integrity Division investigates and participates in prosecutions of election-related allegations, and that "'vote harvesting' schemes … remain among the three most common elections-related allegations that the OAG pursues." ROA.37521. The OAG confirmed it has investigated an alleged violation of Section 7.04. ROA.37521. Although the Attorney General cannot unilaterally initiate prosecution of election crimes, *see State v. Stephens*, 663 S.W.3d 45, 55 (Tex. Crim. App. 2021), the district court found that the OAG continues to "refer[]" election-related "cases to local prosecuting attorneys and often seeks opportunities to partner with DAs to prosecute such allegations." ROA.37521 (citation omitted). Defendants do not challenge any of those factual findings. Investigating "vote harvesting" crimes, referring them for prosecution, and partnering with local prosecutors to prosecute them is a connection to enforcement and more than a scintilla of enforcement.

Defendants argue the Attorney General "lacks the necessary enforcement connection" because he "'cannot initiate the prosecution' of an elec-

tion law 'unilaterally'" following *State v. Stephens*. State Defs. Br. 42 (quoting *Stephens*, 663 S.W.3d at 55). But *Stephens* did not hold that the Attorney General can *never* enforce election laws in Texas. The Attorney General may still prosecute election crimes, including Section 7.04, by invitation, consent, or request of a county or district attorney. *Stephens*, 663 S.W.3d at 56.

Defendants also incorrectly assert that *Ogg* established a categorical rule that "'investigations' are not 'enforcement.'" State Defs. Br. 42-43 (quoting *Ogg*, 105 F.4th at 331). *Ogg* concerned only whether statutory power to investigate *alone* is sufficient where the official has promised not to enforce the challenged law. *Ogg*, 105 F.4th at 331. Here, the Attorney General has never promised he will refrain from enforcing Section 7.04, and he has done far more than merely investigate "vote harvesting" allegations. The Attorney General has actively referred cases to local prosecutors and partnered with them to prosecute election crimes, even after *Stephens*. *See* ROA.37520-22 (cataloguing evidence).

Defendants' reliance on *Ostrewich v. Tatum*, 72 F.4th 94 (5th Cir. 2023), is similarly misplaced. In *Ostrewich*, the state defendants were entitled to sovereign immunity because enforcement of the challenged statute was "exclusively entrusted" to presiding election judges, and there was

no evidence the state defendants were pursuing investigations or prosecutions of the statute at issue. *Id.* at 100-01 Here, the Attorney General has already investigated violations of Section 7.04, referred election-related crimes to local prosecutors, and participated in prosecutions in collaboration with local prosecutors. *See* ROA.37520-22.

Second, the district court found the Secretary of State "routinely collaborates with the OAG to enforce election laws in accordance with her mandatory duties under the Election Code." ROA.37522. The Code requires her to "evaluate information she 'receiv[es] or discover[s]' about potential election crimes and, if she 'determines that there is probable cause to suspect that criminal conduct occurred, the [S]ecretary shall promptly refer the information to the attorney general' and provide all pertinent documents and information in [her] possession." ROA.37522 (quoting Tex. Elec. Code § 31.006). The court also found "[t]he Secretary has received allegations related to mail ballot 'vote harvesting,' which she has referred to the OAG." ROA.37523. The Secretary is "a gathering point for election complaints" and thereby plays a central role in prosecuting "vote harvesting" offenses. ROA.37522. Again, Defendants do not challenge these factual findings, which establish that *Ex parte Young* applies.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order permanently enjoining Section 7.04.

Respectfully submitted,

*/s/ Nina Perales*

Nina Perales
Fátima L. Menéndez
Julia R. Longoria
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATION FUND
110 Broadway, Suite 300
San Antonio, TX 78205
(210) 224-5476
nperales@maldef.org

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, NY 10004
(212) 589-8000

*Counsel for La Unión del Pueblo
Entero; Southwest Voter
Registration Education Project;
Mexican American Bar
Association of Texas; Texas
Hispanics Organized for Political
Action; JOLT Action; William C.
Velasquez Institute; FIEL
Houston, Incorporated*

*/s/ Zachary D. Tripp*

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

Aaron J. Curtis
Charles Gehnrich
Natalie Howard
Augustus Ipsen
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8901

Leah J. Tulin
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
1140 Connecticut Avenue NW,
Suite 1150
Washington, DC 20036
(202) 650-6397

Sean Morales-Doyle
Jasleen K. Singh
Patrick A. Berry
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(212) 463-7308

*Counsel for Friendship-West
Baptist Church; Texas Impact;
James Lewin*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/ Zachary D. Tripp*

Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

February 21, 2025

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies pursuant to Fed. R. App. P. 32(g) that the Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f), this document contains 12,991 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this document has been prepared in a proportionally spaced type-face using Century Schoolbook font in 14 point size.

*/s/ Zachary D. Tripp*
Zachary D. Tripp
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7220
zack.tripp@weil.com

February 21, 2025