No. 24-50783

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

LA UNIÓN DEL PUEBLO ENTERO; SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS; TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION; JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; FIEL HOUSTON, INCORPORATED; FRIENDSHIP-WEST BAPTIST CHURCH; TEXAS IMPACT; JAMES LEWIN,

*Plaintiffs-Appellees*,

*v.*

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; WARREN K. PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS; STATE OF TEXAS; JANE NELSON, IN HER OFFICIAL CAPACITY AS TEXAS SECRETARY OF STATE; HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL COMMITTEE,

*Defendants-Appellants.*

REPUBLICAN NATIONAL COMMITTEE,

*Movant-Appellant*

_____

OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS,

*Plaintiffs-Appellees*,

*v.*

KEN PAXTON, TEXAS ATTORNEY GENERAL,

*Defendant-Appellant*

_____

LULAC TEXAS; TEXAS ALLIANCE FOR RETIRED AMERICANS; TEXAS AFT; VOTO LATINO,

*Plaintiffs-Appellees*,

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS ATTORNEY GENERAL,

*Defendant-Appellant*

**On Appeal from the United States District Court for the Western District of Texas, San Antonio Division No. 5:21-cv-844 (Rodriguez, J.)**

## INTERVENOR-APPELLANTS' REPLY BRIEF

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi III
Benjamin P. Daus
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
bdaus@jonesday.com

*Counsel for Intervenor-Appellants Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................1

ARGUMENT ......................................................................................2

I.  SECTION 7.04 COMPLIES WITH THE FIRST AMENDMENT UNDER ANY STANDARD OF REVIEW. .....................................................2

    A.  The Anderson-Burdick test governs and requires reversal. .................2

    B.  Alternatively, Section 7.04 is a valid regulation on the time, place, and manner of voting. ...............................................10

    C.  Section 7.04 is justified even under strict scrutiny. ...........................14

II.  SECTION 7.04 IS NOT VAGUE........................................................22

III.  APPELLEES' CHALLENGES ARE PREMATURE. ...............................24

    A.  The First Amendment challenges are premature. ...............................25

    B.  The vagueness challenge is premature..............................................27

CONCLUSION ...............................................................................28

COMBINED CERTIFICATIONS........................................................30

CERTIFICATE OF SERVICE ...........................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Celebrezze*,
460 U.S. 780 (1983)............................................................2

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021).................................................3, 15, 16

*Buckley v. Am. Const. Law Found., Inc.*,
525 U.S. 182 (1999)............................................................7

*Burdick v. Takushi*,
504 U.S. 428 (1992)...............................................*passim*

*Burson v. Freeman*,
504 U.S. 191 (1992)...............................................*passim*

*Campbell v. Buckley*,
203 F.3d 738 (10th Cir. 2000) .........................................8

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)............................................................7

*Clingman v. Beaver*,
544 U.S. 581 (2005)............................................................4

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008)..........................................................15

*Flint v. Dennison*,
488 F.3d 816 (9th Cir. 2007) .........................................13

*Fusaro v. Cogan*,
930 F.3d 241 (4th Cir. 2019) ...........................................8

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949) ................................................................. 6

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ................................................................22

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ...................................................................24

*Johnson v. United States*,
  576 U.S. 591 (2015) ....................................................24, 27, 28

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ............................................................27, 28

*La Union Del Pueblo Entero v. Abbott*,
  119 F.4th 404 (5th Cir. 2024) .........................................*passim*

*La Union del Pueblo Entero v. Abbott*,
  No. 5:21-cv-0844 (XR), 2024 WL 4344471
  (W.D. Tex. Apr. 29, 2024) .....................................................15

*Lichtenstein v. Hargett*,
  83 F.4th 575 (6th Cir. 2023) ...................................................8

*La Union Del Pueblo Entero v. Abbott*,
  751 F. Supp. 3d 673 (W.D. Tex. 2024) .........................11, 13, 20, 26

*Mazo v. N.J. Sec'y of State*,
  54 F.4th 124 (3d Cir. 2022) .............................................*passim*

*McCullen v. Coakley*,
  573 U.S. 464 (2014) ...............................................................17

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) .................................................................7

*Meyer v. Grant*,
  486 U.S. 414 (1988) .................................................................7

iii

*Minnesota Voters All. v. Mansky*,
    585 U.S. 1 (2018)...............................................................*passim*

*Moody v. NetChoice, LLC*,
    603 U.S. 707 (2024)................................................................25, 26

*Ostrewich v. Tatum*,
    72 F.4th 94 (5th Cir. 2023) ...............................................*passim*

*Roark & Hardee LP v. City of Austin*,
    522 F.3d 533 (5th Cir. 2008) ...........................................................27

*Rosenberger v. Rector & Visitors of University of Virginia*,
    515 U.S. 819 (1995)...............................................................12, 13

*Rumsfeld v. F. for Acad. and Institutional Rts., Inc.*,
    547 U.S. 47 (2006)...........................................................................6

*Seals v. McBee*,
    898 F.3d 587 (5th Cir. 2018), *as revised* (Aug. 9, 2018) ....................6

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996).........................................................................9

*Skilling v. United States*,
    561 U.S. 358 (2010)...............................................................23, 24, 28

*Snyder v. United States*,
    603 U.S. 1 (2024)...........................................................................17

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014).......................................................................26

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997).........................................................................4

*United States v. Williams*,
    504 U.S. 36 (1992)..........................................................................11

*Veasey v. Abbott*,
830 F.3d 216 (5th Cir. 2016) (en banc) ....................................1, 14, 15

*Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*,
760 F.3d 427 (5th Cir. 2014) ................................................................17

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982)...................................................................24, 28

*Vote.Org v. Callanen*,
89 F.4th 459 (5th Cir. 2023) .................................................................2

*VoteAmerica v. Schwab*,
121 F.4th 822 (10th Cir. 2024) ..............................................................8

*Voting for Am., Inc. v. Steen*,
732 F.3d 382 (5th Cir. 2013) .......................................................*passim*

