# In the United States Court of Appeals for the Fifth Circuit

La Unión del Pueblo Entero, Southwest Voter Registration Education Project; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Education; JOLT Action; William C. Velasquez Institute; Fiel Houston, Incorporated; Friendship-West Baptist Church; Texas Impact; James Lewin,

*Plaintiffs-Appellees,*

*v.*

Gregory W. Abbott, in his official capacity as Governor of Texas; Warren K. Paxton, in his official capacity as Attorney General of Texas; State of Texas; Jane Nelson, in her official capacity as Texas Secretary of State; Harris County Republican Party; Dallas County Republican Party; National Republican Senatorial Committee,

*Defendants-Appellants,*

Republican National Committee,

*Movant-Appellant.*

———

OCA-Greater Houston; League of Women Voters of Texas,

*Plaintiffs-Appellees,*

*v.*

Ken Paxton, Texas Attorney General,

*Defendant-Appellant.*

***[Caption Continued on Next Page]***

LULAC Texas; Texas Alliance for Retired Americans;
Texas AFT; Voto Latino,
*Plaintiffs-Appellees*,

*v.*

Ken Paxton, in his official capacity as the Texas
Attorney General,
*Defendant-Appellant.*

————

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

————

# REPLY BRIEF FOR STATE DEFENDANTS-APPELLANTS

————

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Aaron L. Nielson
Solicitor General

William F. Cole
Principal Deputy Solicitor General
William.Cole@oag.texas.gov

Kateland R. Jackson
Assistant Solicitor General

Kathleen T. Hunker
Deputy Chief, Special Litigation Unit

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Meagan Corser
Assistant Attorney General

Counsel for State Defendants-
Appellants

# Table of Contents

Page

Table of Contents ....................................................................i

Table of Authorities ...............................................................ii

Introduction ..........................................................................1

Argument ..............................................................................2

    I.   S.B. 1's Paid-Vote-Harvesting Ban Is Not Unconstitutionally Vague. .........2

        A.  Plaintiffs' pre-enforcement facial challenge is deficient. ......................2

        B.  Plaintiffs' vagueness claim fails on the merits. ...................................4

            1.  The terms "compensation" and "benefit" are not unconstitutionally vague. ...............................................................5

            2.  The "physical presence" requirement is not unconstitutionally vague. ...............................................................9

    II.  S.B. 1's Paid-Vote-Harvesting Ban Complies with the First Amendment. ..................................................................... 11

        A.  Section 7.04 is not subject to strict scrutiny. ...................................... 11

        B.  Section 7.04 survives any level of constitutional scrutiny. ................. 13

            1.  Under *Burson*, section 7.04 is akin to a polling-place restriction that passes constitutional scrutiny. ...........................14

            2.  Section 7.04 is properly tailored. ................................................. 17

            3.  At minimum, Plaintiffs' *facial* overbreadth challenge fails. .........20

    III.  The District Court Lacked Jurisdiction to Enjoin the Attorney General and the Secretary. ................................................................... 21

Conclusion ...........................................................................25

Certificate of Service ...............................................................26

Certificate of Compliance ........................................................26

**Cases:**

*In re Abbott*,
   956 F.3d 696 (5th Cir. 2020) ...................................................24

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008) ...............................................................7

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ............................................................. 11

*Brnovich v. Democratic Nat'l Comm.*,
   594 U.S. 647 (2021) .........................................................13, 16

*Buckley v. Am. Const. L. Found., Inc.*,
   525 U.S. 182 (1999) .........................................................12, 13

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ............................................................. 11

*Burson v. Freeman*,
   504 U.S. 191 (1992) .............................1, 11, 12, 14, 15, 16, 17, 18, 20

*Citizens United v. FEC*,
   558 U.S. 310 (2010) .........................................................12, 13

*City of Austin v. Paxton*,
   943 F.3d 993 (5th Cir. 2019) ...................................................23

*DIRECTV, Inc. v. Budden*,
   420 F.3d 521 (5th Cir. 2005) ....................................................7

*Doe I v. Landry*,
   909 F.3d 99 (5th Cir. 2018) ................................................. 5, 10

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
   314 U.S. 95 (1941) ................................................................7

*Gonzales v. Carhart*,
   550 U.S. 124 (2007) ..............................................................8

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) ...................................................22

*Holder v. Humanitarian L. Project.*,
   561 U.S. 1 (2010) .................................................................4

*Home Depot, Inc. v. Guste*,
   773 F.2d 616 (5th Cir. 1985) ....................................................3

*Jaster v. Comet II Const., Inc.*,
   438 S.W.3d 556 (Tex. 2014) ....................................................10

*Kolender v. Lawson*,
461 U.S. 352 (1983) ..............................................................4

*La Union Del Pueblo Entero v. Abbott*,
119 F.4th 404 (5th Cir. 2024) ........................................ 21

*League of Women Voters of Fla. v. Fla. Sec'y of State*,
66 F.4th 905 (11th Cir. 2023) ...........................................9

*Lewis v. Scott*,
28 F.4th 659 (5th Cir. 2022) .........................................22

*Lichtenstein v. Hargett*,
83 F.4th 575 (6th Cir. 2023) ........................................ 12

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ..............................................................7

*McClelland v. Katy ISD*,
63 F.4th 996 (5th Cir. 2023) ...........................................3

*McFadden v. United States*,
576 U.S. 186 (2015) ..............................................................8

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) .......................................................12, 13

*Meyer v. Grant*,
486 U.S. 414 (1988) .......................................................12, 13

*Mi Familia Vota v. Ogg*,
105 F.4th 313 (5th Cir. 2024) ......................................22

*Minn. Voters All. v. Mansky*,
585 U.S. 1 (2018) ........................... 1, 12, 13, 15, 16, 17

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ................................................... 20, 21

*Ostrewich v. Tatum*,
72 F.4th 94 (5th Cir. 2023) ............................................14

