# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, DC 20001.2113

TELEPHONE: +1.202.879.3939 • JONESDAY.COM

December 15, 2025

**VIA CM/ECF**

Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Herbert Building
600 S. Maestri Place
New Orleans, LA 70130

Re: <u>*La Unión del Pueblo Entero v. Abbott*, No. 24-50783</u>

Dear Mr. Cayce:

At oral argument, Plaintiff-Appellees unexpectedly challenged Intervenor-Appellants' standing to appeal if State Defendants are dismissed, raising for the first time arguments that are not presented in their briefs. This eleventh-hour gambit is meritless. The Court permitted Intervenor-Appellants to file this Letter in response.

Plaintiff-Appellees' late-breaking challenge to Intervenor-Appellants' standing is especially odd given that the bases for Intervenor-Appellants' standing are "*not unlike the ones claimed by the private plaintiffs to support their arguments over whether they have standing.*" *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 n.3 (5th Cir. 2022) (emphasis added). As this Court recognized in a prior appeal, Plaintiff-Appellees *themselves* ground their standing arguments in the voter-education and turnout services they provide, and the "millions of dollars" they expect to spend on these efforts. *See Id*. (quoting LULAC Texas Complaint). If that interest is enough to get Plaintiff-Appellees into the District Court to seek an injunction, it is certainly enough for Intervenor-Appellants to get into this Court to seek appellate review of that injunction.

In any event, Intervenor-Appellants obviously have standing. "[C]ourts have routinely recognized" that regulated parties have standing to enforce the rules structuring their "competitive environment." *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005); *see Mecinas v. Hobbs*, 30 F.4th 890, 898 (9th Cir. 2022) (recognizing DNC's standing to sue on this basis); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 & n.4 (5th Cir. 2006) (collecting cases). And that is especially so in the electoral context—as this Court has explained, "a political party's interest in a candidate's success is not merely an ideological interest." *Tex. Democratic Party*, 459 F.3d at 587. Victory at the ballot box translates into power in government, and the "threatened loss of that power is still a concrete and particularized injury sufficient for standing purposes." *Id*.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Letter to the Court
*La Unión del Pueblo Entero v. Abbott*, No. 24-50783
December 15, 2025
Page 2

As party organizations that fund and run candidates in Texas elections, Intervenor-Appellants have a clear "competitive interest" in keeping these elections free from ballot harvesting. *Shays*, 414 F.3d at 85. Intervenor-Appellants reject and do not engage in ballot harvesting, and the competitive injury they face if Section 7.04 is enjoined and they are forced to compete against ballot harvesters is therefore self-evident. When a provision like Section 7.04 "reflect[s] a legislative purpose to protect [that] competitive interest," as "injured competitor[s]" Intervenor-Appellants "ha[ve] standing to require compliance with that provision." *Id.* (first alteration in original) (quoting *Hardin v. Ky. Utils. Co.*, 390 U.S. 1, 6 (1968)).

Moreover, competitor standing requires no elaborate showing. It is enough that a political party make a "reasonable assessment" of "how a challenged governmental action affects their capacity to compete politically." *Castro v. Scanlan*, 86 F.4th 947, 958 (1st Cir. 2023) (cleaned up). Courts do "not second-guess" such assessments, *id*. (cleaned up), but even if they did, there would be no basis for doing so here.

Indeed, as Intervenor-Appellants evinced at trial, SB 1—including by "prevent[ing] ballot harvesting"—facilitates "open and equal elections for all voters, including voters who chose to vote for [Republican] candidates." ROA.65815. In fact, "Republican voters are more likely to participate in elections and turn out to vote if they have confidence in the integrity of elections, and SB 1 increases voter confidence in the integrity of elections, including among Republican voters." *Id.* "By facilitating participation in elections by Republican voters, SB 1 enhances the electoral prospects of Republican candidates supported by Intervenor-Defendants." ROA.65815–16. Accordingly, an injunction preventing enforcement of all, or any provision, of SB 1 harms "the electoral prospects of Republican candidates." ROA.65816. This harm to Republican candidates' chances for electoral "success" alone suffices to establish standing. *Tex. Democratic Party*, 459 F.3d at 587.