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008)...........................................................4, 22, 27

*Yee v. City of Escondido*,
503 U.S. 519 (1992)............................................................................12

**STATUTES**

Tex. Elec. Code § 32.072 ......................................................................20

Tex. Elec. Code § 33.051 ......................................................................20

Tex. Elec. Code § 64.012 ......................................................................16

Tex. Elec. Code § 64.036 ......................................................................16

Tex. Elec. Code § 85.036 ......................................................................19

Tex. Elec. Code § 276.013 ..............................................................16, 17

Tex. Elec. Code § 276.015 .........................................................*passim*

Tex. Penal Code § 36.02 .......................................................................23

**OTHER AUTHORITIES**

U.S. Const. amend. I .........................................................................*passim*

U.S. Const. art. I, § 4, cl. 1 ....................................................................3

# INTRODUCTION

Appellees' briefs confirm that the District Court erred in holding that Section 7.04's commonsense safeguards for mail voting violate the Constitution. Appellees offer no persuasive response to the dispositive point—already credited by the stay panel—that the Texas Legislature may enact laws to "protect[] voter privacy when it comes to mail-in ballots, just as state law protects privacy in the voting booth." *La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404, 408 (5th Cir. 2024); *accord Minnesota Voters All. v. Mansky*, 585 U.S. 1, 7 (2018) (States may "enact[] viewpoint-neutral restrictions on election day speech in the immediate vicinity of the polls" (cleaned up)). If anything, the Legislature had an even *stronger* basis to extend such restrictions to mail voting because mail voting is more susceptible than in-person voting to fraud and undue influence by paid partisans. *See, e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 255-56, 263 (5th Cir. 2016) (en banc). The Legislature did precisely that through Section 7.04's vote-harvesting ban, an electioneering restriction that mirrors the bans on polling-place electioneering in all 50 States.

Appellees' challenge to Section 7.04 ultimately boils down to the position that the Constitution prohibits Texas's action to safeguard mail voting on the same terms that protect in-person voting. Appellees arrive at this position only by misstating Section 7.04's elements, misreading its plain text, exaggerating its cabined scope, and mischaracterizing governing precedents. If left uncorrected, Appellees' position

and the District Court's ruling will cripple States' ability to preserve the integrity of mail voting and public confidence in elections. The Court should reverse.

## ARGUMENT

### I. SECTION 7.04 COMPLIES WITH THE FIRST AMENDMENT UNDER ANY STANDARD OF REVIEW.

Section 7.04 easily satisfies the governing *Anderson-Burdick* test. *See* Opening Br. 17-24. Appellees' primary retort posits that strict scrutiny, not *Anderson-Burdick*, governs here. *See* LULAC Br. 21-29; LUPE Br. 37-42; OCA Br. 33. That retort, however, contravenes this Court's controlling caselaw. It is also beside the point. Whether analyzed under *Anderson-Burdick*, as a time, place, and manner restriction, or through the prism of strict scrutiny, Section 7.04 is constitutional.

#### A. The *Anderson-Burdick* test governs and requires reversal.

1. This Court has twice made the rule clear. "Where a state election rule directly restricts or otherwise burdens an individual's First Amendment rights, courts apply a balancing test derived from two Supreme Court decisions, *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992)." *Vote.Org v. Callanen*, 89 F.4th 459, 490 (5th Cir. 2023) (quoting *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013)) (cleaned up). A rule is a "state election rule" subject to *Anderson-Burdick* when it regulates the "mechanics" of

elections. *Steen*, 732 F.3d at 395; *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 131 (3d Cir. 2022).

Thus, "if the [challenged] law primarily regulates the electoral process, [courts] employ *Anderson-Burdick*" rather than a more demanding form of scrutiny, even where the law "necessarily implicate[s] speech and association," *Mazo*, 54 F.4th at 140, 142, or "ha[s] the effect of channeling expressive activity at the polls," *Burdick*, 504 U.S. at 438. Accordingly, the *Anderson-Burdick* framework governs First Amendment challenges to state laws regulating election "notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Mazo*, 54 F.4th at 140 (cleaned up).

This makes perfect sense. States have a vital constitutional responsibility to set rules governing the electoral process, and some of those rules must restrict speech to advance state interests like protecting privacy in voting, preventing undue influence, and deterring fraud. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1; *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality op.); *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 685 (2021). The Supreme Court's development of the deferential, flexible *Anderson-Burdick* standard reflects this reality and avoids crippling States' ability to regulate in this area, even when such regulations may

implicate political speech.  *See Burdick*, 504 U.S. at 434 (plurality op.); *Mazo*, 54 F.4th at 137.

For example, in *Burdick* itself, the Supreme Court applied this more relaxed standard to a challenge to a state prohibition on writing in a voter's candidate of choice.  *See* 504 U.S. at 430 (plurality op.).  So, too, have courts applied *Anderson-Burdick* to laws creating semiclosed primary election systems, *see Clingman v. Beaver*, 544 U.S. 581, 584 (2005); laws permitting primary-election candidates to affiliate with a party over the party's objection, *see Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 444 (2008); antifusion laws prohibiting a political party from listing the candidate of its choice on the ballot, *see Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 353-54 (1997); and laws restricting placement of campaign slogans on ballots, *see Mazo*, 54 F.4th at 140-41.

Section 7.04 likewise "primarily regulates the electoral process" and, thus, is subject to review under the *Anderson-Burdick* framework.  *Id.* at 140; *see also La Union del Pueblo Entero*, 119 F.4th at 408 ("[Section 7.04] regulate[s] the mechanics of voting.").  Section 7.04 is aimed at "protecti[ng] voters" from, and "prevent[ing] fraud and corrupt practices" by, paid partisans.  *Mazo*, 54 F.4th at 140. It applies *only* in the knowing physical presence of a "ballot" "during the voting process."  Tex. Elec. Code § 276.015.  It is further cabined by the requirements of knowing "direct[] involve[ment]" of the ballot and an offer or exchange of

4

compensation involving the canvasser. *Id.* § 276.015(e)(2). Indeed, had the Legislature intended Section 7.04 primarily as a regulation of core political speech, it would have omitted all these narrowing elements and instead targeted speech "that relates to an election but occurs nowhere near the ballot." *Mazo*, 54 F.4th at 142. That it instead included those elements demonstrates that Section 7.04 "primarily regulates the electoral process." *Id* at 140.