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
460 U.S. 37 (1983) ............................................................. 12

*Richardson v. Tex. Sec'y of State*,
978 F.3d 220 (5th Cir. 2020) .....................................1, 16

*Roark & Hardee LP v. City of Austin*,
522 F.3d 533 (5th Cir. 2008) ................................. 3, 4, 5

*Rose v. Locke*,
423 U.S. 48 (1975) ..............................................................8

*Smith v. Goguen*,
415 U.S. 566 (1974) ..............................................................9

*State v. Stephens*,
    663 S.W.3d 45 (Tex. Crim. App. 2021) ...........................................23

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ...................................................................4

*Tex. All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ....................................................22

*Tex. Democratic Party v. Hughs*,
    860 F. App'x 874 (5th Cir. 2021) ............................................22

*Torres v. Tex. Dep't Pub. Safety*,
    597 U.S. 580 (2022) .................................................................24

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022) ..................................................22

*United States v. Anderton*,
    901 F.3d 278 (5th Cir. 2018)....................................................4-5

*United States v. Hansen*,
    599 U.S. 762 (2023) ....................................................3, 12, 21

*United States v. Hughes*,
    914 F.3d 947 (5th Cir. 2019)......................................................7

*United States v. Williams*,
    553 U.S. 285 (2008) ......................................................5, 11, 21

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) (en banc) .................................1, 16

*Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982) ..............................................................3, 9

*Vote.Org v. Callanen*,
    89 F.4th 459 (5th Cir. 2023) ....................................................16

*VoteAmerica v. Schwab*,
    121 F.4th 822 (10th Cir. 2024) ...........................................12, 13

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008).............................................................2, 3

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) ............................................................22, 24

*Willey v. Harris Cnty. Dist. Att'y*,
    27 F.4th 1125 (5th Cir. 2022) ..................................................18

*Williams-Yulee v. Fla. Bar*,
    575 U.S. 433 (2015) .................................................................18

*Willy v. Admin. Rev. Bd.*,
    423 F.3d 483 (5th Cir. 2005) ...................................................24

**Statutes:**

Tex. Elec. Code:

 § 64.012(a)(4) ........................................................................... 19

 § 64.036(a)(3) ........................................................................... 19

 § 276.013(a) ....................................................................... 19, 20

 § 276.015............................ 1, 2, 3, 4, 5, 6, 12, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24

 § 276.015(a)(1) ....................................................................... 6, 8

 § 276.015(a)(2) ....................................................................... 9, 15

 § 276.015(b) ............................................................................. 5, 9

 § 276.015(c) ................................................................................. 5

 § 276.015(e)(2) ............................................................................ 17

 § 276.015(e)(3) ..................................................................... 10, 18

 § 276.015(f) ................................................................................. 21

Tex. Gov't Code:

 § 311.005(13) ............................................................................... 7

 § 402.028(b) ............................................................................... 23

Tex. Penal Code § 6.02(c) ......................................................... 9

**Other Authorities:**

Black's Law Dictionary (11th ed. 2019) ................................. 6, 9, 10

Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ................................... 10

Report of the Comm'n on Fed. Election Reform, *Building Confidence in U.S. Elections* (2005) ................................ 16

Webster's Third New International Dictionary Unabridged (2002 ed.)................ 10

# Introduction

S.B. 1's paid vote-harvesting ban "protect[s] voters from confusion and undue influence" caused by exposure to partisan advocacy while filling out their mail-in ballots. *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality op.). That protection is especially important for voters casting mail-in ballots because, "'[t]he potential and reality of fraud is much greater in the mail-in ballot context than with in-person voting.'" *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 239 (5th Cir. 2020) (quoting *Veasey v. Abbott*, 830 F.3d 216, 239 (5th Cir. 2016) (en banc)). So too is the potential for voter harassment without election officials present to enforce the "campaign-free zone outside the polls" that all 50 States have deemed "'necessary' to secure the advantages of the secret ballot and protect the right to vote." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 14 (2018) (quoting *Burson*, 504 U.S. at 206).

The district court erred thrice over by permanently enjoining the Secretary of State and the Attorney General from enforcing section 7.04, and Plaintiffs' briefing, which repeatedly misconstrues plain statutory text in an effort to hypothesize farfetched and unrealistic applications of the statute, underscores these errors.

*First*, the district court erred in finding section 7.04 unconstitutionally vague on its face. A *facial* vagueness challenge requires a plaintiff to prove that a statute is unconstitutional in all of its applications, but Plaintiffs cannot meet this daunting standard by resorting to extreme and fanciful edge-case hypotheticals. Even if they could, nothing about the statutory terms "compensation or other benefit" and "physical presence" poses a vagueness problem when viewed in the light of those terms' ordinary meanings and when considering the statute's scienter requirements.

*Second*, section 7.04 complies with the First Amendment. Because section 7.04's paid-vote-harvesting ban is a reasonable extension of longstanding—and constitutionally sound—electioneering rules from the in-person context to the mail-ballot context, it is not subject to strict scrutiny. But even under heightened scrutiny, section 7.04 would pass muster because it is neither overinclusive nor underinclusive, and it advances the State's compelling interests in preventing voter intimidation and election fraud in the mail-in balloting context through the least restrictive means. And at minimum, Plaintiffs' *facial* overbreadth challenge must fail because, when section 7.04 is properly construed, they cannot show that a substantial number of its applications are unconstitutional, judged in relation to its legitimate sweep.

*Third*, because only district attorneys enforce section 7.04's criminal-law prohibition, the court lacked jurisdiction to enjoin the Secretary and Attorney General. Plaintiffs cannot alter that conclusion by pointing to referrals, investigations, and deputizations, which do not constitute enforcement under this Court's precedent.