That an injunction against enforcement of Section 7.04 harms Intervenor-Appellants by decreasing their candidates' prospects of prevailing in elections is no mere hypothetical concern. Races in Texas often are decided by just a few hundred votes, and the outcome of such a race could flip—to the detriment of Intervenor-Appellants and their candidates and voters—if enforcement of Section 7.04 is enjoined and ballot harvesting is permitted in Texas. For example, in 2020, Republican candidate Angie Button Chen prevailed over her Democratic opponent, Brandy Chambers, in the race to represent House District 112 in Dallas County by a mere 222 votes out of more than 69,000 cast, a margin of 0.33%. *See* Dallas County 2020 Unofficial Final Cumulative Results, https://www.dallascountyvotes.org/election-results/historical/november-3-2020-general-and-joint-election/ ("2020 Dallas County Results"). Ms. Chambers, however, received 283 more mail votes than Representative Chen. *See id.*

JONES DAY

Letter to the Court
*La Unión del Pueblo Entero v. Abbott*, No. 24-50783
December 15, 2025
Page 3

An injunction against enforcement of Section 7.04 could change the outcome of a close race such as the 2020 House District 112 race to the detriment of the Republican Party, its candidates, and its voters for two reasons. *First*, such an injunction creates a substantial risk that Republican voters will lose confidence in the integrity of the election and, thus, choose not to vote, decreasing the total vote share for the Republican candidate. ROA.65815–16. *Second*, because Democratic voters tend to vote by mail at a higher rate than Republican voters, such an injunction, by requiring election officials to count mail ballots the Legislature has deemed invalid, would likely increase the total vote share for the Democratic candidate. *See, e.g.*, 2020 Dallas County Results. It is thus more than "reasonable" to conclude that enjoining enforcement of Section 7.04 harms Intervenor-Appellants' "capacity to compete politically." *Castro*, 86 F.4th at 958.

An injunction against enforcement of SB 1 also causes Intervenor-Appellants direct financial harm. Just like Plaintiff-Appellees, Intervenor-Appellants spend money and resources to develop voter educational materials and to train volunteers. *La Union del Pueblo Entero*, 29 F.4th at 304, 306 & n.3; *see, e.g.*, ROA.66042-43 (Siegel Tr.); ROA.65871-72, 65884 (Vera Tr.). Thus, an injunction against enforcement of SB 1 would force Intervenor-Appellants to spend more money and resources to update their materials and retrain volunteers. *La Union del Pueblo Entero*, 29 F.4th at 307 (recognizing Intervenor-Appellants' need "to expend resources to educate their members on the shifting situation"); ROA.66042-43 (Siegel Tr.); ROA.65871-72, 65884 (Vera Tr.). Such expenditures are "classic pocketbook injur[ies]" and are unrecoverable if an injunction is ultimately reversed. *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 636 (2023). And in this case, the financial stakes are particularly plain because Intervenor-Appellants do not engage, and have never engaged, in ballot harvesting. Thus, if enforcement of Section 7.04 is enjoined, Intervenor-Appellants will be forced to choose between paying to train its volunteers and agents to engage in ballot harvesting or competing on an uneven playing field where only their competitors engage in ballot harvesting.

Letter to the Court
*La Unión del Pueblo Entero v. Abbott*, No. 24-50783
December 15, 2025
Page 4

Respectfully submitted,

/s/ *John M. Gore*
John M. Gore
   *Counsel of Record*
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3930

*Counsel for Intervenor-Appellants*

cc: All Counsel of Record

Letter to the Court
*La Unión del Pueblo Entero v. Abbott*, No. 24-50783
December 15, 2025
Page 5

## **CERTIFICATE OF COMPLIANCE AND SERVICE**

  I hereby certify that the body of this letter is 1,088 words. I relied on my word processor, Microsoft Word, to obtain the count.

  I hereby certify that on December 15, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *John M. Gore*
John M. Gore
 *Counsel of Record*
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-3930

*Counsel for Intervenor-Appellants*