Section 7.04, moreover, easily satisfies the deferential *Anderson-Burdick* test. *See* Opening Br. 17-24. It imposes no meaningful burdens on voters; advances Texas's "important regulatory interests" in voter privacy, secrecy in voting, and election integrity, *Steen*, 732 F.3d at 387-88; *see also La Union del Pueblo Entero*, 119 F.4th at 409; and creates "an island of calm in which voters can peacefully contemplate their choices," *Mansky*, 585 U.S. at 15 (cleaned up); Opening Br. 17-24.

2. Appellees' primary response is their contention that *Anderson-Burdick* is inapplicable because, in their view, Section 7.04 regulates "core political speech." LULAC Br. 21-29; LUPE Br. 37-40. This contention fails.

To start, Appellees' premise is mistaken because Section 7.04 is not a regulation of "pure speech." LULAC Br. 21-29. Appellees consistently ignore or downplay three conduct-focused elements of Section 7.04: the requirements of compensation, the vote harvester's knowledge that a mail ballot is physically

present, and an in-person interaction "directly involv[ing]" the ballot.  Tex. Elec. Code 276.015(b)-(d), (e)(3).  Because it contains these three elements, Section 7.04 merely prohibits speech that is an "integral part of conduct" States can legitimately proscribe.  *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 688-89 (1949).  Just as States can prohibit speech integral to bribery and blackmail, *see Rumsfeld v. F. for Acad. and Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006); *Seals v. McBee*, 898 F.3d 587, 597 n.25 (5th Cir. 2018), *as revised* (Aug. 9, 2018), they can prohibit outsiders from taking actions that "directly involve" another person's mail ballot.

Moreover, Section 7.04's conduct elements distinguish it from the electioneering laws at issue in cases where the Supreme Court and this Court have declined to apply *Anderson-Burdick*.  The laws in those cases did not have conduct-focused elements such as that a canvasser do something "directly involv[ing]" a ballot.  *See Mansky*, 585 U.S. at 11-13; *Ostrewich v. Tatum*, 72 F.4th 94, 102-04 (5th Cir. 2023).  Those laws thus more plausibly involved "pure speech" than Section 7.04.  LULAC Br. 22.

Furthermore, Appellees' attempt to detour around *Anderson-Burdick* suffers from another fatal flaw:  Appellees do not even engage with, let alone refute, the controlling point that Section 7.04 "primarily regulates the electoral process." *Mazo*, 54 F.4th at 140.  Accordingly, even if Appellees were correct that Section 7.04 implicates "pure speech" or has "the effect of channeling expressive activity" in the

presence of a ballot, *Burdick*, <u>504 U.S. at 438</u>, it still remains subject to the *Anderson-Burdick* test, *see Mazo*, <u>54 F.4th at 140-42</u>.

Appellees' own cited cases actually prove this point. Those cases involve challenges to laws that did not primarily regulate the election process, but instead targeted speech "that relates to an election but occurs nowhere near the ballot or any other electoral mechanism." *Id.* at 142.

Consider *McIntyre v. Ohio Elections Commission*, <u>514 U.S. 334, 345</u> (1995), *Citizens United v. Fed. Election Commission*, <u>558 U.S. 310, 318-19</u> (2010), *Meyer v. Grant*, <u>486 U.S. 414</u> (1988), and *Buckley v. American Constitutional Law Foundation, Inc.*, <u>525 U.S. 182</u> (1999). *See* LULAC Br. 21-24; LUPE Br. 18-20; OCA Br. 14-15. Those cases addressed free-floating, generally applicable bans on political speech outside the electoral process. The challenged law in *McIntyre*, for example, barred the distribution of unsigned political pamphlets in all circumstances, not just in the knowing presence of a polling place or ballot. <u>514 U.S. at 338</u> & n.3. The ban thus regulated "pure speech" and had nothing to do with "the mechanics of the electoral process." *Id.* at 345. The same is true of the campaign finance laws at issue in *Citizens United*, <u>558 U.S. at 318-19</u>, the paid circulator law in *Meyer*, <u>486 U.S. at 416-17</u>, and the disclosure requirements in *Buckley*, <u>525 U.S. at 186</u>; *see also* Opening Br. 23-24.

As for Appellees' out-of-circuit authorities, they either support the application of *Anderson-Burdick* or have nothing to do with this case. LULAC Br. 13, 27-28; OCA Br. 23. In *Fusaro v. Cogan*, for example, the Fourth Circuit applied *Anderson-Burdick* to a law permitting only Maryland registered voters to access Maryland's registered-voters list. 930 F.3d 241, 244, 258 (4th Cir. 2019); *see* LUPE Br. 13. Or take *Campbell v. Buckley*, where the Tenth Circuit *rejected* the application of strict scrutiny in favor of applying *Anderson-Burdick* to a Colorado rule that ballot initiatives be limited to one subject. 203 F.3d 738, 743-46 (10th Cir. 2000); *see* LULAC Br. 27.