## ARGUMENT

## I.  S.B. 1's Paid-Vote-Harvesting Ban Is Not Unconstitutionally Vague.

### A.  Plaintiffs' pre-enforcement facial challenge is deficient.

At the outset, Plaintiffs' *facial* vagueness challenge falters. "Facial challenges are disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). Such "[c]laims of facial invalidity often rest on speculation" and therefore "raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Id.* (citation omitted). Pre-enforcement review of facial

vagueness challenges, in particular, are "often difficult, perhaps impossible, because facts are generally scarce." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 547 (5th Cir. 2008). And "[t]his circuit's precedent instructs that a facial challenge may only be sustained 'if the enactment is impermissibly vague in all of its applications.'" *McClelland v. Katy ISD*, 63 F.4th 996, 1013 (5th Cir. 2023) (quoting *Home Depot, Inc. v. Guste*, 773 F.2d 616, 627 (5th Cir. 1985)). Moreover, unlike in the overbreadth context, a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982).

As the State Defendants have shown, Plaintiffs cannot meet these daunting standards because the core prohibition of section 7.04 is clear and narrow, forbidding paid activists to "try to influence a voter to vote for a candidate or cause *while* that voter is holding or filling out a mail ballot." Tex.Br.16-17; *see also* ROA.40424-27. Plaintiffs do not express any confusion about this core prohibition but instead retreat entirely to uncertainty about "[un]realistic" and "fanciful" hypothesized applications of the law. *United States v. Hansen*, 599 U.S. 762, 770 (2023); *see* Tex.Br.16-17. But this argument flouts the principle that a court must "examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates*, 455 U.S. at 495. And because Plaintiffs have not shown how anything they wish to do falls within the properly limited scope of section 7.04, it is not unconstitutionally vague as to them. Plaintiffs make three rejoinders, but none has merit.

*First*, the OCA Plaintiffs argue (at 46) that their facial vagueness challenge can succeed because they need "not wait for an actual arrest or prosecution to challenge

a law that chills their First Amendment rights." Yet this argument confuses the requirements to establish *standing* to bring a pre-enforcement challenge, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-67 (2014), with the standards that govern the *merits* of their facial vagueness claim, *see Roark*, 522 F.3d at 548-49.

*Second*, the OCA Plaintiffs contend (at 46-47) that they need not meet the "vague-in-all-its-applications" standard when First Amendment conduct is implicated but instead need only show that section 7.04 "reaches a substantial amount of constitutionally protected conduct." But this "discussion of vagueness" improperly "incorporate[s] elements of First Amendment overbreadth doctrine." *Holder v. Humanitarian L. Project.*, 561 U.S. 1, 19 (2010). And the Supreme Court's "precedents make clear that a [Fourteenth] Amendment vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." *Id.* at 20. "Otherwise, the doctrines would be substantially redundant." *Id.*

*Finally*, the LUPE Plaintiffs point to *Holder* and *Kolender v. Lawson*, 461 U.S. 352 (1983), to support their argument that "[a] pre-enforcement facial challenge on vagueness grounds is proper." LUPE.Br.52. Yet *Holder* concerned an "*as applied*" vagueness challenge that the Ninth Circuit improperly treated as a facial one. *See* 561 U.S. at 18-19 (emphasis added). And *Kolender* involved a post-enforcement facial vagueness challenge, not a pre-enforcement one. *See* 461 U.S. at 354 & n.2.

## B. Plaintiffs' vagueness claim fails on the merits.

Even if the vagueness claim could proceed based entirely on speculative hypotheticals, Plaintiffs' void-for-vagueness claim would fail on the merits. "Courts must indulge a presumption of constitutionality." *United States v. Anderton*, 901 F.3d 278,

283 (5th Cir. 2018). And a law will be declared void for vagueness only if its meaning specifies "no standard of conduct at all," *Roark*, 522 F.3d at 554-55, or depends upon "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings," *United States v. Williams*, 553 U.S. 285, 306 (2008). "[P]erfect clarity and precise guidance are not required," *Doe I v. Landry*, 909 F.3d 99, 117-18 (5th Cir. 2018) (citation omitted), and this Court has "rejected that a law 'must delineate the exact actions a [person] would have to take to avoid liability,'" *id.* (quoting *Roark*, 522 F.3d at 552). Instead, "[w]hat is required . . . is that the statute be written in such a manner that 'ordinary people' can understand what is prohibited." *Id.* at 118 (quoting *Roark*, 522 F.3d at 552). And "the common understanding of [a] term supplies a clear enough standard." *Id.* at 117. The LUPE and OCA Plaintiffs did not meet these high standards as to the statutory terms "compensation," "benefit," and "physical presence."

### 1. The terms "compensation" and "benefit" are not unconstitutionally vague.

**a.** Section 7.04 makes it unlawful to solicit or provide vote-harvesting services "in exchange for compensation or other benefit." Tex. Elec. Code § 276.015(b); *id.* § 276.015(c). As the State Defendants have explained (at 19), under the statute's plain meaning, this language "refer[s] to some form of consideration offered in return for work." One category of consideration, "compensation," is monetary: "[r]emuneration and other benefits received in return for services rendered; esp., salary or wage." *Compensation*, Black's Law Dictionary 354 (11th ed. 2019). The phrase "other benefit" captures nonmonetary consideration, and it is statutorily

defined as "anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion." Tex. Elec. Code § 276.015(a)(1). Because each statutory category covers discrete things, no duplicativeness problem is in view. *Contra* OCA.Br.39.

Contrary to Plaintiffs' repeated assertions, "tokens of appreciation," such "refreshments, t-shirts, pens, [and] gas cards" that are provided to volunteers, LUPE.Br.7 (quoting ROA.37512), do not qualify under either category. *Contra* LUPE.Br.50; OCA.Br.39; *cf.* LULAC.Br.41 (questioning whether providing "modest gifts" to volunteers violates section 7.04). For one thing, they are more akin to a "gift"—the "voluntary transfer of property to another without compensation"—than to "compensation." Tex.Br.19-20 (citing *Gift*, Black's, *supra*, at 831). For another, they cannot be considered "other benefits" because, applying the *noscitur a sociis* canon of construction, such gifts are decidedly unlike offers of employment, political favors, or official acts of discretion. *See* Tex.Br. 19-20. And in all events, section 7.04's scienter requirements further cabin the reach of section 7.04 and render many of Plaintiffs' hypothesized applications implausible. *See* Tex.Br.22-25.