The same goes for *Lichtenstein v. Hargett,* 83 F.4th 575 (6th Cir. 2023), and *VoteAmerica v. Schwab*, 121 F.4th 822 (10th Cir. 2024). *See* LULAC Br. 13; OCA Br. 23. *Lichtenstein* concerned a challenge to a state law prohibiting anyone but election officials from distributing absentee-voter registration forms. *Lichtenstein*, 83 F.4th at 579. The Sixth Circuit declined to apply strict scrutiny precisely because the challenged law did not regulate "pure political expression." *Id.* at 586. Similarly, the Tenth Circuit's decision in *VoteAmerica* addressed a law that barred mailing pre-filled mail-ballot applications to voters. 121 F.4th at 826-27. The Tenth Circuit declined to apply strict scrutiny, and its intermediate-scrutiny test does not apply here. *See id.*

Appellees also argue that this Court's decision in *Steen* is inapposite because it involved voting deputy registrars, who acted as agents of the State, rather than electioneering by private parties. *See* LULAC Br. 25-26; LUPE Br. 29; OCA Br. 24. However, that *Steen* involved a law regulating the "duties of" deputized officials does *not* mean that the *Anderson-Burdick* test applies *only* to such laws. *Mazo*, 54 F.4th at 140. To the contrary, it governs challenges to *all* laws that "primarily regulate[] the electoral process." *Id.* In all events, the Court's *reasoning*—that *Anderson-Burdick* governs challenges to "a state election rule [that] directly or otherwise restricts an individual's First Amendment rights," *Steen*, 732 F.3d at 387—applies with full force here. After all, courts adhering to *stare decisis* are bound "not only [by] the result but also those portions of the opinion necessary to that result." *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66-67 (1996).

Finally, Appellees argue that if *Anderson-Burdick* applies, Section 7.04 fails it. *See* LULAC Br. 28-29; OCA Br. 33. Appellees assert that Section 7.04 imposes serious burdens on canvassers, *see* LULAC Br. 28, but the *Anderson-Burdick* test assesses only the burden voting regulations place on *voters*, *Burdick*, 504 U.S. at 434. And any burden Section 7.04 imposes on voters is slight at most. Voters are free to interact with volunteer canvassers in any way they choose; and so long as their ballots are put away or the interaction is not in person, voters can engage with paid canvassers however they please as well. *See* Tex. Elec. Code § 276.015(a)(2),

(b)-(c).  Moreover, voters can continue to receive neutral assistance in completing their ballots from anyone.  *See id*. § 276.015(e)(5).

Even if the burden on paid canvassers were somehow relevant under *Anderson-Burdick*, the burden imposed on them is slight as well.  Under Section 7.04, they remain free to interact with voters however they choose, so long as they are not knowingly in the presence of a ballot and engaging in an in-person interaction that directly involves that ballot during the voting process.  *Id*. § 276.015(b)-(c), (e)(3).  Texas's "important regulatory interest[]" in protecting voters as they cast ballots by mail is surely "enough to justify [the] reasonable, nondiscriminatory restriction[]" in Section 7.04.  *Steen*, 732 F.3d at 388 (cleaned up); *see Burson*, 504 U.S. at 199 (plurality op.) (identifying important state interests in protecting voters from confusion and undue influence, preserving election integrity, and combatting fraud).

**B.    Alternatively, Section 7.04 is a valid regulation on the time, place, and manner of voting.**

Even if *Anderson-Burdick* did not govern here, the Court still should uphold Section 7.04 as a permissible time, place, and manner restriction.  *See* Opening Br. 24-28.  Like analogous bans on polling-place electioneering, Section 7.04 "applies only in a specific location"—the place where a mail ballot is physically present.  *Mansky*, 585 U.S. at 11.  Such a place is "a special enclave" subject to reasonable time, place, and manner restrictions.  *Id.* at 12; *accord Burson*, 504 U.S. at 216

(Scalia, J., concurring in the judgment) (explaining that the "streets and sidewalks around polling places" may be nonpublic forums subject to reasonable time, place, and manner restrictions); *Ostrewich*, 72 F.4th at 103.  Section 7.04's vote-harvesting ban is such a reasonable restriction "in light of the purpose served by the forum: voting."  *Mansky*, 585 U.S. at 13; *see also La Union del Pueblo Entero*, 119 F.4th at 408 (Section 7.04 "protect[s] voter privacy when it comes to mail-in ballots, just as state law protects privacy in the voting booth"); Opening Br. 24-28.

Appellees offer several contrary arguments, but all fail.

*First*, Appellees suggest this defense was forfeited below.  LULAC Br. 29. This is incorrect.  Appellants specifically argued below that "[s]ection 7.04 functions much like constitutionally permissible bans on solicitation near polling places," and cited *Mansky*, which employed forum analysis.  ECF No. 940 at 231.  The District Court addressed (and rejected) the argument that Section 7.04 is a permissible time, place, and manner restriction, and it tried to distinguish *Mansky*.  *La Union Del Pueblo Entero v. Abbott*, 751 F. Supp. 3d 673, 723-24 (W.D. Tex. 2024).  When a claim is *either* presented below *or* passed on by a district court, it is not forfeited. *See United States v. Williams*, 504 U.S. 36, 41 (1992) (appellate court can "review . . . an issue not pressed so long as it has been passed upon").  Both conditions are satisfied here, defeating Appellees' cry of forfeiture.  Regardless, this defense would at most be a new argument in support of Section 7.04's constitutionality and, thus,

may be newly raised on appeal.  *See Yee v. City of Escondido*, <u>503 U.S. 519, 534</u> (1992).

*Second*, Appellees contend that forum analysis is inapplicable because a mail voter may choose to complete a ballot in a variety of physical locations.  *See* LULAC Br. 29-30; LUPE Br. 41; OCA Br. 34.  They argue that forum analysis applies *only* to "a government-controlled setting to which the public has access."  LULAC Br. 30.  That too is wrong:  Voting often occurs in spaces not ordinarily subject to government control, such as churches.  *See Mansky*, <u>585 U.S. at 12</u>.  Those ordinarily private spaces temporarily become governmental spaces—and nonpublic fora— *because* ballots are present and voting is occurring there.  *See id.*  Thus, contrary to LULAC Appellees' contention, LULAC Br. 32, Section 7.04 *does* identify a "discernable forum": any place where mail ballots are physically present and are either being voted or capable of being imminently voted.