**b.** The OCA and LUPE Plaintiffs resist this straightforward statutory construction in four primary ways, but none has merit. *First*, the OCA Plaintiffs point to Texas's Code Construction Act and insist (at 40) that use of the word "including" within the definition of "other benefit" dramatically enlarges the scope of that definition. *See also* LUPE.Br.21. Not so. That Act merely explains that the term "including" is a term "of enlargement and not of limitation or exclusive enumeration, and … does not create a presumption that components not expressed are excluded."

Tex. Gov't Code § 311.005(13). The State Defendants have never disputed that proposition but instead have merely insisted (at 20) that the scope of any such enlargement is limited by the words following "including" to "other benefits" of the same type. That is in accord with this Court's precedent, which explains that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 527 (5th Cir. 2005) (quoting *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941)); *see also United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019); *Massachusetts v. EPA*, 549 U.S. 497, 556 (2007) (Scalia, J., dissenting).

*Second*, citing *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008), the OCA Plaintiffs argue (at 40) that the word "anything" in the statutory definition of "other benefit" disables the *noscitur a sociis* canon of construction. But in *Ali* the Supreme Court refused to apply that canon to limit the scope of the word "any" because such a limitation would be inconsistent with "the overall statutory context" that indicated Congress sought a broad application of the relevant provision. *Id.* at 226. Here, nothing in the statutory context of S.B. 1 indicates that the Texas Legislature sought to restrict the provision of food, water, or other tokens of appreciation to volunteer canvassers. The statutory text that limits the term "other benefits" to benefits similar to "a promise or offer of employment, a political favor, or an official act of discretion," Tex. Elec. Code § 276.015(a)(1), indicates to the contrary.

*Third*, both the OCA Plaintiffs (at 41) and the LUPE Plaintiffs (at 21) assert that the vagueness of the term "compensation or other benefit" is evident because a representative from OAG's Election Integrity Division testified that he would

recommend "reviewing the case law" before answering whether a meal, bus fare, or gift bag would constitute compensation. *See* ROA.42503. But as the State Defendants explained (at 22), the fact that a "trained lawyer[] may find it necessary to consult legal dictionaries, treatises, and judicial opinions before [he] may say with any certainty what some statutes may compel or forbid" does not render a statute unconstitutionally vague. *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam). The OCA Plaintiffs respond that this observation was limited to "statutes that do not 'threaten[] a fundamental right such as freedom of speech.'" OCA.Br.41 n.8 (quoting *Rose*, 423 U.S. at 50 n.3). But that footnote in *Rose* did not limit the relevant language quoted above; instead, it was merely a qualification of the Court's general statement about what the Due Process Clause requires in terms of constitutionally adequate notice. *See* 423 U.S. at 50 n.3.

*Fourth*, both the OCA Plaintiffs (at 45-46) and the LUPE Plaintiffs (at 50) briefly argue that section 7.04's scienter requirements do not ameliorate any potential vagueness. Yet, they have no answer for the Supreme Court's repeated recognition that scienter requirements "alleviate vagueness concerns," *McFadden v. United States*, 576 U.S. 186, 197 (2015) (cleaned up) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007)), by improving "the adequacy of notice to the complainant that his conduct is proscribed," *Hoffman Estates*, 455 U.S. at 499. This rule applies even in the "overbreadth" context when the challenged law "reaches a substantial amount of constitutionally protected conduct," *id.* at 494, which section 7.04 does not, *see infra* at 20-21.

The LUPE Plaintiffs cite (at 50) *League of Women Voters of Florida v. Florida Secretary of State*, 66 F.4th 905, 947-48 (11th Cir. 2023), for the proposition that a court will not "impose a *mens rea* requirement" to save a statute from vagueness. Yet here, no judicially-imposed *mens rea* would be required, as section 7.04 itself contains a *mens rea* of "knowing" in two sections, Tex. Elec. Code § 276.015(a)(2), (b)), and even if it did not, Texas Penal Code § 6.02(c) would require, at a minimum, a *mens rea* of recklessness. *See* Tex.Br.23. The OCA Plaintiffs' citation (at 45) to *Smith v. Goguen*, 415 U.S. 566, 580 (1974), is even further afield. There the Supreme Court held that inclusion of a *mens rea* requirement in an ordinance criminalizing "treat[ing] contemptuously" the United States flag did not cure the vagueness problem because the ordinance lacked "any standard for defining contemptuous treatment." *Id.* at 579-80. But here, the prohibited conduct—"vote harvesting services"—is carefully defined. *See* Tex. Elec. Code § 276.015(a)(2).

### 2. The "physical presence" requirement is not unconstitutionally vague.

Even less meritorious is Plaintiffs' argument that the statutory term "physical presence" is unconstitutionally vague. As the State Defendants previously explained (at 26-28), the plain meaning of the term "presence" is "[c]lose physical proximity coupled with awareness." *Presence*, Black's, *supra* at 1432; *id.* (defining "present" as "in attendance; not elsewhere"). And "physical," in this context is generally understood to mean "of, relating to, or involving someone's body." *Id.* at 1386. Thus, taken together, the phrase "physical presence" connotes an in-person, vote-harvesting interaction where the voter's mail-in ballot is in close proximity. Tex.Br.25-28. Statutory context, including the statute's requirement that the vote-harvesting

interaction "directly involve an official ballot or ballot by mail," Tex. Elec. Code § 276.015(e)(3), further confirms the accuracy of this proximity-based definition. Even the OCA Plaintiffs' own definition (at 43)—which includes "the part of space within one's immediate vicinity"—is in accord.