At times, Appellees seem to suggest that only physical, "identifiable" governmental spaces are subject to forum analysis.  *See id.*  This suggestion, too, is wrong.  As the Supreme Court has explained, fora are not limited to physical spaces. *Rosenberger v. Rector & Visitors of Univ. of Va.*, <u>515 U.S. 819, 830</u> (1995).  The government can create new fora when it establishes a space for conducting official business, including a "metaphysical" forum like a student activities fund, *id.*, or a "student election process," *Flint v. Dennison*, <u>488 F.3d 816, 821</u>, <u>836</u> (9th Cir. 2007).

*Third*, Appellees parrot the District Court's contention that Section 7.04 "effectively converts the entirety of Texas into a polling place where conversations about candidates can create criminal liability." *La Union Del Pueblo Entero*, 751 F. Supp. 3d at 724; LULAC Br. 31; LUPE Br. 40-41; OCA Br. 36. Appellees and the District Court grossly overstate Section 7.04's reach. As Appellees concede, Section 7.04 extends only to the physical presence of the ballot. *See* LULAC Br. 30. The presence of a ballot therefore does not turn an entire "public park" into a non-public forum. OCA Br. 36. Moreover, Section 7.04 is cabined even more narrowly than the ballot's physical presence because it applies only when a paid canvasser knows the ballot is physically present and nonetheless chooses to engage in vote harvesting "directly involv[ing]" the ballot. Tex. Elec. Code § 276.015.

There is no dispute that the State can—and *does*—"control[] . . . access" to mail ballots. LULAC Br. 30; *see also id.* at 34. The State may therefore treat the immediate vicinity of mail ballots as a nonpublic forum subject to reasonable limits on electioneering. Section 7.04's vote-harvesting ban does precisely that and is just such a constitutional safeguard. *See* Opening Br. 24-28; *Mansky*, 585 U.S. at 13; *Burson*, 504 U.S. at 206 (plurality op.); *Ostrewich*, 72 F.4th at 103; *La Union del Pueblo Entero*, 119 F.4th at 408.

*Finally*, LULAC Appellees argue that even if forum analysis applies, the area where a voter chooses to vote by mail is a *public* forum. LULAC Br. 34-35. This

argument is puzzling:  As a matter of law, *any* place where someone casts a vote is a *nonpublic* forum.  *See Mansky*, 585 U.S. at 13-15.  And that makes good sense.  Maintaining the integrity of elections would be impossible if the government had to treat the place where someone votes as a public forum subject to the same rules as the public square.

LULAC Appellees' argument would also result in radically different protections for voters depending on whether they chose to vote in person or by mail.  LULAC Appellees actually embrace this consequence, insisting that the absence of election officials during mail voting precludes States from meaningfully regulating mail voting.  *See* LULAC Br. 31, 35.  That is precisely backwards:  The absence of election officials makes mail voting *more* susceptible to fraud and undue influence by paid partisans than in-person voting and, thus, a wholly appropriate subject of state regulation.  *See, e.g.*, *Veasey*, 830 F.3d at 255-56, 263.  The Court should reverse.

### C.    Section 7.04 is justified even under strict scrutiny.

Although strict scrutiny is inapplicable, Section 7.04 survives even that exacting standard.  Opening Br. 28-40.  Appellees' contrary arguments miss the mark.

*First*, LUPE and OCA Appellees question whether Texas has any compelling interest in regulating vote harvesting.  LUPE Br. 25; OCA Br. 27.  LUPE Appellees

suggest that the First Amendment bars States from protecting voters from paid canvassers during the voting process. LUPE Br. 25. For their part, OCA Appellees question whether Texas can enact prophylactic measures to deter election fraud. OCA Br. 27.

The Supreme Court has repeatedly rejected these arguments. "A state indisputably has a compelling interest in preserving the integrity of its election process." *Brnovich*, 594 U.S. at 685. As part of that broad interest, States can "secure the advantages of the secret ballot and protect the right to vote," *Mansky*, 585 U.S. at 13-14, as well as "protec[t] voters from confusion and undue influence," *Burson*, 504 U.S. at 199 (plurality op.); *see La Union Del Pueblo Entero*, 119 F.4th at 409. Moreover, States can act to prevent outright fraud in mail voting. *See, e.g.*, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 193-95 (2008).

Appellants presented evidence that Texas has experienced fraudulent mail-voting schemes in recent years. *See, e.g.*, *La Union del Pueblo Entero v. Abbott*, No. 5:21-cv-0844 (XR), 2024 WL 4344471, at *10 (W.D. Tex. Apr. 29, 2024) (District Court acknowledgement of 2020 fraudulent mail-ballot scheme in Denton County); *see also Veasey*, 830 F.3d at 255-56 ("Seven of the Plaintiffs further testified that they are reluctant to vote by mail due to the increased risk of fraud because of people who harvest mail-in ballots from the elderly."). And such evidence was not even necessary, as "a State may take action to prevent election fraud without waiting for

15

it to occur and be detected within its own borders." *Brnovich*, 594 U.S. at 686; *see Ostrewich*, 72 F.4th at 106. Appellees' assertion that Section 7.04 does not serve compelling interests is meritless.

*Second*, Appellees rehash the District Court's argument that Section 7.04 does not advance Texas's compelling interest because it supposedly duplicates three pre-existing statutes. LULAC Br. 37-40; LUPE BR. 30-31; OCA Br. 26-27. Intervenor-Appellants already addressed this erroneous theory in their opening brief, *see* Opening Br. 31-33, and Appellees do not salvage it.

Those laws make it a crime to: (1) mark a ballot inconsistent with voter instructions, Tex. Elec. Code § 64.012; (2) suggest how to vote while providing lawful assistance, *id*. § 64.036; or (3) "influence the independent exercise of the vote of another in the presence of the ballot or during the voting process," *id*. § 276.013. Section 7.04 targets conduct that each of these three provisions miss.