Accordingly, there is no merit to the OCA Plaintiffs' statement (at 43) that the term "physical presence" is "hopelessly indeterminate," or that a canvasser might violate section 7.04 when the ballot is "anywhere" near a voter, including if it is merely "visible." "Dictionaries consistently define," *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014), "presence" in terms of close physical "proximity," not merely eyeshot. *See Presence* Black's, *supra* at 1432; Merriam-Webster's Collegiate Dictionary 982 (11th ed. 2003) ("the part of space within one's immediate vicinity"); Webster's Third New International Dictionary Unabridged 1793 (2002 ed.) ("the vicinity of or the area immediately near one: the place in front of or around a person").

The chief complaint from the OCA Plaintiffs (at 43-45) and LUPE Plaintiffs (at 49-50), then, is that section 7.04 does not delineate a precise, measurable distance for what constitutes "physical presence." But such razor precision is not required: again, "perfect clarity and precise guidance are not required" for a statute to survive a vagueness challenge. *Doe I*, 909 F.3d at 117 (citation omitted). And "the mere fact that close cases can be envisioned" does not "render[] a statute vague" because "[c]lose cases can be imagined under virtually any statute." *Williams*, 553 U.S. at 305-06.

## II. S.B. 1's Paid-Vote-Harvesting Ban Complies with the First Amendment.

### A. Section 7.04 is not subject to strict scrutiny.

While content-based restrictions on speech are typically subject to strict scrutiny, different rules apply in the unique context of elections, which require courts to "accommodate[e]" "the right to engage in political discourse with the right to vote." *Burson*, 504 U.S. at 198; *see* Tex.Br.29-31. After all, "to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest . . . would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).

Consequently, courts apply a "more flexible standard" when assessing "the propriety of [an] . . . election law" that varies based upon the severity of the burden on First Amendment rights. *Id.* at 434. Severe restrictions on such rights are reviewed under strict scrutiny, but when a state election law imposes only "reasonable, nondiscriminatory restrictions," on First Amendment rights, "'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). This Court has previously applied the lower *Anderson-Burdick* standard to canvassing restrictions, and this appeal should be no different. *See* Tex.Br.30-31.

Plaintiffs resist any lower standard of scrutiny in two ways. *First*, Plaintiffs point to *Burson* and *Mansky* to argue that strict scrutiny is the appropriate standard. LUPE.Br.37; LULAC.Br.24. But those two cases "applied 'public forum' analysis"

to assess "laws restricting speech in and around polling places." *Lichtenstein v. Hargett*, 83 F.4th 575, 593 (6th Cir. 2023); *see also VoteAmerica v. Schwab*, 121 F.4th 822, 842 (10th Cir. 2024). Because it involved restrictions on speech in public fora, *Burson* applied strict scrutiny and *upheld* a law regulating electioneering within 100 feet of polling places. 504 U.S. at 198, 208-11. But *Mansky*, which involved *non*-public forums, applied a lower form of scrutiny that inquired whether restrictions on electioneering *inside* a polling place were "reasonable in light of the purpose served by the forum." 585 U.S. at 13. Applying forum analysis here would undermine Plaintiffs' bid for strict scrutiny. After all, in the context of this facial challenge, a "substantial amount," of section 7.04's applications, *Hansen*, 599 U.S. at 770, are likely to occur on *private property*—such as a voter's doorstep—which is decidedly unlike a public forum, *see Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983), and thus not subject to the heightened review that is attendant to speech restrictions in such forums.

*Second*, Plaintiffs point to several cases[1] to argue that strict scrutiny applies because section 7.04 restricts "core political speech." OCA.Br.22; LUPE.Br.37-38; LULAC.Br.21-23. But each of these cases involved broad restrictions on political speech that were *not* limited to locations proximate to a polling place or, as here, to the voter and her ballot. For example, in *Meyer* and *Buckley*, the laws at issue were subject to strict scrutiny because they "entirely foreclose[d] a channel of

---

[1] *Citizens United v. FEC*, 558 U.S. 310 (2010), *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995); *Meyer v. Grant*, 486 U.S. 414 (1988).

communication" and thus deprived certain speakers of access to "the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication." *Schwab*, 121 F.4th at 844 (citations omitted). The same was true of the anonymous-campaign-literature ban in *McIntyre*, 514 U.S. at 338 & n.3, and of the ban on electioneering communications within 60 days of a general election or 30 days of a primary for corporations and unions in *Citizens United*, 558 U.S. at 320-21.

But here, section 7.04 does not "entirely foreclose[]," *Schwab*, 121 F.4th at 844, paid canvassers from speaking with voters about their preferred candidates or measures; it merely requires them to do so outside the presence of the ballot. In those narrow circumstances, different standards apply in the light of the State's compelling interest in "secur[ing] the advantages of the secret ballot and protect[ing] the right to vote." *Mansky*, 585 U.S. at 14.

## B. Section 7.04 survives any level of constitutional scrutiny.

Even if heightened scrutiny applied, section 7.04's paid vote-harvesting ban would survive. *See* Tex.Br.31-40. Plaintiffs do not dispute the State's compelling interests and nor could they. Even the district court acknowledged that States "have an 'important state interest' in '[e]nsuring that every vote is cast freely.'" ROA.37562 (quoting *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021)). And the Supreme Court has held that the fact that a "campaign-free zone" serves "compelling interests" is "obvious[]" because it "protect[s] the right[s] of [a State's] citizens to vote freely for the candidates of their choice" and "to vote in an election conducted with integrity and reliability." *Burson*, 504 U.S. at 198-99. After

all, Texas "has a compelling interest in protecting voters from confusion and undue influence." *Id.* at 199.