In particular, unlike Section 64.012, Section 7.04 applies when a paid canvasser marches a voter through a ballot and pushes her to complete that ballot in a particular way, even when the canvasser is not the one to mark the ballot. Section 7.04 also extends beyond Section 64.036's prohibition on unlawful voting assistance to paid canvassers not purporting to provide assistance. And unlike Section 276.013, Section 7.04 both requires no abstract inquiry into what constitutes a voter's "independence exercise of the vote" and imposes a higher penalty, commensurate

with the significant risks inherent in vote harvesting.  *Compare id.* § 276.013(b) (misdemeanor offense), *with id.* § 276.015(f) (felony offense).  Section 7.04 thus is necessary to "advanc[e] the state's interest," *Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 440 (5th Cir. 2014) (cleaned up), because it targets conduct and advances the State's compelling interests in ways that the other three statutes do not.  *See Snyder v. United States*, 603 U.S. 1, 19 (2024) (overlap in criminal statutes is necessary to close loopholes); *cf. McCullen v. Coakley*, 573 U.S. 464, 492 (2014) (invalidating law that *failed* to advance any compelling interest not already fully satisfied by other statutes); *Tex. Lottery Comm'n*, 760 F.3d at 441 (same).

*Third*, turning to tailoring, Appellees assert that Section 7.04 is underinclusive because it applies only to paid canvassers while excluding volunteers and other unpaid individuals from its ambit.  LULAC Br. 42-43; LUPE Br. 27-30; OCA Br. 30-31.  The Texas Legislature reasonably concluded that paid canvassers are more likely to pressure voters than unpaid volunteers.  The intuition that compensation can lead to inappropriate pressure underlies many laws.  That is why, for example, bribery is illegal but merely attempting to influence a politician is not.  *See, e.g.*, *Snyder*, 603 U.S. at 10-12.

Meanwhile, good reasons exist to exclude unpaid individuals from the law.  Without such limits, Section 7.04's prohibitions could inadvertently extend to

innocent interactions unlikely to be characterized by undue pressure, such as when family members persuade each other how to vote.  In drawing the line where it did, the Texas Legislature tailored Section 7.04 more narrowly rather than more broadly.

*Fourth*, OCA Appellees also repeat the District Court's contention that Section 7.04 applies only to interactions intended to deliver votes for, but not against, a specific candidate or measure.  OCA Br. 29-30.  They acknowledge that advocating against a candidate or measure can constitute advocacy *for* the candidate's opponent or status quo.  *Id.*  But they suggest Section 7.04 might be underinclusive because it might not apply in hypothetical situations where a canvasser "encourages voters to sit out the election, or write in a protest vote."  *Id.* at 30.

That suggestion, however, does not help OCA Appellees.  To start, a state court, properly given the chance to interpret Section 7.04 in light of real-life facts, *see* Part III, *infra*, might hold that Section 7.04 *does* reach such conduct.  After all, advocating non-voting or protest votes in the core territory of one candidate is tantamount to advocacy for the opponent.  Regardless, as relevant to this case, there is *zero* record evidence of any entity paying canvassers to engage in such tactics.  Instead of employing unusual hypotheticals to distract from the Legislature's clear intent to reach activity "designed to deliver votes for or against a specific candidate or measure," Tex. Elec. Code § 276.015(e)(5); *see* Opening Br. 38-39, the Court should simply hold that Section 7.04 can lawfully proscribe *that* conduct and leave

questions about Section 7.04's application to unusual hypotheticals for future, as-applied challenges.

*Fifth*, LUPE Appellees contend that Section 7.04 is overinclusive because it applies anywhere a ballot is present and can be triggered any time during the multi-week mail-voting period.  LUPE Br. 26.  That is precisely the point:  To be effective, any regulation of mail voting must necessarily extend to any location where a mail ballot is present and any time when mail voting may occur.  *See, e.g.*, *Burson*, 504 U.S. at 211 (plurality op.) (upholding zone of peace around polling places).  Thus, Section 7.04 prescribes the least restrictive geographic and temporal limits that could even conceivably advance the State's compelling interests in safeguarding mail voting.  Indeed, Texas's analogous ban on polling-place electioneering likewise extends to all polling places in Texas where ballots are present and for the entire multi-week early voting period.  Tex. Elec. Code § 85.036(a); *Ostrewich*, 72 F.4th at 97.

Appellees nonetheless suggest that the Legislature could have limited Section 7.04 to the period of time when a voter is actively completing a ballot.  *See* LULAC Br. 42; LUPE Br. 32; OCA Br. 31.  Yet that approach would enable easy circumvention of the protection the Legislature sought to erect.  Under that version of the statute, a paid canvasser could walk the voter through how to complete a ballot while the voter has a ballot in hand, and then step out of the room right before the

voter completes the ballot.  The Legislature sensibly extended Section 7.04 slightly beyond the precise moment when voters fill out their ballots to situations "during the voting process … directly involv[ing]" a physically "present" ballot that can be completed imminently.  Tex. Elec. Code §§ 276.015(e)(2), (3).  This definition mirrors the protections at the voting booth, which cover voters not only when they are actively completing their ballots, but also when they are checking in or have their ballots readily at hand.  *Cf id.* § 33.051 (using phrase "voting process" similarly in context of poll watchers); *id.* § 32.072 (same in context of election clerks).

*Sixth*, Appellees invoke the District Court's assertion that the Legislature could have prohibited only "speech that is intended to defraud, confuse, unduly influence or deceive."  *La Union Del Pueblo Entero*, 751 F. Supp. 3d at 723; *see* LULAC Br. 31-32; LUPE Br. 31-32; OCA Br. 31-32.  But such a limited approach would not reach the full swath of conduct that Texas validly seeks to proscribe.  Texas can ensure secret and private voting, and it need not permit outsiders to be present while a voter completes her ballot, even if the canvassers only intend to engage in "political advocacy" that falls short of undue influence or confusion.  *Mansky*, 585 U.S. at 12; *see Burson*, 504 U.S. at 206 (plurality op.).