Plaintiffs instead make three broad arguments. First, they furiously resist the applicability of *Burson* and the conclusion that section 7.04's paid vote-harvesting ban is the functional equivalent of electioneering regulations in polling places that have long been upheld as constitutional. *E.g.*, *Ostrewich v. Tatum*, 72 F.4th 94, 107 (5th Cir. 2023). Second, they argue that section 7.04 is not properly tailored because it is both overinclusive and underinclusive. Third, they fall back on the overbreadth doctrine. None of these arguments can save their constitutional challenge.

### 1. Under *Burson*, section 7.04 is akin to a polling-place restriction that passes constitutional scrutiny.

In *Burson*, the Supreme Court applied strict scrutiny and yet upheld an electioneering law prohibiting campaigning within a 100-foot radius of a polling place. 504 U.S. at 193-94. The logic of *Burson* applies equally—and *a fortiori*—to the mail-in-ballot context, where the ballot is far from election officials and where the risk of fraud, intimidation, and coercion is even greater than at the polling place. Plaintiffs launch two broad attacks on the applicability of *Burson*, but neither has merit.

*First*, Plaintiffs argue that *Burson* is distinguishable because the law at issue there applied to a geographically limited space (100 feet outside of a polling place) during a temporally limited time (election day), but in contrast section 7.04 turns "the entirety of Texas into a polling place" "during the entire election season." LUPE.Br.34; LULAC.Br.49-50. Yet *Burson*'s analysis did not turn on the specific geographic or temporal limitations of the Tennessee law but instead on the broader

principle that "some restricted zone" around the voter "is necessary in order to serve the States' compelling interests in preventing voter intimidation and election fraud." 504 U.S. at 206. The Court did "not view the question whether the 100-foot boundary line could be somewhat tighter as a question of constitutional dimension." *Id.* at 210 (citation omitted).

True, the Court stated that "[a]t some measurable distance from the polls, of course, governmental regulation of vote solicitation could effectively become an impermissible burden." *Id.* But with the advent of mail-in voting, the polls have been brought to individual voters such that the voter's "distance from the polls" is only as far as her distance from the ballot. Section 7.04 reflects this commonsense distinction by limiting its paid-vote-harvesting ban to circumstances when the vote-harvester and voter are "in the physical presence" of the ballot. Tex. Elec. Code § 276.015(a)(2). Under Plaintiffs' contrary geographically based rule, no electioneering restrictions would be possible in the context of mail-in voting.

It is no answer for LUPE to say (at 35) that the State's interest in creating "an island of calm in which voters can peacefully contemplate their choices," *Mansky*, 585 U.S. at 15, is diminished in the mail-in-voting context because "mail voters who encounter unwelcome canvassing activities can simply put their ballots away and vote some other time." The same could have been said in *Burson* regarding voters who arrived at a polling place to find electioneering activity occurring within 100 feet of the entrance. Ultimately, "[c]asting a vote is a weighty civic act"—"a time for choosing, not campaigning." *Mansky*, 585 U.S. at 15. And just as a State "may

reasonably decide that the interior of the polling place should reflect that distinction," *id.*, so too may a state decide those interests apply equally when a voter votes by mail.

*Second*, Plaintiffs attempt to distinguish *Burson* by arguing that voting by mail lacks the same long history of intimidation and coercion as in-person voting. LULAC.Br.48-49; LUPE.Br.34-35; OCA.Br.34. Given that voting by mail is a recent phenomenon, it is hardly surprising that there is no long trail of coercion and intimidation stretching back to the "colonial period." *Burson*, 504 U.S. at 200. That is doubly so because mail-in ballots are, by definition, "completed far from any government office or employee," *Vote.Org v. Callanen*, 89 F.4th 459, 489 (5th Cir. 2023), and various forms of fraud, including "[v]ote buying schemes[,] are far more difficult to detect when citizens vote by mail," *Brnovich*, 594 U.S. at 685 (quoting Report of the Comm'n on Fed. Election Reform, *Building Confidence in U.S. Elections* 46 (2005)).

But *Burson*'s history, which "demonstrates the necessity of restricted areas in or around polling places," 504 U.S. at 200, is no less relevant in this context. After all, this Court has repeatedly recognized that "the potential and reality of fraud is *much greater* in the mail-in ballot context than with in-person voting." *Richardson*, 978 F.3d at 239 (quoting *Veasey*, 830 F.3d at 239). That means the "persistent battle against two evils: voter intimidation and election fraud," *Burson*, 504 U.S. at 206, is equally present in the vote-by-mail context. And there is no reason that the "same solution"—"a secret ballot secured in part by a restricted zone around the voting compartments"—would not apply here. *Id.*

### 2. Section 7.04 is properly tailored.

Because strict scrutiny does not apply, section 7.04 need only "draw a reasonable line" regarding what electioneering activity is prohibited and what is not through the application of "objective, workable standards." *Mansky*, 585 U.S. at 16, 21. It does so: As the State Defendants explained (at 35), the statute preserves the ability of organizations to pay canvassers to engage in legitimate voter outreach, while at the same time ensuring that voters are not harassed, harangued, or pressured while completing their mail-in ballots. *See* ROA.40425. This falls comfortably within the scope of what *Burson* upheld as constitutional at polling places. Tex.Br.35-36. And for similar reasons, even if strict scrutiny applied (like in *Burson*), section 7.04 would survive because it is neither overinclusive or underinclusive and advances the State's compelling interests through the least restrictive means. Tex.Br.36-38. Plaintiffs contest this tailoring analysis in three ways.