*Finally*, Appellees attempt to paint Section 7.04 as overbroad by distorting its scope and omitting its key elements.  OCA Appellees assert that Section 7.04 "encompasses all manner of 'in-person interactions' involving core political speech

'in the physical presence' of a mail-ballot." OCA Br. 17. They thus disregard Section 7.04's scienter requirement, its requirement of "direct[] involve[ment]" with a ballot, and its exemption of activity "that is not designed to deliver votes for or against a specific candidate or measure." Tex. Elec. Code § 276.015(e)(5).

LULAC Appellees do the same, repeatedly ignoring both Section 7.04's scienter requirement and limitation to interactions directly involving a ballot. LULAC Br. 15 (claiming that Section 7.04 "prohibit[s] voter persuasion by certain disfavored speakers whenever a ballot is present" (cleaned up)); *id.* at 45 ("Under the canvassing ban, a speaker commits a *felony* for engaging in plainly constitutional speech . . . if they are simply 'in the physical presence of an official ballot or ballot voted by mail.'"); *id.* at 46 ("a ballot's mere physical 'presence' is sufficient to trigger the canvassing ban[]"). LUPE Appellees commit the same error. *See, e.g.*, LUPE Br. 1 (Section 7.04 "prohibits political canvassers . . . from engaging in any "in-person interactions with one or more voters, in the physical presence of an official ballot."); *id.* at 1-2 ("It prohibits a door-to-door canvasser who receives any 'compensation or other benefit' from advocating for candidates or measures in the 'physical presence' of a mail ballot.").

Despite their best efforts, Appellees cannot rewrite Section 7.04 by ignoring its text. But even if Appellees' distortions of Section 7.04 were plausible, Texas's courts must be given a chance to "implement [Section 7.04] in a manner consistent

with the Constitution." *Wash. State Grange*, 552 U.S. at 451 (cleaned up). Alternatively, this Court can adopt a narrowing construction that preserves the statute's constitutionality, just as it did in *Steen*. 732 F.3d at 396-97. In any scenario, the Court should reverse.

## II.   SECTION 7.04 IS NOT VAGUE.

Appellees come nowhere close to meeting their daunting burden to show that Section 7.04 is void for vagueness. Opening Br. 40-44. The vast majority of Section 7.04's reach is crystal clear, and hypothesizing a few borderline applications divorced from real-world enforcement proceedings makes it analogous to any criminal statute, not void for vagueness. *Id.* at 43. In maintaining otherwise, Appellees make several errors.

*First*, while attacking the meaning of "consideration or other benefit," Appellees begin by conflating vagueness with breadth. LUPE Br. 49-50; OCA Br. 39-41. Although they labor to demonstrate that the definition of "benefit" is vague, Appellees succeed only in showing that the statutory language "suggests a broad meaning." OCA Br. 40; *id.* at 39 (definition of benefit is "expansive"). Section 7.04 is not vague just because it contains broad, "flexib[le]" language. *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Moreover, Texas uses the term "any benefit" elsewhere in its criminal code, and no one suggests courts have struggled to apply those provisions. *See*, *e.g.*, Tex. Penal Code § 36.02(a) (Texas's bribery statute).

And in any event, because the "hard core" of Section 7.04's prohibition is concededly clear, *see* LULAC Br. 42; LUPE Br. 32; OCA Br. 31, any residual "uncertainty" about Section 7.04's "outermost boundaries" has "little relevance" to the vagueness inquiry, *Skilling v. United States*, 561 U.S. 358, 412 (2010) (cleaned up).

*Second*, Appellees attempt to manufacture uncertainty by citing a witness who declined to identify Section 7.04's precise boundaries without first consulting relevant caselaw. OCA Br. 41. Unsurprisingly, however, Appellees identify no cases suggesting a law is void for vagueness just because a witness is unsure about all its applications. Indeed, such a rule would make little sense and leave broad swaths of laws vulnerable to invalidation based on a single witness's uncertainty.

Similar problems bedevil Appellees' attack on the "physical presence" element. In fact, LUPE Appellees recognize that this element supplies an understandable meaning: "The ballot … must be actually present rather than a mere topic of discussion." LUPE Br. 22.

Appellees nonetheless hypothesize that in some instances, whether a canvasser counts as being in the "physical presence" of a ballot will be a close call. *Id.* at 49; OCA Br. 42-45. But even if that turns out to be true in any real-world case, "the law is full of instances where a man's fate depends on his estimating rightly some matter of degree." *Johnson v. United States*, 576 U.S. 591, 604 (2015)

(cleaned up). The majority of Section 7.04's applications are clear. When a canvasser speaks to a voter at her front door while the ballot lies in the kitchen dozens of feet away, the canvasser is not in the "physical presence" of the ballot. Tex. Elec. Code § 276.015(a)(2). By contrast, if the voter is clutching a ballot in her hand, the ballot is physically present. The existence of some close cases is inevitable, but insufficient to facially invalidate a law. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc*., 455 U.S. 489, 497 (1982).

*Finally*, Appellees' vagueness arguments consistently ignore Section 7.04's essential elements. Appellees disregard the safe harbor Section 7.04 provides for interactions that do not "directly involve" a ballot, which further clarifies and narrows the "physical presence" requirement. Tex. Elec. Code § 276.015(e)(3). And they overlook that Section 7.04's "knowledge requirement [with respect to a mail ballot's physical presence] . . . further reduces any potential for vagueness." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010); *see Skilling*, 561 U.S. at 412. Section 7.04 is constitutional.

## III.  APPELLEES' CHALLENGES ARE PREMATURE.

This Court should reject Appellees' challenges on the merits and reaffirm States' authority to establish reasonable privacy and undue-influence regulations to protect mail voting. *See La Union Del Pueblo Entero*, 119 F.4th at 409. But at the

very least, reversal is warranted because Appellees' pre-enforcement facial challenges are premature. Opening Br. 44-49.