*First*, Plaintiffs argue that section 7.04 is significantly overinclusive because its scope is not limited to prohibiting vote-harvesting while a voter is imminently, or in the process of, filling out a ballot but may ensnare canvassers engaged in political advocacy when a ballot is simply in the general area. LUPE.Br.24-27; OCA.Br.17-20; LULAC.Br.44-45. Seizing on the disjunctive "or" in the statutory provision that makes section 7.04 applicable during a vote-harvesting interaction "in the presence of the ballot *or* during the voting process," Tex. Elec. Code § 276.015(e)(2), Plaintiffs argue that the phrase "during the voting process" decouples the statute from any nexus to execution of a mail-in ballot itself. LUPE.Br.22; OCA.Br.18; LULAC.Br.45-46. But this argument ignores the statute's further requirement that any

prohibited vote-harvesting interaction "directly involve" a mail-in ballot. Tex. Elec. Code § 276.015(e)(3). The OCA Plaintiffs resist (at 18-19) this limiting language, but even their own definitions—defining "directly" as "in immediate physical contact" and "involve" as "to have within or as part of itself"—demonstrate that section 276.015(e)(3) limits the statute's application to vote-harvesting interactions that actively involve the ballot itself, not canvassing activities in which a ballot happens to be laying passively within the vicinity. *See* ROA.40424-27.

*Second*, Plaintiffs argue that section 7.04 is underinclusive because it restricts paid vote-harvesters but not unpaid ones. LUPE.Br.27-30; LULAC.Br.42-43; OCA.Br.30-31. But a challenger cannot establish underinclusiveness by "point[ing] out that a state did not 'address all aspects of a problem in one fell swoop.'" *Willey v. Harris Cnty. Dist. Att'y*, 27 F.4th 1125, 1134 (5th Cir. 2022) (quoting *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015)). Indeed, in *Burson* the Supreme Court upheld a similar electioneering restriction at the polling place against charges of underinclusiveness—even though it restricted only electioneering within 100 feet of the polling place but not "other types of speech, such as charitable and commercial solicitation or exit polling." 504 U.S. at 207. As the Court explained, "the failure to regulate all speech" does not "render[] the statute fatally underinclusive." *Id.* Instead, a court "ask[s] whether the restriction is riddled with exceptions or so woefully underinclusive as to render belief in [its stated] purpose a challenge to the credulous." *Willey*, 27 F.4th at 1134 (citations omitted). Plaintiffs cannot, and did not, make such a showing.

The LUPE Plaintiffs respond (at 28-29) that no evidence supports the notion that paid vote-harvesters pose a more acute risk than unpaid ones. But Jonathan White, an OAG attorney who formerly prosecuted election crimes, testified that "vote harvesting" is "typically" done by "campaign workers [who] are paid operatives." ROA.42425; *see also* ROA.42430-31 (defining vote-harvesting as being done by "paid operatives"); ROA.42944 (same from Keith Ingram, the former Director of the Secretary of State's Elections Division). And he stated that "[a]ll of the investigations in [his] cases . . . dealt with *paid* vote harvesters." ROA.42510. Likewise, the record contains evidence of about how *incentives* for paid operatives led to particular problems, albeit in the context of voter registrars. ROA.39616. This testimony about the incentives of compensated services is no less relevant in the vote-harvesting context.

*Third*, Plaintiffs argue that section 7.04 is not the least restrictive means of meeting the State's compelling interests because other statutes proscribe intentionally or knowingly "influenc[ing] the independent exercise of the vote or another in the presence of the ballot or during the voting process," Tex. Elec. Code § 276.013(a), and prevent voter assistants from "suggest[ing] by word, sign, or gesture how the voter should vote," *id.* § 64.036(a)(3); *cf. id.* § 64.012(a)(4). LUPE.Br.30-33; OCA.Br.26-27, 31-32; LULAC.Br.37-41. Yet as the State Defendants have explained (at 37-38), these laws regulate different conduct than the vote-harvesting ban. The relevant portions of sections 64.036 and 64.012 focus specifically on the conduct of voter-assistors, not canvassers. And section 276.013(a) is aimed at a more discrete subset of

election fraud that involves actually "altering the ballot" itself or "causing a ballot to not reflect the intent of the voter." Tex. Elec. Code § 276.013(a).

Regardless, and even if they were not so limited, these alternative "laws fall short of serving [the] State's compelling interest because they deal with only the most blatant and specific attempts to impede elections." *Burson*, 504 U.S. at 207. But the State has an interest in curbing these "less than blatant acts," too, in order to "prevent[] voter intimidation and election fraud." *Id.* at 206. That is precisely what section 7.04 does.

### 3. At minimum, Plaintiffs' *facial* overbreadth challenge fails.

At a minimum, Plaintiffs' First Amendment claim must fail because they cannot show section 7.04 is *facially* overbroad, which would require demonstrating that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (citation omitted). As the State Defendants explained (at 39-40), nothing in the record supports the notion that section 7.04 has a substantial number of unconstitutional applications, and Plaintiffs cannot support such an argument by resort to unrealistic and fanciful hypotheticals that contort the statutory text.

Plaintiffs' response is much of the same. They first misconstrue the statutory text—including by ignoring the plain meaning of the words "compensation or other benefit" and "physical presence," *supra* at 5-10, and sidestepping the statute's limiting language and scienter requirements, *supra* at 9, 17-18—in an effort to broaden the sweep of the statute into potentially unconstitutional territory. That means they falter at the first step of the facial analysis: "assess[ing] the state laws' scope."

*Moody*, 603 U.S. at 724. Undeterred, Plaintiffs move on to the second step of the analysis by loading the dice: hypothesizing applications of the law that oscillate between close cases, *Williams*, 553 U.S. at 303, and fanciful and unrealistic, *Hansen*, 599 U.S. at 770. *See, e.g.*, OCA.Br.15-17; LUPE.Br.45-46; LULAC.Br.41, 47. But neither category suffices to sustain a facial overbreadth challenge. *See Hansen*, 599 U.S. at 770; *Williams*, 535 U.S. at 303, 305-06.