### A.    The First Amendment challenges are premature.

Just this past term, the Supreme Court reaffirmed that the standard for pre-enforcement facial challenges in the First Amendment context is "rigorous." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Appellees must show that Section 7.04's "unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 724. Appellees cannot meet that standard because they concede that Texas can lawfully prohibit vote harvesting while individuals are actively filling out their ballots, *see* LULAC Br. 42; LUPE Br. 32; OCA Br. 31, which is most of what Section 7.04 prohibits. Appellees offer two contrary arguments, but both fail.

*First*, LULAC Appellees argue that their own subjective chill is sufficient to sustain their facial challenge. LULAC Br. 16. Subjective chill is not the standard, nor could it be. *See Moody*, 603 U.S. at 723. Otherwise, plaintiffs could *always* initiate a facial challenge simply by alleging subjective chill.

*Second*, seeking to elude the rigorous standard governing facial challenges, LUPE and LULAC Appellees erroneously suggest that they also brought as-applied challenges. LULAC Br. 52 n.9; LUPE Br. 4, 43. Not so. Appellees sought to invalidate Section 7.04 on its face in a pre-enforcement action, and that is what the District Court did. *La Union del Pueblo Entero*, 751 F. Supp. 3d at 732-33; *see* ECF

Nos. 200 ¶¶ 214-25, 226-39 (not articulating as-applied challenge and asking for enforcement of provisions to be completely enjoined); 207 at 62-63 (seeking only facial relief against section 7.04); 208 ¶¶ 286-300 (explicitly invoking standard for facial challenge).

Nor could Appellees bring as-applied challenges because there is *zero* evidence of Section 7.04 being enforced against them (or anyone else). Such evidence is what makes a challenge *as-applied*. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (as-applied challenge possible where the pertinent state regulator had "already found probable cause to believe that" the plaintiff had "violated the statute" and, thus, the plaintiff faced a "credible risk of enforcement"); *see also Moody*, 603 U.S. at 718 (rejecting pre-enforcement as-applied challenges despite challengers showing a "loss of control over the content of" their social media platforms).

More fundamentally, challenges without evidence of enforcement—*i.e.*, facial challenges—are disfavored precisely because they "rest on speculation," "run contrary to the fundamental principle of judicial restraint that courts should [not] anticipate a question of constitutional law in advance of the necessity of deciding it," and "short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange*, 552 U.S. at 451.   Appellees' pre-enforcement facial First

Amendment challenge features all these vices and should be rejected for this reason alone.

**B.    The vagueness challenge is premature.**

In the "pre-enforcement context," "examining facial vagueness is often difficult, perhaps impossible, because facts are generally scarce." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008).  Appellees have not shown that Section 7.04 is remotely vague, let alone so impossibly vague that it should be voided in a pre-enforcement facial challenge.

Instead of seriously trying to engage with their burden, Appellees quibble with the standard of review.  *See* OCA Br. 46-48.  That standard is extremely demanding on any account, requiring Appellees to "demonstrate that the law is impermissibly vague in all of its applications." *Roark & Hardee LP*, 522 F.3d at 546 (cleaned up).  Appellees point to the somewhat-less-demanding standard in *Kolender v. Lawson*, 461 U.S. 352 (1983), and *Johnson v. United States*, 576 U.S. 591 (2015).  OCA Br. 47.  But those two cases are inapt because both arose in a *post*-enforcement context where courts had multiple previous opportunities to narrow the statutes before concluding they were irretrievably vague.  *Kolender*, 461 U.S. at 355-57 (statute had been enforced against plaintiff over a dozen times, and state court had offered narrowing construction); *Johnson*, 576 U.S. at 594-95 (Supreme Court adjudicated scope of statute four times in nine years).

Whether the pre-enforcement void-for-vagueness standard of review is effectively impossible or extremely difficult to satisfy, Appellees offer no serious argument that they have satisfied it.  Even if this Court thinks the terms "benefit" or "physical presence" are vague, Texas's courts must be given a chance to adopt a "limiting construction rather than a facial invalidation."  *Burson*, 504 U.S. at 210 n.13 (plurality op.); *see Vill. of Hoffman Ests.*, 455 U.S. at 494 n.5.  Where the "hard core" of conduct prohibited by the statute is plain, as Appellees concede, LULAC Br. 42; LUPE Br. 32; OCA Br. 31, the statue is not unconstitutionally void, and "judicial gloss" can provide whatever further clarity is needed, *Skilling*, 561 U.S. at 412.

## CONCLUSION

This Court should reverse with instructions to dismiss.

Dated: April 8, 2025                      Respectfully submitted,

                                        */s/* John M. Gore

                                        John M. Gore

                                        (D.C. Bar No. 502057)

                                         *Counsel of Record*

                                        E. Stewart Crosland

                                        Louis J. Capozzi III

                                        Benjamin P. Daus

                                        JONES DAY

                                        51 Louisiana Ave. NW

                                        Washington, DC  20001

                                        (202) 879-3939

                                        jmgore@jonesday.com

                                        scrosland@jonesday.com

                                        lcapozzi@jonesday.com

                                        bdaus@jonesday.com

## COMBINED CERTIFICATIONS

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify the following:

1.      I am a member in good standing of the Bar of this Court.

2.      This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,499 words, excluding the parts exempted by Fed. R. App. P. 32(f).

3,      This Brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced 14-point font (namely, Times New Roman) in the text and the footnotes.

4.      The text of the electronic Brief is identical to the text in the paper copies.

5.      The electronic file containing the Brief was scanned for viruses using the most recent version of a commercial virus scanning program, and no virus was detected.


Dated: April 8, 2025                        */s/* John M. Gore
                                            John M. Gore
                                            *Counsel for Intervenor-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, this brief was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing.

Dated: April 14, 2025                  */s/* John M. Gore
                                       John M. Gore
                                       *Counsel for Intervenor-Appellants*