## III. The District Court Lacked Jurisdiction to Enjoin the Attorney General and the Secretary.

"Neither the Secretary of State nor the Attorney General enforces S.B. 1," *La Union Del Pueblo Entero v. Abbott*, 119 F.4th 404, 409 (5th Cir. 2024), and particularly section 7.04, which is a criminal-law provision enforceable by district attorneys, *see* Tex. Elec. Code § 276.015(f). That simple fact has jurisdictional consequences on two planes. For one, it means that the Attorney General and the Secretary lack the requisite "enforcement connection" to section 7.04 such that Plaintiffs lack a route around their sovereign immunity. Tex.Br.41-46. For another, it means that Plaintiffs' injuries are not "fairly traceable" to either of these State Defendants such that the Court lacks Article III jurisdiction. Tex.Br.46-47. Viewed through either jurisdictional lens, the district court's injunction of the Secretary and Attorney General was improper. Plaintiffs make three overarching attempts to salvage jurisdiction— pointing to referrals, investigations, and deputizations—but none does.

*First*, the LUPE Plaintiffs argue (at 55, 59) that the Secretary has the requisite connection to the enforcement of section 7.04 for purposes of both sovereign immunity and standing because she receives information about potential election

crimes and refers them to the Attorney General (or district attorneys). But the mere referral of information about violations of law "does not compel or constrain anyone to obey the challenged law," *Tex. All. for Retired Ams. v. Scott* (*TARA*), 28 F.4th 669, 672 (5th Cir. 2022)—only an enforcement action would have that compulsive effect, and the Secretary is not empowered to institute criminal prosecutions. *See Lewis v. Scott*, 28 F.4th 659, 664 (5th Cir. 2022). As a result, the Secretary would be at least one step removed from any hypothetical enforcement of section 7.04 against Plaintiffs. Yet this Court's "case law is clear that it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit," which is the most that Plaintiffs can allege here. *Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 877 (5th Cir. 2021) (per curiam).

*Second*, the LUPE Plaintiffs argue (at 58-59) that the Attorney General enforces section 7.04 because he may conduct investigations into vote-harvesting violations. But as an initial matter, the Court has already rejected this argument within the context of this very litigation, holding that the "ability to *investigate* election code violations . . . does not rise to the level of compulsion or constraint needed" to fit within the *Ex parte Young* exception to sovereign immunity. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 332 (5th Cir. 2024). Even if it had not, nothing about an investigation—without a corresponding demand for compliance or action from Plaintiffs—constitutes "enforcement" because an investigation does not "compel or constrain" Plaintiffs to do anything. *TARA*, 28 F.4th at 672. It is, at most, a precursor to potential enforcement. *See Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1176 (9th Cir. 2022); *Google, Inc. v. Hood*, 822 F.3d 212, 224-26 (5th Cir. 2016).

*Lastly*, the OCA Plaintiffs argue (at 50-53) that, notwithstanding the Texas Court of Criminal Appeals' holding that the Attorney General lacks the unilateral authority under state law to prosecute election crimes, *see State v. Stephens*, 663 S.W.3d 45, 55 (Tex. Crim. App. 2021), he can still enforce the law because he can and does partner with local district attorneys to prosecute election-law crimes.

But an injunction against the *Attorney General* would not aid the Plaintiffs in that scenario because even when a prosecutor requests the Attorney General's assistance, the Attorney General is exercising the *district attorney's* prosecutorial authority, not his own. He is, after all, being "deputize[d] . . . as assistant prosecutor." Tex. Gov't Code § 402.028(b). Plaintiffs need an injunction against the relevant district attorney.

Nor can the OCA Plaintiffs rely on the fact that attorneys within the OAG have been deputized by some district attorneys' offices to assist with the prosecution of election-related crimes post-*Stephens*. OCA.Br.51. That the Attorney General has assisted with prosecutions of "*different* statutes under *different* circumstances" at the request of different prosecutors "does not show that he is likely to do the same here" with respect to enforcing section 7.04 against Plaintiffs. *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). And although Plaintiffs point (at 52) to an October 2024 deputization of an OAG attorney to assist with a section 7.04 prosecution in Frio County, Plaintiffs do not argue that this prosecution was against *them* or one of their members. Thus, it is indeed "[s]peculation" that the Attorney General "might be asked by a[n] [unnamed] local prosecutor to 'assist' in enforcing"

section 7.04 against them or one of their members. *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (citation omitted).

Finally, there is no merit to the OCA Plaintiffs' brief argument (at 54-55) that the Attorney General is "precluded from asserting sovereign immunity" under the "sword and shield doctrine" because he supposedly "invoked the investigative privilege to withhold discovery" about the Frio County case. In the first place, as the OCA Plaintiffs' own authority indicates, the "sword and shield doctrine" applies in the *privilege* context. *See Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 n.63 (5th Cir. 2005). It provides no basis to overcome sovereign *immunity*, which is limited to consent, congressional abrogation, plan-of-the-convention waiver, *Torres v. Tex. Dep't Pub. Safety*, 597 U.S. 580, 587 (2022), and *Ex parte Young*, *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). But even if the sword-and-shield doctrine were applicable, there is no basis to apply it here. The State Defendants did *not* invoke the investigative privilege to "withhold discovery" about the Frio County case. As Plaintiffs note (at 52 & n.11), an OAG attorney was deputized to assist with the prosecution in October *2024*—a full year after the parties *tried* this claim and even after the district court issued the order under review in this appeal. *See* ROA.37504-81.

## Conclusion

The Court should reverse the district court's order and vacate the injunction.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Aaron L. Nielson
Solicitor General

/s/ William F. Cole
William F. Cole
Principal Deputy Solicitor General
William.Cole@oag.texas.gov

Kateland R. Jackson
Assistant Solicitor General

Kathleen T. Hunker
Deputy Chief, Special Litigation Unit

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Meagan Corser
Assistant Attorney General

Counsel for State Defendants-Appellants

## Certificate of Service

On April 8, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ William F. Cole
WILLIAM F. COLE

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,493 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ William F. Cole
WILLIAM F. COLE